

"always protecting our Boilermaker family"

# BOILERMAKER-BLACKSMITH
## NATIONAL PENSION TRUST

(#1)

P2020-09

March 24, 2020

Summers Nagy Law Offices
Attn: Sean E. Summers
35 S Duke St
York, PA 17401

REDACTED — 6560

Re: John Martin, deceased
SS#: XXX-XX-6560

Dear Mr. Summers:

Your appeal on behalf of Elisabeth Sturgill regarding John Martin's marital status at the time of his death was presented to the Boilermaker-Blacksmith National Pension Trust Appeals Committee at the March 19, 2020 meeting. After consideration of all the facts and documentation, your appeal was denied. The specific reason your appeal was denied is because Ms. Sturgill has not met her burden of establishing the existence of the purported marriage. A December 19, 2007 Nationwide Auto Policy Declarations form listed Ms. Sturgill and Mr. Martin as named insureds, but specifically listed Mr. Martin's marital status as single. Mr. Martin named Ms. Sturgill as his fiancée and indicated his marital status as divorced on a beneficiary designation completed in November 2011. Mr. Martin's death certificate also indicates his marital status as divorced and lists Ms. Sturgill as his fiancée. As such, the Trustees determined that Ms. Sturgill failed to establish a general reputation of marriage in the community and, therefore, Mr. Martin was not married at the time of his death.

The denial was based on the following Plan provisions:

**Thirteenth Restatement of the Pension Plan** (effective February 1, 2015) as amended:

> **Section 1.35. Spouse.** A person who is legally married to the Participant, pursuant to the requirements of Federal Law, including: 1) effective June 26, 2013 through September 15, 2013, an individual married to the Participant of the same sex if the individuals are domiciled within and have validly entered into marriage in a state whose laws authorize the marriage of two individuals of the same sex; and 2) effective September 16, 2013, an individual married to the Participant of the same sex if the individuals have validly entered into marriage in a state whose laws authorize the marriage of two individuals of the same sex, regardless of domicile.

> The term "Spouse" shall not include an individual (whether of the opposite sex or the same sex) who has entered into one of the following relationships with the Participant: a registered domestic partnership, civil union, or other similar formal relationship recognized under state law that is not denominated as a marriage under the laws of that state.

> **Section 6.08. Additional Conditions.** A Husband and Wife Pension shall not be effective under any of the following circumstances:

> (a) The Participant and spouse were not married to each other on the Participant's Annuity Starting Date.

**EXHIBIT 2**

BNF 0439

March 24, 2020
Page 2 of 4

(b)   The Participant and spouse were married to each other for less than a year before the Participant died. In the event a Husband and Wife Pension is not effective pursuant to this subsection (b), the benefit shall be recalculated in the form of a Single Life Annuity with 60-Months Certain.

(c)   The spouse died before the Participant's Annuity Starting Date or before his death, if he died before a pension was payable to him.

(d)   The Participant and the spouse were divorced from each other before the Participant's Annuity Starting Date or before his death, if he died before a pension was payable to him.

(e)   The Trustees shall be entitled to rely on the written representation last filed by the Participant before his Annuity Starting Date as to whether he or she is married. This reliance shall include the right to deny benefits to a person claiming to be the legal spouse of a Participant in contradiction to the aforementioned representation of the Participant.

**Section 7.01.  Eligibility for and Amount of Death Benefits.**

(a)   **Death Before Retirement.**

(2)   **Pre-Retirement Sixty-Month Guarantee Death Benefit (death after vesting—automatic form for single participants).** If a Participant who has fulfilled the service requirements for an Age Pension, Early Retirement Pension, Vested Pension, or Alternative Vested Pension dies prior to being awarded a pension under this Plan, his beneficiary designated in accordance with Section 7.02 or the person or persons selected in accordance with Section 7.04 shall, upon application, be entitled to 60 monthly payments in an amount equal to the monthly pension which the deceased Participant would have received had he retired on the date of his death. Notwithstanding the foregoing, for deaths occurring on or after October 1, 2017, the Pre-Retirement Sixty-Month Guarantee Death Benefit shall only be payable to the Participant's surviving spouse or surviving children, whether designated by the Participant or selected in accordance with Section 7.04. Notwithstanding the foregoing, for deaths occurring on or after May 1, 2019, no death benefit shall be payable under this subsection 7.01(a)(2).

(A)   If the deceased Participant is under age 55 at the time of his death, the monthly benefit will be determined as if he were age 55 on the date of his death.

(B)   If the deceased Participant died at any age prior to Normal Retirement Age as a direct result of, and within 90 days of, an injury incurred on the job while working in Covered Employment, the amount of monthly benefit payable to the designated beneficiary shall be calculated as if the Participant had retired on the day before his death and was 65 on the date of his death.

(C)   The total value of the Pension payments, if any, received by the deceased participant during a previous period of retirement shall be deducted from the total value of the 60 monthly payments otherwise due the deceased Participant's beneficiary.

**EXHIBIT 2**

BNF 0440

March 24, 2020
Page 3 of 4

    (D)   The monthly payments described herein will begin with the first month following the death of the Participant.  This benefit shall be payable instead of, and not in addition to, the benefit described in paragraph (1) above.

    (E)   If the benefit otherwise provided by this paragraph is less than the total amount of the Contributions credited to the Participant, then a lump sum payment equal to the total amount of such Contributions, up to a maximum of $15,000, shall be made to the designated beneficiary in lieu of the 60 monthly payments.

  (3)  **Qualified Pre-Retirement Survivor Annuity (Death after vesting—automatic form for married participants).** If a Vested Participant dies before his Annuity Starting Date but after earning at least one Hour of Work after August 22, 1984, his surviving legal spouse shall be entitled to the Survivor Annuity portion of a 50% Husband and Wife Pension in accordance with the following provisions.

    (A)   **Qualified Pre-Retirement Survivor Annuity.**  Subject to paragraph (B) below, the surviving legal spouse of a Participant who dies before the Participant's Annuity Starting Date may apply for and receive the qualified pre-retirement surviving spouse benefit to which he or she is entitled at any time after the death of the Participant.  Payments shall begin as of the surviving legal spouse's Annuity Starting Date, determined under Section 1.01.

          The surviving legal spouse may elect to defer the receipt of benefits payable under this Section.  Such election shall be made in writing on a form prescribed by the Trustees and filed with the Trustees at any time following the Participant's death.

**Section 8.02. Information and Proof.** Every Participant or Pensioner shall furnish, at the request of the Trustees or Fund Office, any information or proof reasonably required to determine his benefit rights.  If a person willfully makes a false statement material to an application or furnishes fraudulent information or proof, or fails to provide the documents or notifications required, benefits under this Plan may be denied, suspended, or discontinued.  The Trustees shall have the right to recover any benefit payments made in reliance on any willfully false or fraudulent statement, information or proof submitted by a Participant or Pensioner.

**Section 8.03. Action of Trustees.** Benefits under this Plan will be paid only if the Trustees and their designees decide, in their discretion, that the applicant is entitled to benefits. The Trustees and their designees shall be the sole judges of the standard of proof required for any application for benefits and shall have full discretion to make findings of fact, interpret the terms of the Plan, and decide all questions arising under the Plan. Decisions of the Trustees and their designees shall be final and binding on all parties.

**Section 10.01. Claims and Appeals Procedures.**

. . .

(i) **Trustees' Authority.** The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required. The Trustees' findings and their determination of any dispute shall be final and binding

**EXHIBIT 2**

BNF 0441

March 24, 2020
Page 4 of 4

upon all parties to the dispute. No action may be brought for benefits provided by this Plan document or any amendment or modification, or to enforce any right granted under the Plan, until after the claim has been submitted to and determined by the Trustees. The decision of the Trustees shall receive judicial deference unless the Trustees have abused the discretion granted to them under the Plan document and Trust Agreement. All questions or controversies, of whatever character, arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, or as to the construction of language or meaning of this Plan document or the Trust Agreement, or as to any writing, decision, instrument, or account in connection with the operation of this Plan, shall be submitted to the Trustees for decision. The decision of the Trustees shall be final and binding on all persons dealing with the Plan or the Trust or claiming any benefit under the Plan.

The Board of Trustees has a legal responsibility to consistently follow Plan provisions. Therefore, it is the Trustees' position that the denial of the appeal due to the above Plan provisions is correct. Ms. Sturgill has not met her burden of establishing the existence of the purported marriage. Pennsylvania law creates a rebuttable presumption of common law marriage only when there is evidence of constant cohabitation and a reputation of marriage that is general, and not partial or divided. *In re Manfredi's Estate*, 159 A.2d 697, 700 (Pa. 1960). The Trustees concluded that Ms. Sturgill failed to prove a general reputation of marriage. A December 19, 2007 Nationwide Auto Policy Declarations form listed Ms. Sturgill and Mr. Martin as named insureds, but specifically listed Mr. Martin's marital status as single. Mr. Martin named Ms. Sturgill as his fiancée and indicated his marital status as divorced on a beneficiary designation completed in November 2011. Mr. Martin's death certificate also indicates his marital status as divorced and lists Ms. Sturgill as his fiancée. The definition of fiancée according to the Merriam-Webster online dictionary is "a woman engaged to be married". The Trustees concluded that the affidavits from Ms. Sturgill and Mr. Martin's close family only indicated a partial reputation of marriage. Thus, because the Trustees determined that the evidence failed to establish a general reputation of marriage, the Trustees denied Ms. Sturgill's appeal.

You are entitled to receive upon written request, addressed to the Executive Administrator of the Boilermakers National Funds, and free of charge, reasonable access to and copies of all documents, records and other information relevant to the claim for benefits.

Furthermore, if Ms. Sturgill believes the denial is not in accordance with the law, the Plan provisions or otherwise improperly decided, she has the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"). The Plan provides that you must file suit within two (2) years of the date of the Trustees' denial.

Sincerely,

Boilermaker-Blacksmith National Pension Trust

BR: s
(P2020-09)

**EXHIBIT 2**

BNF 0442

Case 1:19-cv-00925-JPW   Document 25-2   Filed 09/14/20   Page 5 of 85

*Denied*

Pension Board of Trustees
Appeal No: P2020-09
Agenda Item I
March 17, 2020

## APPEAL NO: P2020-09 – VALIDITY OF COMMON LAW MARRIAGE

**ISSUE:**

Was the Participant in a valid common law marriage at the time of his death?

**SUMMARY:**

1.  The Participant died on June 1, 2017 prior to retirement. He was 100% vested and his most recent beneficiary designation received in November 2011 listed his marital status as divorced and his fiancé as sole beneficiary. The woman listed as the fiancé on the beneficiary designation indicated that she and the Participant were in a common law marriage at the time of his death; however, she was unable to provide the documentation requested to determine the validity of the common law marriage; therefore, the death benefit payable was paid as a Pre-Retirement 60 Month Guarantee Death Benefit to the alleged spouse as the named beneficiary.

    •   The alleged spouse submitted an Affidavit of Common Law Marriage stating she had been in a common law marriage with the Participant since September 1997. On the affidavit she stated that they entered into a common law marriage in the state of Pennsylvania which does not recognize common law marriage contracted after January 1, 2005. In order to support that they had entered into a common law marriage prior to January 1, 2005, the alleged spouse provided a bank statement from 2002 showing that she and the Participant had a joint bank account.

    •   The documentation was reviewed by Legal Counsel and it was determined that the Participant was not in a common law marriage with the alleged spouse at the time of his death because he listed her as his fiancé on a beneficiary designation in November 2011. In addition, she was listed as the Participant's fiancé on his Certified Death Certificate and his marital status was listed as divorced.

**APPEAL REQUEST:**

1.  The alleged spouse's attorney states that the Participant and alleged spouse were in a common law marriage for 19 years. He says they held themselves out to the public as a married couple, shared a bank account, held joint title to a car, and were a family together. The attorney also states the Participant's father has attested that they were married and so have the two sons that the Participant and alleged spouse shared and raised together. He requests that the Pension Trust recognize the two as married and pay a Pre-Retirement Husband and Wife Death Benefit.

1

**EXHIBIT 2**

BNF 0443

- A lawsuit was filed against the Pension Trust in May 2019; however, the alleged spouse had not yet been provided with appeal rights. Legal Counsel provided appeal rights to the attorney and an appeal was then submitted.

2.  If the appeal is approved, the Pre-Retirement 60 Month Guarantee Death Benefit that has been paid from July 2017 through March 2020 in the monthly amount of $2,588.58 will be recalculated as a Pre-Retirement Husband and Wife Pension payable in the monthly amount of $2,443.42. The overpayment made in the amount of $4,790.28 will be recovered prior to any further payments being issued.

3.  If the appeal is denied, the Pre-Retirement 60 Month Guarantee Death Benefit payable from July 2017 through June 2022 in the monthly amount of $2,588.58 will continue to be paid.

**RELEVANT PROVISIONS OF PLAN DOCUMENTS**:

For purposes of this appeal, the entire plan document and SPD are incorporated by reference. The following provisions are particularly relevant:

**Pension Plan:**

**Thirteenth Restatement of the Pension Plan** (effective February 1, 2015) as amended:

**Section 1.35. Spouse.** A person who is legally married to the Participant, pursuant to the requirements of Federal Law, including: 1) effective June 26, 2013 through September 15, 2013, an individual married to the Participant of the same sex if the individuals are domiciled within and have validly entered into marriage in a state whose laws authorize the marriage of two individuals of the same sex; and 2) effective September 16, 2013, an individual married to the Participant of the same sex if the individuals have validly entered into marriage in a state whose laws authorize the marriage of two individuals of the same sex, regardless of domicile.

The term "Spouse" shall not include an individual (whether of the opposite sex or the same sex) who has entered into one of the following relationships with the Participant: a registered domestic partnership, civil union, or other similar formal relationship recognized under state law that is not denominated as a marriage under the laws of that state.

**Section 6.08. Additional Conditions**. A Husband and Wife Pension shall not be effective under any of the following circumstances:

(a)  The Participant and spouse were not married to each other on the Participant's Annuity Starting Date.

(b)  The Participant and spouse were married to each other for less than a year before the Participant died. In the event a Husband and Wife Pension is not effective pursuant to this subsection (b), the benefit shall be recalculated in the form of a Single Life Annuity with 60-Months Certain.

2

**EXHIBIT 2**

BNF 0444

(c)    The spouse died before the Participant's Annuity Starting Date or before his death, if he died before a pension was payable to him.

(d)    The Participant and the spouse were divorced from each other before the Participant's Annuity Starting Date or before his death, if he died before a pension was payable to him.

(e)    The Trustees shall be entitled to rely on the written representation last filed by the Participant before his Annuity Starting Date as to whether he or she is married. This reliance shall include the right to deny benefits to a person claiming to be the legal spouse of a Participant in contradiction to the aforementioned representation of the Participant.

**Section 7.01. Eligibility for and Amount of Death Benefits.**

(a)    **Death Before Retirement.**

    (2)    **Pre-Retirement Sixty-Month Guarantee Death Benefit (death after vesting— automatic form for single participants).** If a Participant who has fulfilled the service requirements for an Age Pension, Early Retirement Pension, Vested Pension, or Alternative Vested Pension dies prior to being awarded a pension under this Plan, his beneficiary designated in accordance with Section 7.02 or the person or persons selected in accordance with Section 7.04 shall, upon application, be entitled to 60 monthly payments in an amount equal to the monthly pension which the deceased Participant would have received had he retired on the date of his death. Notwithstanding the foregoing, for deaths occurring on or after October 1, 2017, the Pre-Retirement Sixty-Month Guarantee Death Benefit shall only be payable to the Participant's surviving spouse or surviving children, whether designated by the Participant or selected in accordance with Section 7.04. Notwithstanding the foregoing, for deaths occurring on or after May 1, 2019, no death benefit shall be payable under this subsection 7.01(a)(2).

        (A)    If the deceased Participant is under age 55 at the time of his death, the monthly benefit will be determined as if he were age 55 on the date of his death.

        (B)    If the deceased Participant died at any age prior to Normal Retirement Age as a direct result of, and within 90 days of, an injury incurred on the job while working in Covered Employment, the amount of monthly benefit payable to the designated beneficiary shall be calculated as if the Participant had retired on the day before his death and was 65 on the date of his death.

        (C)    The total value of the Pension payments, if any, received by the deceased participant during a previous period of retirement shall be deducted from the total value of the 60 monthly payments otherwise due the deceased Participant's beneficiary.

        (D)    The monthly payments described herein will begin with the first month following the death of the Participant. This benefit shall be payable instead of, and not in addition to, the benefit described in paragraph (1) above.

**EXHIBIT 2**

BNF 0445

(E)   If the benefit otherwise provided by this paragraph is less than the total amount of the Contributions credited to the Participant, then a lump sum payment equal to the total amount of such Contributions, up to a maximum of $15,000, shall be made to the designated beneficiary in lieu of the 60 monthly payments.

(3)   **Qualified Pre-Retirement Survivor Annuity (Death after vesting—automatic form for married participants).** If a Vested Participant dies before his Annuity Starting Date but after earning at least one Hour of Work after August 22, 1984, his surviving legal spouse shall be entitled to the Survivor Annuity portion of a 50% Husband and Wife Pension in accordance with the following provisions.

(A)   **Qualified Pre-Retirement Survivor Annuity.** Subject to paragraph (B) below, the surviving legal spouse of a Participant who dies before the Participant's Annuity Starting Date may apply for and receive the qualified pre-retirement surviving spouse benefit to which he or she is entitled at any time after the death of the Participant. Payments shall begin as of the surviving legal spouse's Annuity Starting Date, determined under Section 1.01.

The surviving legal spouse may elect to defer the receipt of benefits payable under this Section. Such election shall be made in writing on a form prescribed by the Trustees and filed with the Trustees at any time following the Participant's death.

**Section 8.02. Information and Proof.** Every Participant or Pensioner shall furnish, at the request of the Trustees or Fund Office, any information or proof reasonably required to determine his benefit rights. If a person willfully makes a false statement material to an application or furnishes fraudulent information or proof, or fails to provide the documents or notifications required, benefits under this Plan may be denied, suspended, or discontinued. The Trustees shall have the right to recover any benefit payments made in reliance on any willfully false or fraudulent statement, information or proof submitted by a Participant or Pensioner.

**Section 8.03. Action of Trustees.** Benefits under this Plan will be paid only if the Trustees and their designees decide, in their discretion, that the applicant is entitled to benefits. The Trustees and their designees shall be the sole judges of the standard of proof required for any application for benefits and shall have full discretion to make findings of fact, interpret the terms of the Plan, and decide all questions arising under the Plan. Decisions of the Trustees and their designees shall be final and binding on all parties.

4

**EXHIBIT 2**

**BNF 0446**

**Section 10.01. Claims and Appeals Procedures.**

. . .

(i) **Trustees' Authority.** The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required. The Trustees' findings and their determination of any dispute shall be final and binding upon all parties to the dispute. No action may be brought for benefits provided by this Plan document or any amendment or modification, or to enforce any right granted under the Plan, until after the claim has been submitted to and determined by the Trustees. The decision of the Trustees shall receive judicial deference unless the Trustees have abused the discretion granted to them under the Plan document and Trust Agreement. All questions or controversies, of whatever character, arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, or as to the construction of language or meaning of this Plan document or the Trust Agreement, or as to any writing, decision, instrument, or account in connection with the operation of this Plan, shall be submitted to the Trustees for decision. The decision of the Trustees shall be final and binding on all persons dealing with the Plan or the Trust or claiming any benefit under the Plan.

**Summary Plan Description ("SPD")** (Revised July 2016):

**When a Husband and Wife Pension is Not Effective (pg. 46):**

The Husband and Wife Pension is *not* effective under any of the following circumstances:

- You and your Spouse were not married to each other on your Annuity Starting Date.
- You and your Spouse were married to each other for less than a year before your death. If you die before you have been married for one full year and you die following your Annuity Starting Date, your benefit will be recalculated in the form of a Single Life Annuity with 60-Months Certain retroactive to your Annuity Starting Date.
- Your Spouse died before your Annuity Starting Date or died before your death (if you died before a pension was payable to you).
- You and your Spouse were divorced from each other before your Annuity Starting Date or before your death (if you died before a pension was payable to you).

**If You are Not Married and Die after Vesting:  Pre-Retirement 60-Month Death Benefit (pg. 55):**

If you have vested for benefits, but die before receiving a pension under the Plan, your Beneficiary will be entitled to 60 monthly payments in an amount equal to the monthly pension you would have received had you retired upon your date of death. If you are under age fifty-five at the time of death, the monthly benefit will be calculated as if you were age fifty-five on the date of your death.

**EXHIBIT 2**

**BNF 0447**

**If You are Married and Die after Vesting: Qualified Pre-Retirement Survivor Annuity (QPSA) (pg. 56):**

If you have been legally married for 12 full months and vested for benefits, have worked in Covered Employment at least one hour since August 22, 1984, and die before retirement, your surviving Spouse can apply for and receive a Qualified Pre-Retirement Survivor Annuity (QPSA) at any time following your death. The QPSA is the Survivor Annuity portion of a 50% Husband and Wife Pension. Your surviving Spouse may elect to defer this benefit, but must begin receiving payment no later than December 1 of the calendar year in which you would have reached age 70 ½, or if later, December 1 of the calendar year following the year of your death.

**Spouse (pg. 91):**

A person who is legally married to the Participant. Effective June 26, 2013, marriages between same-sex spouses will be recognized if the marriage was celebrated in a state which recognizes same-sex marriage, regardless of the married couple's state of domicile.

**Legal Considerations:**

Pennsylvania was one of the last states to abolish common law marriage in January 2005.[1] However, common law marriages entered into prior to January 2, 2005, remain valid. "Marriage is a civil contract in Pennsylvania. 'The contract does not require any specific form of words, and all that is essential is proof of an agreement to enter the legal relationship of marriage at the present time.'"[2] "Because the courts have regarded common law marriage as a fruitful source of fraud and perjury, common law marriages are to be tolerated but not encouraged."[3] Consequently, "the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate."[4]

"Because it is often difficult to prove a common law marriage by words in praesenti, the law has created or raised a rebuttable presumption of marriage were two absolutely essential elements are conjoined and co-exist—constant, as distinguished from an irregular or inconstant, cohabitation plus a reputation of marriage, which is not partial or divided but is broad and general. Constant cohabitation, even when conjoined with general reputation are not marriage, they are merely circumstances which give rise to a rebuttable presumption of marriage . . . [internal citations omitted] 'The mere fact that they [the alleged contracting parties] were known to a few people as man and wife is not sufficient evidence to establish marriage. Proof of reputation for such purpose must be general and not confined to a few persons in the immediate neighborhood, as the relationship may be established merely for the purpose of deceiving others.' [internal citations

---

[1] Pa.C.S. § 1103
[2] *In re Estate of Kovalchick*, 498 A.2d 374, 376 (Pa. Super. Ct. 1985) (internal citations omitted).
[3] *In re Estate of Stauffer*, 476 A.2d 354, 356 (Pa. 1984).
[4] *Estate of Gavula*, 417 A.2d 168, 171 (Pa. 1980).

**EXHIBIT 2**

BNF 0448

omitted]."[5]  This rebuttable presumption of marriage wholly disappears in the face of proof that no marriage existed.[6]

A court found that a common-law marriage existed where the parties celebrated an anniversary, had a ring with a specific date on it, purchased homes together, prepared and executed mutual wills, financially supported each other, and held joint banking and investment accounts.[7]  On the other hand, a court found that there was no common-law marriage despite testimony from the alleged spouse and other witnesses where that evidence was contradicted by hospital records, the death certificate, and contradictory testimony from another witness.[8]

The Merriam-Webster online dictionary[9] (as visited on March 3, 2020) contains the following relevant definitions:

Fiancé:  a man engaged to be married

Fiancée: a woman engaged to be married

**ATTACHED DOCUMENTS:**

- Participant's Pension Record (Attachment #1)
- Participant's most recent beneficiary designation received on November 7, 2011 (Attachment #2)
- Affidavit of Common Law Marriage, supporting documentation, legal counsel's review of affidavit, and letter sent to alleged spouse regarding legal counsel's determination on December 27, 2017 (Attachment #3)
- Letter from the alleged spouse's attorney received September 28, 2018, and the Fund Office's response sent October 12, 2018 (Attachment #4)
- Lawsuit received by the Fund Office on June 25, 2019 (Attachment #5)
- Letter from Legal Counsel to alleged spouse's attorney dated July 29, 2019 (Attachment #6)
- Letter of appeal and supporting documentation from alleged spouse's attorney received by Legal Counsel on November 25, 2019 (Attachment #7)

---

[5] *In re Manfredi's Estate*, 159 A.2d 697, 700 (Pa. 1960).
[6] *In re Estate of Kovalchick*, 498 A.2d at 377.
[7] *In re Estate of Carter*, 159 A.3d 970 (Pa. Super. Ct. 2017).
[8] *In re Estate of Dodge*, 522 A.2d 77 (Pa. Super. Ct. 1987).
[9] Available at:  www.m-w.com

**EXHIBIT 2**

BNF 0449

```
SOC-SEC-NO. NAME        FIRST      I BIRTH   CONT   UN   LCL   RETR   DEAT   IND 1ST-WK          PRINT REQUESED BY
                                             000000 1982 0013 201707 201706  3  199810          BETH RACKI


PPL-DT   CORR-DT   NCEC-DT   DENY-DT   LAST-WK   B-CARD    NW-REJ   BK
                                       05-2017   11-2011            F


YEAR   CUR-HRS   CUM-HRS CUM-PC CUR-VS CUM-VS  CUR-CONT   CUM-CONTR      L28-HRS  L28-PC L28-VC

1982    963.00    963.00   .75   .00    .00    1444.50    1444.50        .00     .00     .00  FIRST CONTRIB  03/1982 89475 0026
1983    733.00   1696.00  1.25   .00    .00    1099.50    2544.00        .00     .00
1984       .00   1696.00   .00   .00    .00        .00    2544.00        .00     .00     .00  BREAK-NEW RULES
--------------------------------------------------------------------------------------------------------------------------------
1999   1043.00   1043.00   .75  1.00   1.00    4227.17    4227.17        .00     .00     .00  FIRST CONTRIB  10/1998 89858 0112
2000   1305.00   2348.00  1.75  1.00   2.00    4506.30    8733.47        .00     .00     .00
2001   1446.50   3794.50  3.00  1.00   3.00    6982.56   15716.03        .00     .00     .00
2002   1725.00   5519.50  4.50  1.00   4.00   10408.60   26124.63        .00     .00     .00
2003    911.00   6430.50  5.25   .00   4.00    6322.50   32447.13        .00     .00     .00
2004   1085.60   7516.10  6.25  1.00   5.00    8261.10   40708.23        .00     .00     .00  100% VESTED
2005    564.50   8080.60  6.50   .00   5.00    4240.50   44948.73        .00     .00     .00
2006   2225.75  10306.35  8.50  1.00   6.00   16975.94   61924.67        .00     .00     .00
2007   2153.00  12459.35 10.25  1.00   7.00   16025.83   77950.50        .00     .00     .00
2008   2003.50  14462.85 12.00  1.00   8.00   15570.07   93520.57        .00     .00     .00
2009   1992.75  16455.60 13.50  1.00   9.00   14734.77  108255.34        .00     .00     .00
2010   2146.00  18601.60 15.50  1.00  10.00   16840.98  125096.32        .00     .00     .00
2011   1182.00  19783.60 16.25  1.00  11.00   10380.65  135476.97        .00     .00     .00
2012    431.75  20215.35 16.75   .00  11.00    3379.35  138856.32        .00     .00     .00
2013    429.75  20645.10 17.00   .00  11.00    9304.21  148160.53        .00     .00     .00
2014    778.00  21423.10 17.75   .00  11.00   17137.04  165297.57        .00     .00     .00
2015   2187.70  23610.80 19.50  1.00  12.00   45178.74  210476.31        .00     .00     .00
2016   1189.70  24800.50 20.50  1.00  13.00   25870.36  236346.67        .00     .00     .00
2017   1034.50  25835.00 21.50  1.00  14.00   20605.95  256952.62        .00     .00     .00


TOTAL  27531.00                       $   259496.62


CURR      PREV      CUM-      HRS-SINCE  CURRENT    CUMULATIV
HOURS     HOURS     HOURS     LST BREAK  CONTRIB    CONTRIB
 .00       .00    25835.00    25835.00      .00   256952.62


PARTICIPATION ESTABLISHED BEFORE 10/01/2008
BASIC-1 CONTRIBUTION   32,447.13     .5150                                    (V)
BASIC-3 CONTRIBUTION  106,409.19     .3300
BASIC-5 CONTRIBUTION  118,096.30     .1200


PENSION STATUS  T DRAPR 06/01/2017 10/01/2017 PENSION TYPE  V


        END OF REPORT
```

EXHIBIT 2

ATTACHMENT 1
BNF 0450

DELIVERED

**BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST**
**BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND**   NOV - 7 2011   **DESIGNATION OF BENEFICIARY**

MAIL CENTER   Register No.
Soc. Sec. No.

Name _____
(First)          (Middle Initial)          (Last)

Address _____ City _____ State __ Zip _____

Date of Birth _____ Home Lodge _13_ Year first worked at trade _1982_

I have reviewed the choices available to me and, subject to the terms of the Boilermaker-Blacksmith National Pension Trust and the terms of any group insurance policy issued to the Boilermakers National Health and Welfare Fund, I request that any sum becoming payable to a beneficiary under said trust or group insurance policy by reason of my death be payable to the following beneficiary(ies). It is my understanding and desire that this designation shall operate so as to revoke all designations previously made by me under said trust or group insurance policy.

(NOTE: Give full name of beneficiary - Example, Mary J. Smith, not Mrs. John R. Smith)

| Name of Beneficiary | SS # | Related to me as | Date of Birth | Address |
|---|---|---|---|---|
| | | _Fiance_ | | |

**PLEASE READ CAREFULLY (IF MORE THAN ONE IS NAMED, THE BENEFICIARIES SHALL SHARE EQUALLY UNLESS OTHERWISE SPECIFIED. PLACE A #1 BY PRIMARY BENEFICIARY(IES) AND A #2 FOR CONTINGENT BENEFICIARY(IES) IN THE EVENT ALL PRIMARY BENEFICIARY(IES) PREDECEASE YOU).** If any of the above beneficiaries predecease me, such beneficiary's share shall be payable to the remaining designated beneficiary(ies), who survive me.

Your Signature _____   DATE _10/29_ 20 _11_

Marital Status: ☐ Married ☐ Single ☒ Divorced ☐ Widowed

If you are married and name any person other than your spouse as beneficiary, then your spouse must sign the following agreement.

I am aware of my benefit options and I agree to the beneficiary(ies) as designated above.

Signature of Spouse __N/A__   DATE _____ 20 ____

If you do not wish to designate the same beneficiary under the Health and Welfare Fund and the Pension Trust, you may request separate beneficiary cards from the Fund Office. If you have any questions please contact the Fund Office.

P1001 7/98 20M 01/10   **THE ABOVE MUST BE FILLED OUT COMPLETELY.**

**EXHIBIT 2**
ATTACHMENT 2
**BNF 0451**

**BOILL...MAKER-BLACKSMITH NATIONAL PEN...ON TRUST**
754 Minnesota Ave.
Kansas City, KS 66101-2768
866-342-6555 or 913-342-6555

December 27, 2017



Re:
SS#   XXX-XX-
Deceased

Dear ▇▇▇▇▇▇ :

Our legal counsel has reviewed the Affidavit of Common Law Marriage and all documents provided in July 2017 along with your bank statements from 2002 listing ▇▇▇▇▇▇ as a joint owner of your account which were provided to the Fund Office on November 30, 2017.

The documentation submitted is not sufficient to establish common law marriage.  In the state of Pennsylvania, common law marriage is only valid if the marriage was established prior to January 1, 2005, and our legal counsel has determined that you were not in a common law marriage with ▇▇▇▇▇▇ prior to that date because he named you as a fiance on a Designation of Beneficiary card completed in 2011.

Sincerely,

Boilermaker-Blacksmith National
Pension Trust

BR:s



**EXHIBIT 2**

**Blake & Uhlig, P.A.**

## BOILERMAKER NATIONAL FUNDS DETERMINATION MEMORANDUM

| | |
|---|---|
| **FROM:** | **Nathan Terry** |
| **DATE:** | **December 18, 2017** |
| **FUND:** | **Pension** |
| **RE:** | **Affidavit of Common Law Marriage –** ▮▮▮▮▮ |

NOT VALID

Relevant Facts:

- The Participant, ▮▮▮▮▮, passed away on June 1, 2017.

- According to the Plan's records, ▮▮▮▮ most recent beneficiary designation is dated October 29, 2011 and names ▮▮▮▮ Fiancé.

- The Plan has received the following relevant documents:

  - An Affidavit of Common-Law Marriage in the state of Pennsylvania, signed by ▮▮▮▮ on July 22, 2017;
  - *Members 1 Federal Credit Union* statements of February through November 2002, showing ▮▮▮▮ and ▮▮▮▮ as joint owners of an account; and,
  - An Application for Death Benefit, relating to the death of ▮▮▮▮ and signed by ▮▮▮▮

Comments:

- Pursuant to Pennsylvania's statute V.T.C.A. 23 Pa.C.S.A. § 1103, no common law marriage contracted after January 1, 2005 shall be valid;

- According to his October 29, 2011 beneficiary designation, ▮▮▮▮ identified ▮▮▮▮ as his fiancé, not his spouse.

Question:

- Is this Affidavit sufficient for the Plan to accept?    *No.*

  - *It identifies the participant as* ▮▮▮▮
  - *It fails to make any mention of the participant,* ▮▮▮▮ *and*
  - *It claims that the Common Law Marriage was established in September 1997; which is refuted by* ▮▮▮▮ *2011 B-Card.*

                                        /s/ Nathan Terry
                                        Signature

Confidential                          Page 1        12/18/2017

**EXHIBIT 2**
ATTACHMENT 3.1
BNF 0453

# DDR Site Review Request

Date: __12/15/2017__          Return B&U Response To: **Beth Racki** _____

Participant Name: _____          Participant SSN _____

Beneficiary Name: _____          Beneficiary SSN: _____

Type of Document Being Sent for Review:

_____ Estate Paperwork (Letters of Administration, Small Estate Affidavit, etc)

_____ POA/Guardianship/Conservatorship

_____ Subpoena

___X___ Other, Please specify:    **Common Law Marriage Affidavit and supporting**
                                    **documentation**

Does the Pension Department have Original Document with a Raised Seal?          yes

Type of Benefit and Amount Payable (if estate paperwork):    **If common law marriage is established**
**a monthly pre-retirement HW benefit will be payable to the common law spouse for her life**

If the document being reviewed is for a beneficiary, is the beneficiary receiving or going to receive

monthly payments?   **n/a**

If the Participant is deceased, does the Pension Department have a Certified Death Certificate

on file?  **yes**

If the document is a POA, Guardianship, or Conservatorship what is the agent requesting to do?

(i.e. change address, update banking information, name beneficiary, etc)

**n/a**

Additional Notes: _____ is currently receiving a pre-retirement 60 pay.  When we

were setting her up to receive her benefit she was unable to provide the docs requested on the

Common Law Affidavit.  She has now provided one of the docs on the listed on the affidavit.

Please review and advise if she should be treated as the participant's surviving spouse.



NOT VALID

**EXHIBIT 2**
ATTACHMENT 3.2
**BNF 0454**



JUL 24 2017

## Affidavit of Common-Law Marriage

We, the undersigned, being of lawful age and under penalties of perjury, attest to the following facts:

1. We have lived together continuously as husband and wife from _Sept 1997 - June 2017_ to the present time.
2. During this period we have professed to be husband and wife and have held ourselves out to the community as being married.
3. When we entered into this common-law agreement we lived in the State of _Pennsylvania_.
4. We currently live in the State of _Pennsylvania_.
5. We are eighteen (18) years of age or older, or, if between the ages of sixteen (16) and eighteen (18), we have obtained the appropriate consent of a parent or guardian.
6. We live together in a husband and wife relationship and mutually assume all martial rights, duties, and obligations.
7. There is no legal impediment to our marriage, including but not limited to, a prior marriage of either party that has not been legally terminated by death or divorce.

PLEASE PROVIDE A MINIMUM OF ONE (1) OF THE FOLLOWING DOCUMENTS:

a. A bank statement indicating that you have a joint bank account;
b. A copy of a deed showing joint ownership of property;
c. A copy of a trust indicating joint ownership of assets; or
d. A copy of a jointly-filed federal tax return.

Name of Participant: █████████████████

Signature of Participant: █████████████████       Date: 7/22/17

Subscribed and sworn before me this _22nd_ day of _July_, 20_17_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CARMEN S. CARABALLO, Notary Public
West Manchester Twp., York County
My Commission Expires Nov. 16, 2019

Signature of Notary

Name of Spouse: _____

Signature of Spouse: _____       Date: _____

Subscribed and sworn before me this _____ day of _____, 20_____
SEAL

Signature of Notary

**NOT VALID**

754 Minnesota Avenue | Kansas City, KS  66101-2765 | 866.342.6555 | 913.342.6555 bnf-kc.com
Revised 11-2011

**EXHIBIT 2**
ATTACHMENT 3.3
BNF 0455

11125.J05 REV (9/11)

# LOCAL REGISTRAR'S CERTIFICATION OF DEATH
### WARNING: It is illegal to duplicate this copy by photostat or photograph.

JUL 24 2017

Original Received

Fee for this certificate, $6.00

This is to certify that the information here given is correctly copied from an original Certificate of Death duly filed with me as Local Registrar. The original certificate will be forwarded to the State Vital Records Office for permanent filing.

JUN 0 5 2017

*Beverly J. Baughman*
Local Registrar

Date Issued

P 23664605
Certification Number

---

COMMONWEALTH OF PENNSYLVANIA • DEPARTMENT OF HEALTH • VITAL RECORDS

# CERTIFICATE OF DEATH

male

June 2017

53

Ohio

Finacee

LANCASTER General Hospital    LANCASTER, PA 17603    LANCASTER

June 5 2017    YORK County    CREMATORY

Y66K  PA 17401    Daniel W. Vliegh    FD 011796 L

Four Funeral Home    477 N Ogden Street, Dover Pa 17315

BoilerMAKER

ConstrucTion    MD446089

JUN 1 2017    Y... PM

## CAUSE OF DEATH

a. Traumatic Brain Injury

b. Gunshot wound to the head

May 31, 2017    14 PM

Vehicle    Boileman, Front St, Columbia, Pa 17512

D.U.-inflicted gunshot wound to the head

DATSyChRonic

67-609    *Beverly J. Baughman*    June 5, 2017

Lancaster PA 17601

1455722

---

**EXHIBIT 2**

ATTACHMENT 3.4
BNF 0456

JUL 24 2017

To Whom this may concern

[redacted] [redacted] were together from 1997-2017.
We lived together for 20 yrs. We
held our selves out into the community
as husband & wife. At the time
we got together there was common law
marriage. We did not feel that we
needed a marriage certificate. We
Shared responsibility of All. He was
on my Health insurance. We bought
cars together, and we also shared car
insurance. [redacted] was on my checking
account over 7 years ago. I was not
able to obtain information. Banks do
not hold onto records over 7 yrs. [redacted]
had tax issues recently, that is why
he was not on my checking account.
I Also wore A diamond wedding ring
on my hand. [redacted] mother gave him to
give me. I Relied on [redacted] Income
for 20 years. I am sure that [redacted]
[redacted] would of wanted nothing more
than for me to be taken care of
financially. [redacted] 7/20/17

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CAROLYN N. [illegible], Notary Public
West Manchester Twp., York County
My Commission Expires Nov. 6, 2018

**EXHIBIT 2**
ATTACHMENT 3.5
BNF 0457

JUL 24 2017

To whom this letter may concern,

_____ had raised me since I was 5 years of age. At this time it was the year of 1997. My mother _____ had just began her 20 year relationship with _____, from the year of 1998, up until _____ recent death on 6/1/17, my mother had shared her entire life with this man, physically, financially, mentally, and emotionally. My mother and _____ shared not only their lives together, but they also shared a home, bank accounts, vehicles, and several other assets. In my eyes as well as everyone else's, my mother and _____ were practically married. I looked at _____ as my father, considering he helped raise me, most of my life. He did his best to make sure we were well taken care of during his 20 year relationship, with my mother. Now that _____ is unfortunately deceased, although at rest; I know that he would want nothing more, than for my mother _____ to be taken care of, physically and financially. To whomever reads this letter; I ask that you please show sincerity, and bestow mercy upon my mother.

Son of _____

Step-Son of _____

**EXHIBIT 2**
ATTACHMENT 3.6
BNF 0458

July 14, 2017

JUL 24 2017

To whom it may Concern:

This letter is written to advise you that my sister ☐ (☐) ☐ and ☐ ☐ have been living together in Pennsylvania for the past 20 years. I consider them to be Spouses. They Equally shared expenses and responsibilities for the home in which they lived. They had health Insurance together as well as they purchased vehicles together. In my eyes I consider them Spouses of each other.

July 14, 2017

*[Notary seal: BETTY JO REYNOLDS, NOTARY, EXPIRES December 14 2020, PUBLIC, LEE COUNTY GEORGIA]*

Betty Jo Reynolds

**EXHIBIT 2**
ATTACHMENT 3.7
BNF 0459

JUL 24 2017

July 7, 2017

TO WHOM IT MAY CONCERN:

In reference to the marital status of my son ▮▮▮▮▮ to ▮▮▮▮▮
I do confirm that the two named above have been living as a couple from the mid nineties until the untimely death of my son. They presented themselves as a happy and loving couple anytime in my presences.▮▮▮ always referred ▮▮▮▮ as his wife to me in many conversations we had over the past twenty plus years. Being his father, I'm sure he thought that he didn't need a marriage certificate since common law was in place at the time.

▮▮▮ always presented ▮▮▮ as his wife when in company of friends and family, I do know that he shared his pay with her and paid the household expenses for the past twenty plus years.

I feel that they are married in every way that is considered normal. They shared everything that married people do.

STATE OF FLORIDA
COUNTY OF Clay

Sworn to (or affirmed) and subscribed before me
this 8ᵗʰ day of July, 2017, by ▮▮▮▮▮
                                    Fa Lu
Notary Public's Signature        Notary Name
Personally Known _____ OR
Type of Identification Produced FL DL

FA LU
Commission # GG 34858
My Commission Expires
September 29, 2020

EXHIBIT 2
ATTACHMENT 3.8
BNF 0460

JUL 24 2017

To whom it may concern,

 moved in with my mother ▉▉▉▉▉▉▉ in 1998. Since then ▉▉ raised me as his son and I looked to him as my Father. I lost a Father on June 1st and my Mother lost a Husband. Our lives will never be the same. He will be deeply missed.

Sincerely,

7-13-17

*(Notary seal: KEVIN R BALLIET, NOTARY PUBLIC, HARFORD CO. MARYLAND, EXP. 3-16-2018)*

**EXHIBIT 2**
ATTACHMENT 3.9
**BNF 0461**

JUL 2 4 2017

SunTrust Bank
PO Box 305053
Nashville TN 37230-5053



**SUNTRUST**

07/05/2017

## Certificate of Lien Satisfaction

Re: SunTrust Account ending in:          9225
   Owner Name(s):

   Vehicle Identification Number:      KNAGM4A7XD5371288
   Make and Model:                     KIA OPTIMA
   Year:                               2013

Dear Sir or Madam:
Thank you for your recent inquiry regarding the title for our above referenced client's vehicle. This is to inform you SunTrust Bank no longer holds a security interest in the above as this vehicle and this obligation was paid in full.

The state no longer issues original paper titles to vehicle lien holders; therefore, SunTrust is unable to provide you with an original title or copy. The vehicle title was previously stored electronically and then released by the Department or Division of Motor Vehicles (DMV).

Sincerely,

SunTrust Bank

                              **AGENT**
Signed                                                 SunTrust Bank

**STATE OF Ohio**
**COUNTY OF Clinton**
Angela Knapp , being dully sworn, makes oath as follows:

1. This is to inform you SunTrust Bank no longer holds a security interest on the above as this vehicle
2. This client's obligation has a zero balance and was paid in full
3.

                                                       [affiant's signature]

Sworn to and subscribed before me this _____ day of JUL 0 5 2016

                                                       [notary's signature & seal]
   ALYSSA N. DEADY
   Notary Public, State of Ohio
   My Commission Expires: Feb. 2, 2022      My commission expires: _____ FEB 0 2 2022
   Recorded in Clinton County

SunTrust Bank is an Equal Housing Lender. Member FDIC. © 2013 SunTrust Banks, Inc. SunTrust is a federally registered service mark of SunTrust Banks, Inc.

KNAGM4A7XD5371288 (PA)              SN-LS-RO                    RD-15051

**EXHIBIT 2**
ATTACHMENT 3.10
BNF 0462

JUL 24 2017

# Financial Responsibility Identification Card

-Prepared on July 7, 2017

 **Nationwide®**
is on your side

- **Detach** your identification cards along the perforated lines.
- **Keep** this card in your vehicle.
- **See** section following ID Cards for What's enclosed.

**IMPORTANT NOTICE about your...**
**Financial Responsibility ID Card**

Pennsylvania law requires insurance companies to provide each Policyholder with an identification (ID) Card for each insured vehicle. The card shows that a Liability Insurance Policy has been issued which satisfies the **financial responsibility** requirements of the law.

You are required to maintain financial responsibility on each vehicle. It is against Pennsylvania law to use the ID card fraudulently – for example as proof of financial responsibility after the policy is terminated.

Your ID Card may be used for vehicle registration and replacing license plates. It must also be shown to any police officer, judge or hearing officer if requested. In the event of an accident your ID card may be used to exchange information with other drivers.

If you lose your ID card or – have any questions about its use – just get in touch with your agent.

0224800235 1012



Things in your life change. Make sure your insurance keeps up. Ask your agent for a free *On Your Side Review*.

Manage your account, make a payment, check the status of a claim and receive your bill by email with online Account Access. Visit nationwide.com/manage · see how easy it can be.

Sign up for convenient, automatic bill payment with Nationwide Easy Pay. To learn more, ask your agent or log in to nationwide.com/easypay.



| | Financial Responsibility Identification Card | |
|---|---|---|
| **Policy Number**<br>5837G 058128 | **Effective Date**<br>Aug 1, 2017 | **Expiration Date**<br>Feb 1, 2018 |
| | NOT VALID MORE THAN 1 YEAR FROM EFFECTIVE DATE | |
| **Year**<br>2013 | **Make/Model**<br>Kia/Optima L | **Vehicle Identification Number**<br>KNAGM4A75D5371250 |
| | 24 Hour Claims 1.800.421.3535 | |



Nationwide Property And Casualty Insurance Company
PO Box 30000
Raleigh NC 27612-0000                    **NAIC # 37877**

For Billing Questions: 1.877.262.0247
or your Nationwide Agent,
Yalithza Cruz at
717.854.8004.

**EXHIBIT 2**
ATTACHMENT 3.11
BNF 0463

Nationwide Insurance
Allied Insurance
Nationwide Agribusiness
**Nationwide**   Titan Insurance
On Your Side®   Victoria Insurance

JUL 24 2017

PO Box 2855 * Harrisburg, PA 17105 * *

December 7, 2009

**OUR INSURED:** ███████ & ███████
**OUR CLAIM NUMBER:** 58 37 D 781032 12042009 41
**DATE OF LOSS:** 12-04-2009

Dear ███████:

We received report of claim to your 2002 Mitsubishi Eclipse. Unfortunately, you do not carry physical damage coverage on this vehicle. We will not be able to appraise your vehicle or reimburse you for any damages to your vehicle. We will also be unable to pay any towing or storage charges that may be assessed to your vehicle.

If you have any questions, please contact me at the number below.

Sincerely,

*Katie L Bobb*

Nationwide Mutual Fire Insurance Company
Katie L. Bobb
Claims Department
1-(800)889-9872  Ext. 6985

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

**EXHIBIT 2**
ATTACHMENT 3.12
**BNF 0464**

Capital **BLUe** ✚

JUL 24 2017

July 13, 2017

Re: Member: ██████
    Inquiry #: 1718704286

Dear ████████:

This letter is concerning your inquiry requesting the status of your health insurance coverage with Capital BlueCross.

Our records indicate that your PPO/HSA medical, prescription, dental and vision coverage had an effective date of January 1, 2014 and a termination date of September 30, 2015.

If you have any questions, please contact our Major Market Customer Service Department at 866.987.4288 (TTY:  711), Monday through Friday, between 8 a.m. and 6 p.m.

Sincerely,

Customer Service Department

██████ was on my Health Ins.

Harrisburg, PA 17177 | capbluecross.com

Health care benefit programs issued or administered by Capital BlueCross and/or its subsidiaries, Capital Advantage Insurance Company®, Capital Advantage Assurance Company® and Keystone Health Plan® Central, independent licensees of the BlueCross BlueShield Association. Communications issued by Capital BlueCross in its capacity as administrator of programs and provider relations for all companies.

**EXHIBIT 2**
ATTACHMENT 3.13
BNF 0465

JUL 2 4 2017.

 **Sovereign Bank**

July 28, 2008

RE: 6817379733

Dear ▮▮▮▮▮ and ▮▮▮▮▮:

Thank you for allowing Sovereign Bank to service your borrowing needs. The above referenced loan has been paid in full. Enclosed please find your title for which our encumbrance has been satisfied. Please retain the title for your records as proof of ownership.

Should you have questions about your account or would like information about other products and services we offer, please visit your neighborhood community banking office or contact us at 1-877-SOV-BANK(1-877-768-2265) between 7:00 a.m. to 11:00 p.m., EST, 7 days a week. For customers with hearing impairments, please call 1-800-428-9121 (TTY/TDD). One of our Customer Service Representatives will be pleased to assist you.

Sincerely,

*Linda Sunday*

Linda Sunday
Consumer Loan Servicing Center
Mail Code: 10-421-LS2
PO Box 12646
Reading, PA 19612

Enclosure (1)

U RSAT

**EXHIBIT 2**
ATTACHMENT 3.14
**BNF 0466**

JUL 24 2017

## COMMONWEALTH OF PENNSYLVANIA
### CERTIFICATE OF TITLE FOR A VEHICLE

FUEL TYPE: GASOLINE

171.049999020775.001

| KNAGM4A7XD537L286 | 2013 | KIA | 73216658701.0A |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| SDN | 0 | 0 | 7/05/13 | 000425 | 0 |
|---|---|---|---|---|---|
| BODY TYPE | CUP | SEAT CAP | PRIOR TITLE STATE | ODOM. PROD. DATE | ODOM. MILES | ODOM. STATUS |

| 7/05/13 | 7/05/13 | | | | |
|---|---|---|---|---|---|
| DATE PA-TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
5 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
6 = EXEMPT FROM ODOMETER DISCLOSURE

**JOINT OWNERSHIP WITH RIGHTS OF SURVIVORSHIP**
(REGISTERED OWNER(S))

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
G = COLLECTIBLE VEHICLE
O = OUT OF COUNTRY
D = ORDINARILY IMPOD. FOR NON-U.S. VEHICLE
H = AGRICULTURAL VEHICLE
L = LOGGING VEHICLE
K = ISWAS A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED-THEFT VEHICLE
V = VEHICLE CONTAINS REISSUED VIN
X = FLOOD VEHICLE
X = ISWAS A TAXI

Department of Transportation

FIRST LIEN FAVOR OF:

SECOND LIEN FAVOR OF:

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward the Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee.

| FIRST LIEN RELEASED | DATE |
|---|---|
| BY | |
| AUTHORIZED REPRESENTATIVE | |

SECOND LIEN RELEASED | DATE

MAILING ADDRESS

By _____
AUTHORIZED REPRESENTATIVE

**pennsylvania**
DEPARTMENT OF TRANSPORTATION

I certify that the class of taxes, the official records of Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

**LESLIE S. RICHARDS**
Secretary of Transportation

### D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED

SUBSCRIBED AND SWORN TO BEFORE ME:

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" ((on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

____ MO ____ DAY ____

SIGNATURE OF PERSON ADMINISTERING OATH

**SIGN IN PRESENCE OF A NOTARY**

IF NO LIEN, CHECK ☐   IS THIS AN ELT? (IF YES, FIN REQUIRED)   YES ☐   NO ☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

CITY | STATE | ZIP

IF NO 2ND LIEN, CHECK ☐   IS THIS AN ELT? (IF YES, FIN REQUIRED)   YES ☐ NO ☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER:

2ND LIENHOLDER NAME

SIGNATURE OF APPLICANT OR AUTHORIZED SIGNER

STREET

SIGNATURE OF CO-APPLICANT/TITLE OF BUSINESS SIGNER

CITY | STATE | ZIP

STORE IN A SAFE PLACE. IF LOST, APPLY FOR A DUPLICATE. ANY ALTERATION OR ERASURE VOIDS THIS

6787678

**EXHIBIT 2**
ATTACHMENT 3.15
BNF 0467



## NATIONWIDE AUTO POLICY DECLARATIONS

Page 01 of 02

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your policy provides the coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated. Your policy complies with the motorists' financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.

**Policy Number:**
58 37 D  781032

**Policyholder:**
**(Named Insured)**

JUL 24 2017

&

**Issued:**
DEC 19, 2007

**Policy Period From:**

JAN 13, 2008  to  JUL 13, 2008   but only if the required premium for this period has been paid and only for six    month renewal periods if renewal premiums have been paid as required. This policy is initially effective at (1) the time the application for insurance is completed, or (2) 12:01 a.m. on the first day of the policy period, whichever is later. Each renewal period begins and ends at 12:01 a.m. standard time at the address of the named insured stated herein. This policy cancels at 12:01 a.m. at the address of the named insured stated herein.

---

**IMPORTANT MESSAGES:**

IF THIS DECLARATIONS PAGE SHOWS THAT COLLISION COVERAGE APPLIES TO YOUR AUTO, THERE IS ALSO COLLISION COVERAGE FOR DAMAGE TO A RENTED AUTO. COVERAGE IS SUBJECT TO CONDITIONS AND LIMITATIONS LISTED IN THE POLICY OR ATTACHED ENDORSEMENTS.

**INSURED VEHICLE(S) & SCHEDULE OF COVERAGES**

1.   **2002 MITS ECLIPSE**          ID #4A3AE85H72E038217

| Coverages | Limits Of Liability | Six Month Premium |
|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE LESS $   500 | $   64.60 |
| COLLISION | ACTUAL CASH VALUE LESS $   500 | $  392.70 |
| PROPERTY DAMAGE LIABILITY | $    5,000 EACH OCCURRENCE | $  113.20 |
| BODILY INJURY LIABILITY | $   15,000 EACH PERSON | |
| | $   30,000 EACH OCCURRENCE | |
| UNINSURED MOTORISTS-BODILY INJURY | REJECTED | $   92.80 |
| UNDERINSURED MOTORISTS-BODILY INJURY | REJECTED | |
| FIRST PARTY BENEFITS | | |
| OPTION 1-MEDICAL BENEFIT | $    5,000 | $   48.30 |
| LIMITED TORT | | |
| | TOTAL | $  709.60 |

LIENHOLDER-WAYPOINT BANK          LIEN EXPIRES ON SEP 11, 2008

LISTED DRIVERS:

| # | Driver Name | Birth Date | Marital Status | License Number |
|---|---|---|---|---|
| 01 | | | SINGLE | 26868192 |

NAMED ENDORSEMENT                    1969A

THE FOLLOWING DRIVERS ARE EXCLUDED FROM ALL COVERAGES/ALL VEHICLES ON THE POLICY:

V-0100-A

**EXHIBIT 2**
ATTACHMENT 3.16
BNF 0468

JUL 24 2017

APPLIED DISCOUNTS:

PASSIVE RESTRAINT    SAFE DRIVER        ACCIDENT FREE       MULTI LINE

Policy Form & Endorsements:   V537B 2248    1969A

Office Use: C 918556
            JUN 19, 2007                    $    0.00

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY      23779    Home Office - Columbus, Ohio
Countersigned At: HARRISBURG, PA.                  By: ROBERT SCOTTPEIFFER

## IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT : R SCOTT PEIFFER INC
                                                             717-854-6004

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 800-798-7783

**EXHIBIT 2**
ATTACHMENT 3.17
**BNF 0469**

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

JUL 24 2017

YORK KIA, INC.
1305 ROOSEVELT AVE PO BOX 7248
YORK PA 17404

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 4.39 % | 2600.29 | 17646.71 | 20247.00 | 24747.00 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 73 | 269.76 | 09/15/2017 |

ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including ) ............ $ 18084.21
2 Total Downpayment =

NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract,
you may only cancel it if the seller agrees to or for legal cause. You cannot cancel this contract simply because
you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be _____ a contract
and retain its right to receive a part of _____

DO NOT SIGN THIS CONTRACT IN BLANK.
YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN.
PROTECT YOUR LEGAL _____

Buyer Signs _____ 07/01/17 Co-Buyer Signs _____ 07/01/17

**EXHIBIT 2**
ATTACHMENT 3.18
BNI 0470

**NOV 3 0 2017**

## Members1st
### FEDERAL CREDIT UNION

Send inquiries to:

5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

| | |
|---|---|
| Main Switchboard: | (717) 697-1181 or (800) 253-2328 |
| Call-24: | (717) 697-4372 or (800) 253-4372 |
| TDD: | (717) 697-5312 or (800) 253-2328 ext. 5312 |
| TeleBranch: | (717) 795-6049 or (800) 237-7288 |

**Member's Statement of Account**

| | FROM | TO | |
|---|---|---|---|
| | 07-27-02 | 07-31-02 | 1 of 1 |

MEMBERS 1ST OFFERS A VACATION
CLUB THAT CAN BE OPENED ANY
TIME DURING THE YEAR WITH NO
MINIMUM BALANCE REQUIRED

| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|
| | | **SUFFIX:00 SAVINGS** | | .00 |
| 072702 | | SHARE DEPOSIT | 25.00 | 25.00 |
| | | JOINT OWNERS: _____ | | |
| | | Y-T-D DIVIDENDS: .00 | | |
| | | TRUTH IN SAVINGS INFORMATION | | |
| | | ANNUAL PERCENTAGE YIELD / 1.75% | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SUFFIX:11 CHECKING**

| | | | |
|---|---|---|---|
| BEGINNING BALANCE | .00 | | |
| DEPOSITS | 9.95 | | |
| DRAFTS | .00 | TOTAL NUMBER DRAFTS CLEARED | 0 |
| DEBITS/FEES | .00 | | |
| MAINT/SERVICE CHGS | .00 | YOUR AVG DAILY BALANCE WAS | 9.95 |
| ENDING BALANCE | 9.95 | YOUR LOW MONTH BALANCE WAS | 9.95 |

| 072702 | | TAKE DEPOSIT | 9.95 | 9.95 |
|---|---|---|---|---|

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

JOINT OWNERS: _____
                    Y-T-D DIVIDENDS:        .00

        TRUTH IN SAVINGS INFORMATION

ANNUAL PERCENTAGE YIELD        / 1.00%

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SUFFIX:01 PSL CREDIT LINE**
**PERIODIC RATE MAY VARY ON THIS LOAN**
**ANNUAL PERCENTAGE RATE** 11.0000% DAILY PERIODIC RATE .0301370%
                              PREVIOUS LOAN BALANCE                .00
                        **FINANCE CHARGE** PRINCIPAL
072702 ** ANNUAL PERCENTAGE RATE ** 11.0000% DAILY PERIODIC RATE .0301370%

LOAN LIMIT:      500.00 AVAILABLE FUNDS        500.00
YTD FINANCE CHARGE PAID:        .00        NEW LOAN BALANCE            .00
CURRENT PAYMENT:        .00 PAST DUE:        .00 TOTAL:        .00 DUE:00-00-00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FOR 2002**

| | * IRA YTD DIVIDENDS | * OTHER YTD DIVIDENDS | * TOTAL YTD DIVIDENDS | * TOTAL YTD WITHHOLDING | * TOTAL YTD FORFEITURES * |
|---|---|---|---|---|---|
| | .00 | .00 | .00 | .00 | .00 |

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

**EXHIBIT 2**
ATTACHMENT 3.19
BNF 0471

NOV 3 0 2017

**Members 1st**
FEDERAL CREDIT UNION

Send inquiries to:
5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard: (717) 697-1161 or (800) 283-2328
Call-24: (717) 697-4372 or (800) 283-4372
TDD: (717) 697-5312 or (800) 283-2312 ext. 5312
TeleBranch: (717) 795-9049 or (800) 237-7288

Member's Statement of Account

| | 08-01-02 | 08-31-02 | 1 of 2 |

JOIN MEMBERS 1st AT THE 17TH ANNUAL PENNSYLVANIA NATIONAL HORSE SHOW AND RACE IVC 63709. SEE GENERAL PAINTING IN THE ENCLOSED INSERT FOR MORE INFORMATION.

| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|
| | | SUFFIX:00 SAVINGS | | 25.00 |
| | | JOINT OWNERS: | | |
| | | Y-T-D DIVIDENDS: | .00 | |
| | | TRUTH IN SAVINGS INFORMATION | | |
| | | ANNUAL PERCENTAGE YIELD    /  1.75% | | |
| | | SUFFIX:11 CHECKING | | |
| | | BEGINNING BALANCE        9.95 | | |
| | | DEPOSITS              3731.36 | | |
| | | DRAFTS                 616.37   TOTAL NUMBER DRAFTS CLEARED | | 7 |
| | | DEBITS/FEES           1228.90 | | |
| | | MAINT/SERVICE CHGS        .00   YOUR AVG DAILY BALANCE WAS | | 887.48 |
| | | ENDING BALANCE        1916.04   YOUR LOW MONTH BALANCE WAS | | 9.95 |
| | 080202 | EASY DEPOSIT | 431.52 | 441.47 |
| | 080202 | ACH TRANSACTION        REG-E TRANSACTION | -9.95 | 431.52 |
| | | LIBERTY CHECK    -           - CHK ORDER | | |
| | 081402 | SHARE DEPOSIT | 650.00 | 1081.52 |
| | 081502 | SHARE DEPOSIT | 531.51 | 1613.03 |
| | 081502 | POINT OF SALE          0815009712 | -20.86 | 1592.17 |
| | | RT 74 DAVCNS330969DOVER 042998PACNS CVS PHARMA | | |
| | 081602 | TFR TO LOAN       220748-02 | -299.00 | 1293.17 |
| | | WAL MART | -7.52 | 1285.65 |
| 0817 | 081602 | POINT OF SALE        33410 | | |
| | | YORK  W        PAUS | | |
| 0817 | 081602 | POINT OF SALE        27741 | -85.00 | 1200.65 |
| | | SHELDON KEYSER AND ASSOYORK    PAUS | | |
| | 081702 | ATM WITHDRAWAL       0817234436 | -151.50 | 1049.15 |
| | | 3 S MAIN ST      DOVER     PA | | |
| 0818 | 081602 | POINT OF SALE        60305 | -23.17 | 1025.98 |
| | | DLK SURPLUS GROCERYSKC RED LION   PAUS | | |
| 0818 | 081602 | POINT OF SALE        72150 | -8.43 | 1017.55 |
| | | KEYBOARD WORLD INC    YORK    PAUS | | |
| 0818 | 081702 | POINT OF SALE        11364 | -10.14 | 1007.41 |
| | | MAKES GROCERY    SFO DOVER    PAUS | | |
| 0818 | 081602 | POINT OF SALE        40418 | -42.38 | 965.03 |
| | | AT & 7 WIRELESS OF WESTYORK    PAUS | | |
| 0819 | 081702 | POINT OF SALE        20905 | -15.40 | 949.63 |
| | | SPANGLER'S ACE HARDWAREWELLSVILLE   PAUS | | |
| 0819 | 081702 | POINT OF SALE        20910 | -8.46 | 941.17 |
| | | SPANGLER'S ACE HARDWAREWELLSVILLE   PAUS | | |
| 0819 | 081602 | POINT OF SALE        79421 | -21.33 | 919.84 |
| | | CLAIRE'S BOUTIQUES 5397YORK.    PAUS | | |
| 0819 | 081602 | POINT OF SALE        13915 | -19.48 | 900.36 |
| | | NATIONAL VISION EYECAREYORK    PAUS | | |
| 0819 | 081802 | POINT OF SALE        2678 | -21.80 | 878.56 |
| | | EXXONMOBIL18  09656471 YORK    PAUS | | |
| 0820 | 081602 | POINT OF SALE        14726 | -6.25 | 872.31 |
| | | PUB ON THE TRAIL    YORK    PAUS | | |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

**EXHIBIT 2**
ATTACHMENT 3.20
BNF 0472

NOV 3 0 2017



**Members 1st**
FEDERAL CREDIT UNION

Send inquiries to:
6800 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard: (717) 697-1101 or (800) 283-2328
Call-24: (717) 697-4372 or (800) 283-4372
TDD: (717) 697-5312 or (800) 283-2328 ext. 6312
TeleBranch: (717) 795-6049 or (800) 237-7288

**Member's Statement of Account**

| Account Number | Period | To | Page |
|---|---|---|---|
| ▓▓▓▓ | 09-01-02 | 09-30-02 | 1 of 4 |



JOIN US ON THURSDAY, OCTOBER
17TH AS OUR MEMBERS...

| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|---|
| | | **SUFFIX:00 SAVINGS** | | | 25.00 |
| | | JOINT OWNERS: ▓▓▓▓ | | | |
| | | Y-T-D DIVIDENDS: | .00 | | |
| | | TRUTH IN SAVINGS INFORMATION | | | |
| | | ANNUAL PERCENTAGE YIELD | / 1.75% | | |
| | | **SUFFIX:11 CHECKING** | | | |
| | | BEGINNING BALANCE | 1916.04 | | |
| | | DEPOSITS | 5153.38 | | |
| | | DRAFTS | 2324.67 | TOTAL NUMBER DRAFTS CLEARED | 24 |
| | | DEBITS/FEES | 2592.61 | | |
| | | MAINT/SERVICE CHGS | .00 | YOUR AVG DAILY BALANCE WAS | 1693.89 |
| | | ENDING BALANCE | 2152.04 | YOUR LOW MONTH BALANCE WAS | 768.54 |
| 0901 | 083102 | POINT OF SALE | | 29214 | -20.73 | 1895.31 |
| | | BLOCKBUSTER VIDEO #9035YORK | PAUS | | |
| | 090102 | POINT OF SALE | | 32384 | -15.09 | 1880.22 |
| | | FRIENDLY RESTAURANT #86YORK | PAUS | | |
| 0901 | 083102 | POINT OF SALE | | 60763 | -45.99 | 1834.23 |
| | | BJS FUEL #9063    WOX YORK | PAUS | | |
| 0901 | 083102 | POINT OF SALE | | 97179 | -25.86 | 1808.37 |
| | | BJ WHOLESALE #0063 WOX YORK | PAUS | | |
| 0901 | 083102 | POINT OF SALE | | 97161 | -13.77 | 1794.60 |
| | | BJ WHOLESALE #0063 WOX YORK | PAUS | | |
| | 090102 | ATM WITHDRAWAL | | 0901171152 | -101.50 | 1693.10 |
| | | 800 EAST MARKET STYORK | PA | | |
| 0902 | 083102 | POINT OF SALE | | 16165 | -21.03 | 1672.07 |
| | | THE HOME DEPOT 4125    YORK | PAUS | | |
| 0903 | 090202 | POINT OF SALE | | 21075 | -72.40 | 1599.67 |
| | | ADVANCE AUTO PARTS #124DOVER | PAUS | | |
| 0904 | 090202 | POINT OF SALE | | 6324 | -3.31 | 1596.36 |
| | | TURKEY HILL 218    DOVER | PAUS | | |
| 0904 | 090302 | SHARE DRAFT #    1114 | | 0903009182 | -10.00 | 1586.36 |
| 0904 | 090302 | SHARE DRAFT #    1110 | | 0903022934 | -24.66 | 1561.70 |
| 0904 | 090302 | SHARE DRAFT #    1109 | | 0903025316 | -90.00 | 1471.70 |
| 0906 | 083102 | POINT OF SALE | | 771 | -122.78 | 1348.92 |
| | | TUFFY SERVICE CENTER #0COLUMBUS | OHUS | | |
| 0905 | 090402 | POINT OF SALE | | 0904001608 | -101.51 | 1247.41 |
| | | 2130 PALOMINO ROADDOVER | PAGIANT FOOD IN | | |
| 0905 | 090402 | POINT OF SALE | | 11444 | -91.99 | 1155.42 |
| | | BRY*CHADWICK TEL ORD    800-525-4420 INUS | | | |
| | | EASY DEPOSIT | | | 500.00 | 1655.42 |
| 0906 | 090502 | POINT OF SALE | | 2304 | -18.75 | 1636.67 |
| | | EAST BERLIN BEVERAGE    EAST BERLIN PAUS | | | |
| 0906 | 090502 | SHARE DRAFT #    1108 | | 0905003432 | -23.19 | 1613.48 |
| 0906 | 090502 | SHARE DRAFT #    1112 | | 0905007385 | -835.47 | 778.01 |
| | | TAKE DEPOSIT | | | 724.35 | 1502.36 |
| 0906 | 090502 | POINT OF SALE | | 6347 | -5.79 | 1496.57 |
| | | CVS #1622    LEMOYNE    PAUS | | | |

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

**EXHIBIT 2**
ATTACHMENT 3.21
BNF 0473

NOV 3 0 2017

Send inquiries to:

**Members1**
FEDERAL CREDIT UNION

5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard: (717) 697-1181 or (800) 283-2328
Call-24: (717) 697-4372 or (800) 283-4372
TDD: (717) 697-5312 or (800) 283-2328 ext. 5312
TeleBranch: (717) 795-5048 or (800) 227-7255

**Member's Statement of Account**

| | 10-01-02 | 10-31-02 | 1 | 4 |



| | | TRANSACTION DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|---|
| | | SUFFIX:00 SAVINGS | | | 25.00 |
| | | JOINT OWNERS: | Y-T-D DIVIDENDS: | .00 | |
| | | TRUTH IN SAVINGS INFORMATION | | | |
| | | ANNUAL PERCENTAGE YIELD | / 1.75% | | |
| | | SUFFIX:11 CHECKING | | | |
| | | BEGINNING BALANCE | 2152.04 | | |
| | | DEPOSITS | 4882.20 | | |
| | | DRAFTS | 2689.47 | TOTAL NUMBER DRAFTS CLEARED | | 23 |
| | | DEBITS/FEES | 4342.17 | | |
| | | MAINT/SERVICE CHGS | .00 | YOUR AVG DAILY BALANCE WAS | | 1052.02 |
| | | ENDING BALANCE | 2.60 | YOUR LOW MONTH BALANCE WAS | | .00 |
| | 100102 | ATM WITHDRAWAL<br>3 S MAIN ST    DOVER    PA | | 1001061951 | -31.50 | 2120.54 |
| 1001 | 093002 | POINT OF SALE<br>KARNS QUALITY FOOD SNQ LEMOYNE    PAUS | | 14595 | -9.30 | 2111.24 |
| 1001 | 093002 | POINT OF SALE<br>COMPAQ CONSUMER GRP WEB0008880220    UTUS | | 30001 | -63.55 | 2047.69 |
| 1002 | 100102 | POINT OF SALE<br>EAST BERLIN BEVERAGE    EAST BERLIN PAUS | | 2302 | -22.75 | 2024.94 |
| 1002 | 092902 | POINT OF SALE<br>SAN CARLOS TKZ HOP    YORK    PAUS | | 97817 | -20.00 | 2004.94 |
| 1002 | 100102 | SHARE DRAFT #    1139 | | 1001004685 | -835.47 | 1169.47 |
| 1002 | 100102 | POINT OF SALE<br>BJS FUEL #9063    WOX YORK    PAUS | | 74960 | -16.00 | 1153.47 |
| 1003 | 100202 | SHARE DRAFT #    1132 | | 1002003745 | -31.00 | 1122.47 |
| 1003 | 100202 | SHARE DRAFT #    1141 | | 1002019552 | -222.43 | 900.04 |
| | 100302 | EASY DEPOSIT | | | 694.98 | 1595.02 |
| 1004 | 100302 | SHARE DRAFT #    1140 | | 1003023978 | -20.00 | 1575.02 |
| 1004 | 100302 | SHARE DRAFT #    1142 | | 1003020006 | -30.00 | 1545.02 |
| 1005 | 100302 | POINT OF SALE<br>HESS # 38422    ETTERS    PAUS | | 8483 | -8.36 | 1536.66 |
| 1005 | 100402 | SHARE DRAFT #    1136 | | 1004007747 | -37.46 | 1499.20 |
| 1005 | 100402 | POINT OF SALE<br>KARNS QUALITY FOOD SNQ LEMOYNE    PAUS | | 18869 | -14.80 | 1484.40 |
| | 100602 | ATM WITHDRAWAL<br>1500 KENNETH RD    YORK    PA | | 1006144739 | -41.50 | 1442.90 |
| 1007 | 100602 | POINT OF SALE<br>GIANT FOOD STORES #206 DOVER    PAUS | | 37608 | -123.20 | 1319.70 |
| 1007 | 100602 | POINT OF SALE<br>TRACTOR-SUPPLY-CO #0234YORK    PAUS | | 56469 | -65.92 | 1253.78 |
| 1008 | 100602 | POINT OF SALE<br>BIG LOTS #010200010165 YORK    PAUS | | 99939 | -19.36 | 1234.42 |
| 1008 | 100702 | POINT OF SALE<br>KARNS QUALITY FOOD SNQ LEMOYNE    PAUS | | 14990 | -16.00 | 1218.42 |
| 1008 | 100702 | POINT OF SALE<br>CVS #6042    DOVER    PAUS | | 6680 | -4.62 | 1213.80 |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

**EXHIBIT 2**
ATTACHMENT 3.22
BNF 0474

NOV 3 0 2017



**Members1st**
FEDERAL CREDIT UNION

Send inquiries to:

5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard: (717) 697-1101 or (800) 283-2328
Call-24: (717) 697-4372 or (800) 283-4372
TDD: (717) 697-5312 or (800) 283-2328 ext. 5312
TeleBranch: (717) 795-0049 or (800) 237-7288

Member's
Statement
of Account

| | 11-01-02 | 31-30-02 | 1 | 3 |



| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|
| | | **SUFFIX:00 SAVINGS** | | 25.00 |
| | | JOINT OWNERS: | | |
| | | Y-T-D DIVIDENDS: .00 | | |
| | | TRUTH IN SAVINGS INFORMATION | | |
| | | ANNUAL PERCENTAGE YIELD / 1.75% | | |
| | | - - - - - - - - - - - - - - - - - - - - | | |
| | | **SUFFIX:11 CHECKING** | | |
| | | BEGINNING BALANCE 2.60 | | |
| | | DEPOSITS 5653.26 | | |
| | | DRAFTS 2104.89   TOTAL NUMBER DRAFTS CLEARED | | 24 |
| | | DEBITS/FEES 1591.88 | | |
| | | MAINT/SERVICE CHGS .00   YOUR AVG DAILY BALANCE WAS | | 1503.22 |
| | | ENDING BALANCE 1959.09   YOUR LOW MONTH BALANCE WAS | | .00 |
| | 110402 | REG-E TRANSACTION | -182.48 | -179.88 |
| | | NATIONWIDE · INS PREM | | |
| | 110402 | TFR FROM LOAN 220748-01 | 179.88 | .00 |
| | 110502 | MOVE DEPOSIT TRAN | 1164.46 | 1164.46 |
| 1107 | 110602 | SHARE DRAFT # 1165 1106020306 | -50.00 | 1114.46 |
| 1107 | 110602 | SHARE DRAFT # 1162 1106021568 | -85.46 | 1029.00 |
| 1107 | 110602 | SHARE DRAFT # 1160 1106003533 | -367.48 | 661.52 |
| 1108 | 110702 | SHARE DRAFT # 1161 1107016863 | -68.44 | 593.08 |
| | 110802 | EASY DEPOSIT | 1233.39 | 1826.47 |
| 1109 | 110802 | SHARE DRAFT # 1164 1108000073 | -115.00 | 1711.47 |
| 1111 | 110902 | POINT OF SALE 40045 | -98.36 | 1613.11 |
| | | THE EMBERS STEAKHOUSE &YORK PAUS | | |
| 1111 | 111002 | POINT OF SALE 85240 | -42.25 | 1570.86 |
| | | SAN CARLOS THE HOP YORK PAUS | | |
| 1111 | 111002 | POINT OF SALE 85242 | -12.75 | 1558.11 |
| | | SAN CARLOS THE HOP YORK PAUS | | |
| 1111 | 110902 | POINT OF SALE 28409 | -4.38 | 1553.73 |
| | | RUTTER'S FARM STRE #22 DOVER PAUS | | |
| 1112 | 111102 | POINT OF SALE 27267 | -14.63 | 1539.10 |
| | | KARNS QUALITY FOOD SHO LEMOYNE PAUS | | |
| 1112 | 111102 | POINT OF SALE 33898 | -10.59 | 1528.51 |
| | | BLOCKBUSTER VIDEO #9035YORK PAUS | | |
| 1113 | 111102 | POINT OF SALE 65509 | -20.01 | 1508.50 |
| | | BJS FUEL #9063 WOX YORK PAUS | | |
| 1113 | 111202 | SHARE DRAFT # 1168 1112032707 | -15.65 | 1492.85 |
| 1113 | 111102 | POINT OF SALE 94316 | -25.99 | 1466.86 |
| | | RITE AID STORE 1894 DOVER PAUS | | |
| | 111302 | ATM WITHDRAWAL 1113062214 | -51.50 | 1415.36 |
| | | 3 S MAIN ST DOVER PA | | |
| 1113 | 111202 | POINT OF SALE 36410 | -15.01 | 1400.35 |
| | | HAKES GROCERY SFO DOVER PAUS | | |
| 1114 | 111302 | SHARE DRAFT # 1169 1113037507 | -25.00 | 1375.35 |
| 1114 | 111302 | SHARE DRAFT # 1163 1113029954 | -30.00 | 1345.35 |
| 1114 | 111302 | SHARE DRAFT # 1166 1113004835 | -300.00 | 1045.35 |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

**EXHIBIT 2**
ATTACHMENT 3.23
BNF 0475

**BOIL. .MAKER-BLACKSMITH NATIONAL PE. .ION TRUST**

754 Minnesota Ave.
Kansas City, KS 66101-2766
866-342-6555 or 913-342-6555



*3c*

October 12, 2018

Summers Nagy Law Offices
Attn: Sean E Summers
35 South Duke St
York, PA 17401

Re: ▮▮▮▮
SS#  XXX-XX-▮▮
     Deceased

Dear ▮▮▮▮▮:

    This will acknowledge receipt of your letter dated September 21, 2018 regarding our participant, ▮▮▮▮▮▮▮, and your client, ▮▮▮▮▮▮.

    Upon review of your letter with our Legal Counsel, the decision remains that ▮▮▮▮▮ and ▮▮▮▮▮ were not entered into a common-law relationship prior to January 1, 2005. The claim that ▮▮▮▮▮ and ▮▮▮▮▮ established a common-law marriage in September 1997(1998) is refuted by ▮▮ ▮▮▮▮ 2011 Beneficiary Cards along with the most recent receipt of the Death Certificate naming ▮▮▮▮▮ as ▮▮ ▮▮▮▮ fiance. Enclosed are copies of the Beneficiary Cards received in January 2011 and November 2011 along with a copy of ▮▮▮▮▮ Death Certificate for your reference.

    For questions regarding the information in this letter, please contact the Pension Department at 866-342-6555.

Sincerely,

Boilermaker-Blacksmith National
Pension Trust

GD:s

**EXHIBIT 2**

ATTACHMENT 4
BNF 0476

ATTACHMENT 4.1

**BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST**
**BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND**

DESIGNATION OF BENEFICIARY

JAN 04 2011   Register No.

Name _____   _____   _____
        (First)      (Middle Initial)   (Last)                    Soc. Sec. No.

Address _____   _____   _____   _____
                        Home Lodge        City            State      Zip

Date of Birth _____                    Year first worked at trade

I have reviewed the choices available to me and, subject to the terms of the Boilermaker-Blacksmith National Pension Trust and the terms of any group insurance policy issued to the Boilermakers National Health and Welfare Fund, I request that any sum becoming payable to a beneficiary under said trust or group insurance policy by reason of my death be payable to the following beneficiary(ies). It is my understanding and desire that this designation shall operate so as to revoke all designations previously made by me under said trust or group insurance policy.

(NOTE: Give full name of beneficiary - Example, Mary J. Smith, not Mrs. John R. Smith)

Name of Beneficiary        SS #        Relationship to me

                                        Fiance
                                        Daughter

PLEASE READ CAREFULLY (IF MORE THAN ONE IS NAMED, THE BENEFICIARIES SHALL SHARE EQUALLY UNLESS OTHERWISE SPECIFIED, PLACE A #1 BY PRIMARY BENEFICIARY(IES) AND A #2 FOR CONTINGENT BENEFICIARY(IES) IN THE EVENT ALL PRIMARY BENEFICIARIES PREDECEASE YOU. If any of the above beneficiaries predecease me, such beneficiary's share shall be payable to the remaining designated beneficiary(ies) who survive me.

Your Signature _____                              DATE 12/27/10 , 20 10

Marital Status:   ☐ Married   ☐ Single   ☑ Divorced   ☐ Widowed

If you are married and name any person other than your spouse as beneficiary, then your spouse must sign the following agreement.

I am aware of my benefit options and I agree to the beneficiary(ies) as designated above.

Signature of Spouse _____                         DATE _____ , 20

If you do not wish to designate the same beneficiary under the Health and Welfare Fund and the Pension Trust, you may request separate beneficiary cards from the Fund Office. If you have any questions please contact the Fund Office.

P1001 7/98 2004 01/10        **THE ABOVE MUST BE FILLED OUT COMPLETELY.**

**EXHIBIT 2**

BNF 0477

ATTACHMENT 4.2

**BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST**
**BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND**

DESIGNATION OF BENEFICIARY

DELIVERED

NOV - 7 2011   Register No.

MAIL CENTER   Soc. Sec. No. _____

Name _____  (First)  _____ (Middle Initial)  _____ (Last)

Address _____  City _____  State _____  Zip _____

Date of Birth _____  Home Lodge _13_  Year first worked at trade _1982_

I have reviewed the choices available to me and, subject to the terms of the Boilermaker-Blacksmith National Pension Trust and the terms of any group insurance policy issued to the Boilermakers National Health and Welfare Fund, I request that any sum becoming payable to a beneficiary under said trust or group insurance policy by reason of my death be payable to the following beneficiary(ies). It is my understanding and desire that this designation shall operate so as to revoke all designations previously made by me under said trust or group insurance policy.

(NOTE: Give full name of beneficiary - Example, Mary J. Smith, not Mrs. John R. Smith).

Name of Beneficiary _____  SS # _____  Related to me as _Fiancé_  Date of Birth _____

PLEASE READ CAREFULLY (IF MORE THAN ONE IS NAMED, THE BENEFICIARIES SHALL SHARE EQUALLY UNLESS OTHERWISE SPECIFIED. PLACE A #1 BY PRIMARY BENEFICIARY(IES) AND A #2 FOR CONTINGENT BENEFICIARY(IES) IN THE EVENT ALL PRIMARY BENEFICIARY(IES) PREDECEASE YOU). If any of the above beneficiaries predecease me, such beneficiary's share shall be payable to the remaining _____, who survive me.

Your Signature _____  DATE _10/29_  20 _11_

Marital Status:   ☐ Married   ☐ Single   ☑ Divorced   ☐ Widowed

If you are married and name any person other than your spouse as beneficiary, then your spouse must sign the following agreement.

I am aware of my benefit options and I agree to the beneficiary(ies) as designated above.

Signature of Spouse _____  DATE _____  20 _____

If you do not wish to designate the same beneficiary under the Health and Welfare Fund and the Pension Trust, you may request separate beneficiary cards from the Fund Office. If you have any questions please contact the Fund Office.

P1001 7/98 20M 01/10   **THE ABOVE MUST BE FILLED OUT COMPLETELY.**

**EXHIBIT 2**

BNF 0478

PH-BJ/05 REV (9/11)

# LOCAL REGISTRAR'S CERTIFICATION OF DEATH
**WARNING: It is illegal to duplicate this copy by photostat or photograph**

JUN 24 2017

Original Received

Fee for this certificate, $6.00



This is to certify that the information here given is correctly copied from an original Certificate of Death duly filed with me as Local Registrar. The original certificate will be forwarded to the State Vital Records Office for permanent filing.

P 23664605

**Certification Number**

JUN 0 5 2017

Beverly J. Baughman

Local Registrar / Registrar          Date Issued



**CERTIFICATE OF DEATH**

**EXHIBIT 2**

ATTACHMENT 4.3

BNF 0479

**SUMMERS NAGY LAW OFFICES**

READING · YORK · JOHNSTOWN

SUMMERSNAGY.COM

A

MAIL SERVICES
SEP 2 6 2018

September 21, 2018

*Via First Class Mail Only*
Boilermaker-Blacksmith
National Pension Trust
c/o Pension Department
754 Minnesota Ave.
Kansas City, KS 66101-2766

    Re:    ☐
          SSN: XXX-XX-☐
          Deceased

Dear Sir or Ma'am:

    Please be advised that this law firm represents ☐.

    Prior to ☐ untimely passing on June 1, 2017, ☐ was married to ☐ entered into a common-law marriage in September of 1998. Their marriage is recognized in the Commonwealth of Pennsylvania, as it was entered into before 2005. See 23 Pa. C.S.A. § 1103

    ☐ and ☐ were thus married for 19 years before his passing. They held themselves out to the public at large as a married couple, they shared a bank account, they held joint title to their car, and they were a family together.

    In the unfortunate event where one spouse is unable to affirm the exchange of words to evidence the existence of a common law marriage, the surviving spouse may raise a rebuttable presumption as to the existence of the marriage. Here, ☐ has done so and there has been no evidence to contradict their 19 year marriage. In other words, your company was required to disprove common law marriage and it was not ☐ requirement to do so once she satisfied the requirements of common law marriage.

    ☐ father has attested that ☐ was married to ☐ that ☐ saw himself as married to ☐ and that anyone in the public who saw them knew them to be married. ☐ brother attested that he also saw them as married. Their actions evidence as much, combined with their clear expressions of being in a married relationship. Of importance is the statement of ☐ biological

35 SOUTH DUKE STREET
YORK, PA 17401

717-812-8100
717-812-8108 FAX

**EXHIBIT 2**
ATTACHMENT 4.4
BNF 0480

September 21, 2018
Page No. 2

**SEP 2 6 2018**

sons. Both sons have attested that ▮▮▮▮▮ was their father, whose parental relationship was formed through the marriage to their mother. Together, ▮▮▮▮▮ and ▮▮▮▮▮ raised the boys as a married couple.

Due to the overwhelming evidence regarding ▮▮▮▮▮ and ▮▮▮▮▮ co-habitation, public perception, shared household and expenses, they entered into a common-law marriage, which lasted for 19 years before ▮▮▮ untimely passing.

In short, please consider this a **demand that annuity payments begin immediately in the amount of $4,258.92 per month, for a period of 60 months.** Alternatively, ▮▮▮▮▮ would consider a lump sum payment in exchange for a full release. Absent a response within twenty (20) days, we will proceed as if there is no interest in resolving this matter short of litigation. Please do not hesitate to contact me to discuss.

Sincerely,

Sean E. Summers

SES:rmq

**EXHIBIT 2**
ATTACHMENT 4.5
BNF 0481

Case 1:19-cv-00925-YK   Document 2   Filed 05/30/19   Page 1 of 2

# UNITED STATES DISTRICT COURT
for the
## MIDDLE DISTRICT OF PENNSYLVANIA



RECEIVED   JUN 2 5 2019

|  |  |
|---|---|
| _____ | Civil Action No.: |
| *Plaintiff* | **1:19-CV-00925–UN1** |
| v. | Hon. Unassigned I |
| **BOILERMAKER–BLACKSMITH NATIONAL PENSION TRUST** | |
| *Defendant* | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

   SEE COMPLAINT

A lawsuit has been filed against you.

   Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ––– you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

   Sean E. Summers –
   Summers Nagy Law Offices
   35 S. Duke Street
   York, PA 17401

   If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



PETER J. WELSH
_____
*CLERK OF COURT*

   s/ – Dawn McNew
_____
*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2019–05–30 14:15:59.0, Clerk USDC MDPA**

**EXHIBIT 2**
ATTACHMENT 5
**BNF 0482**

Case 1:19-cv-00925-YK   Document 2   Filed 05/30/19   Page 2 of 2

Civil Action No.: **1:19-CV-00925-UNl**

### PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____ on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____ , a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____ ; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true.            ——


_____                    _____
            Date                                *Server's Signature*

                                            _____
                                                *Printed name and title*


                                            _____
                                                *Server's Address*

Additional information regarding attempted service, etc:


**EXHIBIT 2**
ATTACHMENT 5.1
**BNF 0483**

JS 44 (Rev. 06/17)

Case 1:19-cv-00925-XK   Document 1   Filed 05/30/19   Page 1 of 8

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

Boilermaker-Blacksmith National Pension Trust

(b) County of Residence of First Listed Plaintiff   York County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Wyandotte County, KS
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Sean E. Summers, Esq.
Summers Nagy Law Offices
35 South Duke Street, York, PA 17401

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☒ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1  Original Proceeding | ☐ 2  Removed from State Court | ☐ 3  Remanded from Appellate Court | ☐ 4  Reinstated or Reopened | ☐ 5  Transferred from Another District *(specify)* | ☐ 6  Multidistrict Litigation - Transfer | ☐ 8  Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USCA 1132(a)(1)(B)

Brief description of cause:
Recovery of Plan Benefits Pursuant to 29 USCA 1132(a)(1)(B)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
255,535.22

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE _____   DOCKET NUMBER _____

DATE
05/30/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/Sean E. Summers, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**EXHIBIT 2**
ATTACHMENT 5.2
BNF 0484

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ████████████ , | : |
| *Plaintiff* | : |
| | : No. |
| v. | : |
| | : Jury Trial Demanded |
| BOILERMAKER-BLACKSMITH | : |
| NATIONAL PENSION TRUST | : |
| *Defendants* | : |

### COMPLAINT

AND NOW, on this 30th day of May, 2019, Plaintiff, ████████████

by and through her attorney Summers Nagy Law Offices, bring this civil

action against Defendant, Boilermaker-Blacksmith National Pension Trust,

for equitable relief to enforce the terms of a pension plan, and allege the

following:

### PARTIES

1.  Plaintiff ████████ ("████") is an adult individual

currently residing at ████████████████████████.

2.  At all relevant times, ████████ was and is a resident and citizen

of Pennsylvania.

**EXHIBIT 2**
ATTACHMENT 5.3
BNF 0485

3.     Defendant Boilermaker-Blacksmith National Pension Trust ("Boilermaker"), is a corporation providing benefit plans with a principal place of business at 754 Minnesota Ave., Kansas City, KS 66101.

4.     At all relevant times, Boilermaker has maintained a principal place of business in Kansas.

5.     At all relevant times, upon information and belief, Boilermaker is a resident and citizen of Kansas.

## JURISDICTION & VENUE

6.     This Court has jurisdiction under 29 U.S.C. §§ 1132(a)(1)(B), (e) and (f), as Plaintiff is a beneficiary seeking to recover benefits due.

7.     The venue for this action properly lies in this judicial district pursuant to 29 U.S.C. §§ 1132(e) as the acts complained of herein occurred in this judicial district.

## RELEVANT FACTUAL BACKGROUND

15.     On or about December 27, 2017, Boilermaker denied [ ] Application for Death Benefit related to the untimely passing of [ ] ("[ ]").

2

**EXHIBIT 2**
ATTACHMENT 5.4
**BNF 0486**

16.  ▮▮▮▮ made contributions to the Boilermaker pension plan from 1982 through 1984, and again from 1999 through the time of his untimely passing in 2017.

17.  Boilermaker alleged that there was no common law marriage between ▮▮▮▮ and ▮▮▮▮, and thus ▮▮▮▮ was not eligible for Surviving Spouse Benefits.

18.  On or around October 2011, ▮▮▮▮ named ▮▮▮▮ as the sole beneficiary of his plan.

19.  At the time of ▮▮▮▮ untimely passing, ▮▮▮▮ became entitled to approximately $255,535.22 through the Surviving Spouse Benefits.

20.  Prior to ▮▮▮▮ passing, ▮▮▮▮ and ▮▮▮▮ had entered into a Common Law Marriage, which began on or around September of 1998.

21.  In the Commonwealth of Pennsylvania, a common law marriage, as ▮▮▮▮ and ▮▮▮▮ had, is recognized when entered into before 2005. See 23 Pa. C.S.A. §1103.

22.  ▮▮▮▮ and ▮▮▮▮ began residing together and holding themselves out as married couple since September 1998, until the time of ▮▮▮▮ passing in July of 2017.

3

**EXHIBIT 2**
ATTACHMENT 5.5
**BNF 0487**

23.   Plaintiff and [        ] shared a bank account, held joint title to their car, and were a family together.

24.   [        ] and [        ] were a family, raising [        ] biological sons, as evidenced by letters from the biological sons and [        ] father.

25.   During [        ] application to Boilermaker for her Surviving Spouse Benefits, [        ] provided Boilermaker with various letters from family members discussing the marriage, bank statements listing [        ] and [        ] as joint owners of said bank account, joint title of their car, and an Affidavit of Common Law Marriage.

26.   Additionally, on or around September 21, 2018, [        ] submitted a letter to Boilermaker requesting payment of [        ] Surviving Spouse Benefits due to [        ] status as the common-law wife of [        ].

27.   On or around October 12, 2018, Boilermaker, again, denied [        ] her Surviving Spouse Benefits.

### COUNT ONE
### RECOVERY OF PLAN BENEFITS, PURSUANT TO
### 29 U.S.C.A. § 1132(a)(1)(B)

28.   The preceding paragraphs are hereby incorporated as though each was set forth in full.

4

**EXHIBIT 2**
ATTACHMENT 5.6
BNF 0488

29.    Under the terms of the pension plan between ▇▇▇ and Boilermaker, Boilermaker agreed to provide benefits to ▇▇▇ beneficiaries and Boilermaker failed to provide such benefits.

30.    ▇▇▇ is a beneficiary of ▇▇▇ plan as she was both a named beneficiary, and as she was the common-law wife of ▇▇▇.

31.    "A common-law marriage in Pennsylvania 'can only be created by an exchange of words spoken in the present tense, verba de praesenti, spoken with the specific purpose that the legal relationship of husband and wife be thereby created.'" Turner v. Barnhart, 245 F. Supp. 2d 681, 683 (E.D. Pa. 2003)(citation omitted).

32.    "Absent an 'exchange of words in the present tense,' (citation omitted) plaintiffs can point to cohabitation and their general reputation in the community as a married couple." Sokolowski v. Allied-Signal, Inc., 735 F. Supp. 163, 165 (E.D. Pa. 1990).

33.    ▇▇▇ was the common-law wife of ▇▇▇ and is thus a beneficiary of the Boilermaker plan.

34.    Boilermaker has breached its obligations set forth in the plan to provide ▇▇▇ Surviving Spouse Benefits.

5

**EXHIBIT 2**
ATTACHMENT 5.7
**BNF 0489**

35.    As a direct and proximate result of the conduct of Boilermaker in failing to pay benefits to ⬚ , ⬚ has been damaged in an amount equal to the amount of benefits to which ⬚ would have been entitled under the terms of the plan.

WHEREFORE, Plaintiff, ⬚ demands judgment in her favor and against the Defendant Boilermaker-Blacksmith National Pension Trust, for payment of Surviving Spouse Benefits in the amount of $255,535.22 and any and all damages recognized by law, to include, but not limited to, interest, attorney fees, punitive damages and/or treble damages, to the extent legally provided.

Respectfully Submitted,

SUMMERS NAGY LAW OFFICES

/s/Sean E. Summers

By: _____
    Sean E. Summers, Esq.
    35 South Duke Street
    York, PA 17401
    (717) 812-8100
    Fax: (717) 812-8108
    ssummers@summersnagy.com
    *Attorney for Plaintiff*

Dated: May 30, 2019

6

**EXHIBIT 2**
ATTACHMENT 5.8
**BNF 0490**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ████████████ | : | |
| *Plaintiff* | : | |
| | : | No. |
| v. | : | |
| | : | Jury Trial Demanded |
| BOILERMAKER- BLACKSMITH | : | |
| NATIONAL PENSION TRSUT | : | |
| *Defendants* | : | |

## VERIFICATION

I, ████████, Plaintiff, verify that the foregoing Complaint is true and correct to the best of my knowledge, information and belief. I understand that false statements herein are subject to the penalties of 28 U.S. Code § 1746 relating to unsworn declarations under penalty of perjury.

Date: ____05/02/2019_____

_____
Plaintiff

EXHIBIT 2
ATTACHMENT 5.9
BNF 0491

MICHAEL J. STAPP (KS, MO, NE & IA)
SCOTT L. BROWN (KS, MO & IA)
MICHAEL E. AMASH (KS, MO & IA)
NATHAN S. TERRY (KS & MO)
MICHELLE R. LEVINE (KS & MO)
NATHAN J. HILL (KS & MO)
JASON R. McCLITIS (KS, MO & IA)
FREDERICK ZARATE (KS, MO, NE & NY)

——————————

Of Counsel
ROBERT J. HENRY (KS, MO, NE, IA & DC)
CHARLES R. SCHWARTZ (KS)
Retired
JOSEPH W. MORELAND (2012)
THOMAS H. MARSHALL (2014)
JAMES R. (DICK) WAERS (2018)

**LAW OFFICES**
# BLAKE & UHLIG, P.A.
753 STATE AVENUE, SUITE 475
KANSAS CITY, KANSAS 66101
913-321-8884
913-321-2396 FAX

MISSOURI OFFICE
2500 HOLMES
KANSAS CITY, MO 64108
816-472-8883

NEBRASKA OFFICE
13505 B STREET
OMAHA, NE 68144
402-991-8801

July 29, 2019

KATE M. CIGRAND (KS & MO)
AMANDA K. RHODES (KS & MO)
PAUL E. TORLINA (KS & MO)
ERIC W. KOBET (KS, MO & NY)
BRANDON E. WOOD (KS & MO)
ERIC C. BECKEMEIER (KS & MO)
DUSTIN L. WATKINS (FL, IL, KS & MO)
SAMANTHA L. GROARK (MO)
ASHLEY N. SARCHET (MO)
NATHAN A. KAKAZU (MO)

——————————

JOHN J. BLAKE (1928-2006)
ROBERT L. UHLIG (1929-1981)
RICHARD B. THOMPSON (1952-1981)
ROBERT L. DAMERON (1951-2001)

5977.6056

_Via Electronic Mail_
Sean E. Summers, Esq.
Summers Nagy Law Offices
35 South Duke Street
York, PA  17401
summers@summersnagy.com

> Re:    ▮▮▮▮ v. Boilermaker-Blacksmith National Pension Trust

Dear Mr. Summers:

Per our phone conversation last week, during the review of ▮▮▮▮ file, it has been discovered that the Pension Trust erroneously failed to offer ▮▮▮▮ appeal rights in conjunction with its October 12, 2018 written determination that ▮▮▮▮ was not the common law spouse of ▮▮▮▮ (copy attached).

As a means of rectifying this error, the Pension Trust hereby extends appeal rights to ▮▮▮▮. Attached please find the Pension Trust's Claims and Appeals Procedures. The appeals process is an essential aspect of benefit determinations, and as such, the Third Circuit requires every participant to exhaust her remedies before bringing an ERISA action. _See Weldon v. Kraft, Inc.,_ 896 F.2d 793, 800 (3d Cir. 1990). Following exhaustion of the review procedures, ▮▮▮▮ has the right to maintain a suit against the Pension Trust under Section 502(a) of ERISA.

The Appeals Committee meets on a quarterly basis. Because the deadline for submitting materials for consideration at the September 2019 Appeals Committee meeting is in a couple of days, I believe the next reasonably available Appeals Committee meeting to submit an appeal would be the December 2019 meeting. Any appeal and additional information you may wish to have the Trustees consider should be delivered to my attention no later than October 31, 2019. If this is not an adequate amount of time for you to prepare and submit your appeal, please contact me for an extension to the next quarterly meeting of the Appeals Committee.

**EXHIBIT 2**
ATTACHMENT 6
BNF 0492

Please don't hesitate to call with any questions you may have about the appeals process.

Sincerely,

Nathan S. Terry
Nate A. Kakazu

Encl.

EXHIBIT 2
ATTACHMENT 6.1
BNF 0493

**ARTICLE X**
**Claims and Appeals**

**Section 10.01.  Claims and Appeals Procedures.**

(a)     No Employee, Participant, Retired Employee, Beneficiary, or other person shall have any right or claim to benefits under the Trust and the Plan, or any right or claim to payments from the Fund, other than as specified within this Plan document.  Any dispute as to eligibility, type, amount, duration of benefits or any right or claim to payments from the Fund shall be resolved by the Board or its designated representative under and pursuant to the Trust and the Plan, and its decision of the dispute, right or claim shall be final and binding upon all parties. No action may be brought for benefits under the Trust or the Plan or to enforce any rights under the Plan until after the claim has been submitted to and determined by the Board of Trustees or its designated representative (which may include the Fund Office or any subcommittee of the Board delegated authority regarding claims, or appeals of denials of claims), and the denial has been upheld on review by the Board of Trustees or a designated Committee of Trustees to which authority to make final decisions on appeal has been granted, and only subject to such judicial review as may be required by applicable law.

(b)     **Claim Filing.**  A claim shall be initiated by the filing of a completed and signed application form furnished by the Fund Office.  If the application form is not substantially complete, or if required documentation has not been furnished, the claimant will be notified as soon as reasonably possible what is necessary to complete the claim.

Claimants may pursue benefit claims through authorized representatives. The Plan will recognize the following individuals as representatives for claims and claim review requests:

(1)     An adult participant or beneficiary may speak on his or her own behalf.

(2)     A parent (natural or adoptive) may speak on behalf of his or her minor child who is a beneficiary of this Plan.

(3)     A person specifically designated by a participant, in writing, as the participant's authorized representative may speak on behalf of the participant. The Plan reserves the right to request additional information to determine whether a person is, in fact, authorized to act for the participant.

(4)     A person authorized by a court, a statute, or a valid power-of-attorney.

(c)     **Initial Benefit Determination.**  Approval or denial of the claim  will normally be made within ninety (90) days after the claim has been received by the Plan.  If additional time is required in special cases, the claimant will be notified in writing of the special circumstances requiring an extension of time and of the date by

83

**EXHIBIT 2**
ATTACHMENT 6.2
BNF 0494

which the Plan expects to render the final decision, which will be not more than ninety (90) days from the end of the initial time period. Written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. If additional information is required, the claimant will be notified and requested to furnish the necessary data within the 180-day time period specified by this provision.

(d)     **Notice of Denial.** If the claim is wholly or partially denied, written notice will be mailed to the claimant citing, in a manner reasonably calculated to be understood by the claimant: (1) the specific reason or reasons for the denial; (2) specific reference to the pertinent Plan provisions on which the denial is based; (3) a description of the additional material or information necessary for the claimant to perfect his claim and an explanation of why such material or information is necessary; (4) an explanation of the Plan's review procedure; and (5) a statement of the claimant's right to sue under Section 502(a) of ERISA after exhaustion of the review procedures.

(e)     **Filing of Appeal.** Any claimant who applies for benefits and is ruled ineligible, or who believes he or she did not receive the full amount of benefits to which he or she is entitled, or who is otherwise subject to an adverse benefit determination, shall have the right to appeal to the Board of Trustees, requesting review of the denial or other adverse benefit determination. The appeal will be decided by the Board of Trustees or by a committee of Trustees that has been allocated the authority and responsibility for making a final decision. The Trustees have discretion to decide whether a particular appeal is decided by the full Board or by a designated committee, and the claimant shall have no right to demand that his or her appeal be heard by the full Board or by any particular committee or other sub-group of Trustees. (References hereafter in this Section 10.01 to "Trustees" refer either to the full Board of Trustees or to the designated committee deciding the particular appeal.) The Trustees will give full and fair review to all appeals.

All appeals must be made in writing and must state the grounds on which the claimant believes he or she is entitled to relief. The written notice of appeal must be sent to the Trustees within 60 days after notification of the denial of the application for benefits (or claim). Failure to file a written notice of appeal within the time period prescribed will operate as a complete waiver of and bar to the right to appeal, and preclude judicial review.

(f)     **Scheduling of Appeal.** The Trustees will review a properly filed appeal at the next regularly scheduled quarterly meeting, unless the notice of appeal is received by the Trustees within thirty (30) days preceding the date of such meeting. In such case, the appeal will be reviewed no later than the date of the second quarterly meeting following the Trustees' receipt of the notice of appeal, unless there are special circumstances requiring a further extension of time, in which case a benefit determination will be rendered not later than the third quarterly appeals meeting following the Trustees' receipt of the notice of appeal. If such an extension of time for review is required because of special circumstances, such as the need to investigate the facts relating to the claim, then prior to the commencement of the

EXHIBIT 2
ATTACHMENT 6.3
BNF 0495

extension, the Plan will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the benefit determination will be made.

(g)   **Appeal Procedures.**

    (1)   The claimant shall be entitled to submit in writing issues, comments, documents, records, and other information relating to a claim.

    (2)   The claimant may appear in person, at his or her own expense, and address the Trustees only if the claimant makes such request in his or her notice of appeal and if the Trustees, in their sole discretion, determine that the claimant's attendance would be helpful or if the Trustees, in their sole discretion, determine that a hearing is necessary to resolve disputed factual issues. If the claimant is granted permission to appear before the Trustees, the claimant shall also have the right to be represented by legal counsel at his or her own expense in the presentation of the appeal.

    (3)   The claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits. A document, record, or other information is relevant if:

        (A)   It was relied upon by the Plan in making the decision;

        (B)   It was submitted, considered, or generated (regardless of whether it was relied upon); or

        (C)   It demonstrates compliance with the claims processing requirements or the procedural safeguards established to ensure or to verify consistent decision-making.

    (4)   The Trustees will review all comments, documents, records, and other information submitted by the claimant related to the claim, regardless of whether such information was submitted or considered in the initial benefit determination.

    (5)   The Trustees will not afford deference to the initial adverse benefit determination, but will decide the claim anew.

(h)   **Decision of Trustees.** The Trustees will issue a written notice of their decision on review within five days after the determination is made. The notification of the decision will include, in a manner reasonably calculated to be understood by the claimant:

85

**EXHIBIT 2**
ATTACHMENT 6.4
BNF 0496

(1)    The specific reasons for the decision.

(2)    The specific references to pertinent Plan provisions on which the decision is based.

(3)    A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits.

(4)    A statement of the claimant's right to bring a civil action under ERISA §502(a).

(i)    **Trustees' Authority.** The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required. The Trustees' findings and their determination of any dispute shall be final and binding upon all parties to the dispute. No action may be brought for benefits provided by this Plan document or any amendment or modification, or to enforce any right granted under the Plan, until after the claim has been submitted to and determined by the Trustees. The decision of the Trustees shall receive judicial deference unless the Trustees have abused the discretion granted to them under the Plan document and Trust Agreement.

All questions or controversies, of whatever character, arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, or as to the construction of language or meaning of this Plan document or the Trust Agreement, or as to any writing, decision, instrument, or account in connection with the operation of this Plan, shall be submitted to the Trustees for decision. The decision of the Trustees shall be final and binding on all persons dealing with the Plan or the Trust or claiming any benefit under the Plan.

**Section 10.02. Limitation of Actions.** Following the exhaustion of the Plan's Appeal Procedures, a claimant may bring a civil action under ERISA § 502(a). Except as otherwise provided in ERISA § 413, no suit shall be commenced against the Trust, a fiduciary, or a Fund employee, under (i) ERISA § 502(a); or (ii) any other federal or state law based on any claim or cause of action arising out of the administration or management of the Trust, more than two (2) years after the later of the date of an adverse benefit determination by the Trustees or the date on which the claim or cause of action arises.

**EXHIBIT 2**
ATTACHMENT 6.5
BNF 0497



## SUMMERS NAGY LAW OFFICES

READING · YORK · JOHNSTOWN

SUMMERSNAGY.COM

November 25, 2019

*Via First Class Mail and Electronic Mail*
Nate A. Kakazu, Esq.
Nathan S. Terry, Esq.
Blake & Uhlig, P.A.
753 State Ave., Ste. 475
Kansas City, KS 66101

      Re:    ████████████
              SSN: XXX-XX-████
              Deceased

Dear Counsel:

      As you have been previously advised, this law firm represents ████████. ████████ is the named beneficiary entitled to the benefits of ████████ pension upon his untimely death.  Please consider this correspondence her administrative appeal and forward to the appropriate personnel.  I trust that Boiler-Blacksmith National Pension Trust ("BBNPT") is still in possession of the previous documents submitted.

      ████████ properly submitted an application seeking a claim to the aforementioned benefits from ████████ pension.  Receipt of the application was acknowledged on August 18, 2017.  Correspondence from BBNPT acknowledging the claim requested proof of the common-law marriage between ████████ and ███ ████.  ████████ provided acceptable proof as noted in accordance with BBNPT policy "Acceptable Proofs of Age & Marriage Pre-Retirement Death" attached hereto, in the form of written affidavits.  The claim was denied and a written determination was issued on or about October 12, 2018.

      After denial of ████████ application, suit was filed on May 30, 2019 in the United States District Court for the Middle District of Pennsylvania, docketed 1:19-cv-00925-YK.  Upon review of the application, ████████ file and ████████ file, counsel for BBNPT provided correspondence, attached hereto, dated July 29, 2019, stating that appeal rights were to be extended.  In conformity with the Pension Trust's Claims and Appeals Procedures, ████████ hereby appeals the determination that she was not the common law spouse of ████████.

**EXHIBIT 2**
ATTACHMENT 7
BNF 0498

November 25, 2019
Page No. 2

████████ and █████████████ were thus married for nineteen (19) years
before his passing. They held themselves out to the public at large as a married couple,
they shared a bank account, they held joint title to their car, and they were a family
together.

In the unfortunate event where one spouse is unable to affirm the exchange of
words to evidence the existence of a common law marriage, the surviving spouse may
raise a rebuttable presumption as to the existence of the marriage. Here, ███████
███ has done so and there has been no evidence to contradict their nineteen (19)
year marriage. In other words, your company was *required to disprove common law
marriage* and it was not ███████████ requirement to do so once she satisfied the
requirements of common law marriage. The law has established a rebuttable
presumption of marriage where two elements are found: (1) constant cohabitation and
(2) a reputation of marriage. In re Estate of Manfredi, 159 A.2d 697 (Pa. 1960). And,
BBNPT has done nothing to carry its burden rebutting the presumption. Moreover,
BBNPT has not claimed that it is in possession of any testimony contradicting the
affidavits previously submitted.

████████ father has attested that ████ was married to ██████ that ███ saw
himself as married to ██████████ and that anyone in the public who saw them knew
them to be married. ████████████ brother attested that he also saw them as married.
Their actions evidence as much, combined with their clear expressions of being in a
married relationship. Of importance is the statement of ██████████████████ biological
sons. Both sons have attested that █████████████ was their father, whose parental
relationship was formed through the marriage to their mother. Together, █████████
and █████████████ raised the boys as a married couple. See In re Estate of Carter,
159 A.3d 970 (Pa. Super. Ct. 2017)(noting that words describing marriage in the
presence tense establish common law marriage).

Due to the *overwhelming evidence* regarding █████████ and ██████████████
co-habitation, public perception, shared household and expenses, they entered into a
common-law marriage, which lasted for at least nineteen (19) years before ██████
untimely passing. BBNPT has not provided any testimony contradicting the
aforementioned evidence provided by █████████. Thus, BBNPT cannot overcome the
rebuttable presumption of a common-law marriage.

**EXHIBIT 2**
ATTACHMENT 7.1
**BNF 0499**

November 25, 2019
Page No. 3


Kindly acknowledge receipt of this letter and consider this letter a request for consideration at the next Appeals Committee hearing.

Sincerely,

Sean E. Summers

SES
Enclosures

cc: 

EXHIBIT 2
ATTACHMENT 7.2
BNF 0500



**BOILERMAKER-BLACKSMITH**
NATIONAL PENSION TRUST

## ACCEPTABLE PROOFS OF

## AGE & MARRIAGE PRE-RETIREMENT DEATH

### Proof of Age - Submit ONE document from this group

- A statement/letter from the Social Security Administration providing the date of birth established
- Adoption Certificate
- Baptismal certificate or a statement as to the date of birth shown by a church record, certified by the custodian of such record
- Birth certificate
- Hospital birth record, signed by custodian of such record
- Immigration papers
- Marriage records showing the age or date of birth (application of a marriage license, church record) signed by the custodian of such record or a marriage certificate
- Medical Health Insurance Card if effective on 65th birthday
- Military Record showing age or date of birth
- Naturalization record
- Notification of registration of birth in a public registry of vital statistics
- Passport
- School record certified by the custodian of such record

### Proof of Marital Status - Submit ONE document from this group

- Marriage certificate (not a marriage license)
- Church record signed by the custodian of such record
- Common Law Affidavit (Complete the Pension Trust Office common law form and submit with the required supporting documentation as approved by the Pension Trust.)
- Divorce Decree (file stamped by the court)
- Separation Agreement (file stamped by the court)

Revised December 2014

**EXHIBIT 2**
ATTACHMENT 7.3
**BNF 0501**

February 27, 2018

To Whom this may concern;

        █████████ resided together from September 1998 to June 1, 2017. Common law marriage was in effect in Pennsylvania from 1997-2005. We resided at the same address until his death

Sincerely,

**EXHIBIT 2**
ATTACHMENT 7.4
BNF 0502

State of _Pennsylvania_

County of _York_

On this, the _27_ day of _February_ 2018, before me _Katelyn M Ness_ the

undersigned officer, personally appeared ████████████████████ known to me (or

satisfactorily proven) to be the person whose name is subscribed to the within instrument, and

acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Katelyn M. Ness, Notary Public
Dover Twp., York County
My Commission Expires Oct. 6, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Katelyn M. Ness_
Notary Signature

**EXHIBIT 2**
ATTACHMENT 7.5
BNF 0503

MICHAEL J. STAPP (KS, MO, NE & IA)
SCOTT L. BROWN (KS, MO & IA)
MICHAEL E. AMASH (KS, MO & IA)
NATHAN S. TERRY (KS & MO)
MICHELLE R. LEVINE (KS & MO)
NATHAN J. HILL (KS & MO)
JASON R. McCLITIS (KS, MO & IA)
FREDERICK ZARATE (KS, MO, NE & NY)

Of Counsel
ROBERT J. HENRY (KS, MO, NE, IA & DC)
CHARLES R. SCHWARTZ (KS)
Retired
JOSEPH W. MORELAND (2012)
THOMAS H. MARSHALL (2014)
JAMES R. (DICK) WAERS (2018)

**LAW OFFICES**

# BLAKE & UHLIG, P.A.

**753 STATE AVENUE, SUITE 475**
**KANSAS CITY, KANSAS 66101**
**913-321-8884**
**913-321-2396 FAX**

**MISSOURI OFFICE**
**2500 HOLMES**
**KANSAS CITY, MO 64108**
**816-472-8883**

**NEBRASKA OFFICE**
**13505 B STREET**
**OMAHA, NE 68144**
**402-991-6801**

KATE M. CIGRAND (KS & MO)
AMANDA K. RHODES (KS & MO)
PAUL E. TORLINA (KS & MO)
ERIC W. KOBET (KS, MO & NY)
BRANDON E. WOOD (KS & MO)
ERIC C. BECKEMEIER (KS & MO)
DUSTIN L. WATKINS (FL, IL, KS & MO)
SAMANTHA L. GROARK (MO)
ASHLEY N. SARCHET (MO)
NATHAN A. KAKAZU (MO)

JOHN J. BLAKE (1928-2006)
ROBERT L. UHLIG (1929-1981)
RICHARD B. THOMPSON (1952-1981)
ROBERT L. DAMERON (1951-2001)

5977.6056

July 29, 2019

*Via Electronic Mail*
Sean E. Summers, Esq.
Summers Nagy Law Offices
35 South Duke Street
York, PA 17401
summers@summersnagy.com

Re:    ▓▓▓ v. Boilermaker-Blacksmith National Pension Trust

Dear Mr. Summers:

Per our phone conversation last week, during the review of ▓▓▓ file, it has been discovered that the Pension Trust erroneously failed to offer ▓▓▓ appeal rights in conjunction with its October 12, 2018 written determination that ▓▓▓ was not the common law spouse of ▓▓▓ (copy attached).

As a means of rectifying this error, the Pension Trust hereby extends appeal rights to ▓▓▓. Attached please find the Pension Trust's Claims and Appeals Procedures. The appeals process is an essential aspect of benefit determinations, and as such, the Third Circuit requires every participant to exhaust her remedies before bringing an ERISA action. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990). Following exhaustion of the review procedures, ▓▓▓ has the right to maintain a suit against the Pension Trust under Section 502(a) of ERISA.

The Appeals Committee meets on a quarterly basis. Because the deadline for submitting materials for consideration at the September 2019 Appeals Committee meeting is in a couple of days, I believe the next reasonably available Appeals Committee meeting to submit an appeal would be the December 2019 meeting. Any appeal and additional information you may wish to have the Trustees consider should be delivered to my attention no later than <u>October 31, 2019</u>. If this is not an adequate amount of time for you to prepare and submit your appeal, please contact me for an extension to the next quarterly meeting of the Appeals Committee.

**EXHIBIT 2**

ATTACHMENT 7.6
BNF 0504

*Page 2 of 2*
*July 29, 2019 Ltr. to Mr. Sean Summers*

Please don't hesitate to call with any questions you may have about the appeals process.

Sincerely,

Nathan S. Terry
Nate A. Kakazu

Encl.

**EXHIBIT 2**
ATTACHMENT 7.7
**BNF 0505**

**ARTICLE X**
**Claims and Appeals**

**Section 10.01. Claims and Appeals Procedures.**

(a)    No Employee, Participant, Retired Employee, Beneficiary, or other person shall have any right or claim to benefits under the Trust and the Plan, or any right or claim to payments from the Fund, other than as specified within this Plan document. Any dispute as to eligibility, type, amount, duration of benefits or any right or claim to payments from the Fund shall be resolved by the Board or its designated representative under and pursuant to the Trust and the Plan, and its decision of the dispute, right or claim shall be final and binding upon all parties. No action may be brought for benefits under the Trust or the Plan or to enforce any rights under the Plan until after the claim has been submitted to and determined by the Board of Trustees or its designated representative (which may include the Fund Office or any subcommittee of the Board delegated authority regarding claims, or appeals of denials of claims), and the denial has been upheld on review by the Board of Trustees or a designated Committee of Trustees to which authority to make final decisions on appeal has been granted, and only subject to such judicial review as may be required by applicable law.

(b)    **Claim Filing.** A claim shall be initiated by the filing of a completed and signed application form furnished by the Fund Office. If the application form is not substantially complete, or if required documentation has not been furnished, the claimant will be notified as soon as reasonably possible what is necessary to complete the claim.

Claimants may pursue benefit claims through authorized representatives. The Plan will recognize the following individuals as representatives for claims and claim review requests:

(1)    An adult participant or beneficiary may speak on his or her own behalf.

(2)    A parent (natural or adoptive) may speak on behalf of his or her minor child who is a beneficiary of this Plan.

(3)    A person specifically designated by a participant, in writing, as the participant's authorized representative may speak on behalf of the participant. The Plan reserves the right to request additional information to determine whether a person is, in fact, authorized to act for the participant.

(4)    A person authorized by a court, a statute, or a valid power-of-attorney.

(c)    **Initial Benefit Determination.** Approval or denial of the claim will normally be made within ninety (90) days after the claim has been received by the Plan. If additional time is required in special cases, the claimant will be notified in writing of the special circumstances requiring an extension of time and of the date by

83

**EXHIBIT 2**
ATTACHMENT 7.8
BNF 0506

which the Plan expects to render the final decision, which will be not more than ninety (90) days from the end of the initial time period. Written notice of the extension shall be furnished to the claimant prior to the commencement of the extension. If additional information is required, the claimant will be notified and requested to furnish the necessary data within the 180-day time period specified by this provision.

(d)     **Notice of Denial.** If the claim is wholly or partially denied, written notice will be mailed to the claimant citing, in a manner reasonably calculated to be understood by the claimant: (1) the specific reason or reasons for the denial; (2) specific reference to the pertinent Plan provisions on which the denial is based; (3) a description of the additional material or information necessary for the claimant to perfect his claim and an explanation of why such material or information is necessary; (4) an explanation of the Plan's review procedure; and (5) a statement of the claimant's right to sue under Section 502(a) of ERISA after exhaustion of the review procedures.

(e)     **Filing of Appeal.** Any claimant who applies for benefits and is ruled ineligible, or who believes he or she did not receive the full amount of benefits to which he or she is entitled, or who is otherwise subject to an adverse benefit determination, shall have the right to appeal to the Board of Trustees, requesting review of the denial or other adverse benefit determination. The appeal will be decided by the Board of Trustees or by a committee of Trustees that has been allocated the authority and responsibility for making a final decision. The Trustees have discretion to decide whether a particular appeal is decided by the full Board or by a designated committee, and the claimant shall have no right to demand that his or her appeal be heard by the full Board or by any particular committee or other sub-group of Trustees. (References hereafter in this Section 10.01 to "Trustees" refer either to the full Board of Trustees or to the designated committee deciding the particular appeal.) The Trustees will give full and fair review to all appeals.

All appeals must be made in writing and must state the grounds on which the claimant believes he or she is entitled to relief. The written notice of appeal must be sent to the Trustees within 60 days after notification of the denial of the application for benefits (or claim). Failure to file a written notice of appeal within the time period prescribed will operate as a complete waiver of and bar to the right to appeal, and preclude judicial review.

(f)     **Scheduling of Appeal.** The Trustees will review a properly filed appeal at the next regularly scheduled quarterly meeting, unless the notice of appeal is received by the Trustees within thirty (30) days preceding the date of such meeting. In such case, the appeal will be reviewed no later than the date of the second quarterly meeting following the Trustees' receipt of the notice of appeal, unless there are special circumstances requiring a further extension of time, in which case a benefit determination will be rendered not later than the third quarterly appeals meeting following the Trustees' receipt of the notice of appeal. If such an extension of time for review is required because of special circumstances, such as the need to investigate the facts relating to the claim, then prior to the commencement of the

84

**EXHIBIT 2**
ATTACHMENT 7.9
BNF 0507

extension, the Plan will notify the claimant in writing of the extension, describing the special circumstances and the date as of which the benefit determination will be made.

(g)   **Appeal Procedures.**

(1)   The claimant shall be entitled to submit in writing issues, comments, documents, records, and other information relating to a claim.

(2)   The claimant may appear in person, at his or her own expense, and address the Trustees only if the claimant makes such request in his or her notice of appeal and if the Trustees, in their sole discretion, determine that the claimant's attendance would be helpful or if the Trustees, in their sole discretion, determine that a hearing is necessary to resolve disputed factual issues. If the claimant is granted permission to appear before the Trustees, the claimant shall also have the right to be represented by legal counsel at his or her own expense in the presentation of the appeal.

(3)   The claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits. A document, record, or other information is relevant if:

(A)   It was relied upon by the Plan in making the decision;

(B)   It was submitted, considered, or generated (regardless of whether it was relied upon); or

(C)   It demonstrates compliance with the claims processing requirements or the procedural safeguards established to ensure or to verify consistent decision-making.

(4)   The Trustees will review all comments, documents, records, and other information submitted by the claimant related to the claim, regardless of whether such information was submitted or considered in the initial benefit determination.

(5)   The Trustees will not afford deference to the initial adverse benefit determination, but will decide the claim anew.

(h)   **Decision of Trustees.** The Trustees will issue a written notice of their decision on review within five days after the determination is made. The notification of the decision will include, in a manner reasonably calculated to be understood by the claimant:

85

**EXHIBIT 2**
ATTACHMENT 7.10
**BNF 0508**

(1)     The specific reasons for the decision.

(2)     The specific references to pertinent Plan provisions on which the decision is based.

(3)     A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits.

(4)     A statement of the claimant's right to bring a civil action under ERISA §502(a).

(i)     **Trustees' Authority.** The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required. The Trustees' findings and their determination of any dispute shall be final and binding upon all parties to the dispute. No action may be brought for benefits provided by this Plan document or any amendment or modification, or to enforce any right granted under the Plan, until after the claim has been submitted to and determined by the Trustees. The decision of the Trustees shall receive judicial deference unless the Trustees have abused the discretion granted to them under the Plan document and Trust Agreement.

All questions or controversies, of whatever character, arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, or as to the construction of language or meaning of this Plan document or the Trust Agreement, or as to any writing, decision, instrument, or account in connection with the operation of this Plan, shall be submitted to the Trustees for decision. The decision of the Trustees shall be final and binding on all persons dealing with the Plan or the Trust or claiming any benefit under the Plan.

**Section 10.02. Limitation of Actions.** Following the exhaustion of the Plan's Appeal Procedures, a claimant may bring a civil action under ERISA § 502(a). Except as otherwise provided in ERISA § 413, no suit shall be commenced against the Trust, a fiduciary, or a Fund employee, under (i) ERISA § 502(a); or (ii) any other federal or state law based on any claim or cause of action arising out of the administration or management of the Trust, more than two (2) years after the later of the date of an adverse benefit determination by the Trustees or the date on which the claim or cause of action arises.

86

**EXHIBIT 2**
ATTACHMENT 7.11
**BNF 0509**

July 7, 2017

TO WHOM IT MAY CONCERN:

In reference to the marital status of my son ████ to ████
I do confirm that the two named above have been living as a couple from the mid nineties until the untimely
death of my son. They presented themselves as a happy and loving couple anytime in my presences. ████
always referred ████ as his wife to me in many conversations we had over the past twenty plus years.
Being his father, I'm sure he thought that he didn't need a marriage certificate since common law was in place
at the time.
████ always presented ████ s his wife when in company of friends and family, I do know that he shared
his pay with her and paid the household expenses for the past twenty plus years.
I feel that they are married in every way that is considered normal. They shared everything that married people
do.

STATE OF FLORIDA
COUNTY OF _Clay_

Sworn to (or affirmed) and subscribed before me
this _6th_ day of _July_, 20_17_, by _
                                    _Fa Lu_
_____        _____
Notary Public's Signature          Notary Name
Personally Known _____ OR
Type of Identification Produced _Fl. DL_

FA LU
Commission # GG 34898
My Commission Expires
September 29, 2020

EXHIBIT 2
ATTACHMENT 7.12
BNF 0510

SunTrust Bank
PO Box 305053
Nashville TN 37230-5053



07/05/2017

▮▮▮▮▮▮▮▮▮▮

### Certificate of Lien Satisfaction

Re: SunTrust Account ending in:     9225
    Owner Name(s):

Vehicle Identification Number:     ▮▮▮KNAGM4A7XD5371288
Make and Model:     KIA OPTIMA
Year:     2013

Dear Sir or Madam:

Thank you for your recent inquiry regarding the title for our above referenced client's vehicle. This is to inform you SunTrust Bank no longer holds a security interest in the above as this vehicle and this obligation was paid in full.

The state no longer issues original paper titles to vehicle lien holders; therefore, SunTrust is unable to provide you with an original title or copy. The vehicle title was previously stored electronically and then released by the Department or Division of Motor Vehicles (DMV).

Sincerely,

SunTrust Bank

_Angela Knapp_    **AGENT**
Signed                    *SunTrust Bank*

STATE OF Ohio
COUNTY OF Clinton
_Angela Knapp_ , being dully sworn, makes oath as follows:

1. This is to inform you SunTrust Bank no longer holds a security interest on the above as this vehicle
2. This client's obligation has a zero balance and was paid in full
3.

Sworn to and subscribed before me this _____ day of **JUL 0 5 2017**      _Angela Knapp_
                                                *[affiant's signature]*

ALYSSA N. DEADY
Notary Public, State of Ohio
My Commission Expires: Feb. 2, 2022
Recorded in Clinton County

                                      *[notary's signature & seal]*

My commission expires:     **FEB 0 2 2022**

SunTrust Bank is an Equal Housing Lender. Member FDIC. © 2013 SunTrust Banks, Inc. SunTrust is a federally registered service mark of SunTrust Banks, Inc.

▮▮▮KNAGM4A7XD5371288 (PA)            SN-LS-RO            RD-15051

**EXHIBIT 2**
ATTACHMENT 7.13
BNF 0511

SUPPORT DIVISION

| | | Civil Action No. 93-A-01809-2 |
|---|---|---|
| | Plaintiff | GWINNETT SUPERIOR COURT |
| VERSUS | | GWINNETT COUNTY, GEORGIA |
| | Defendant | LAWRENCEVILLE, GEORGIA 30246 |

**FINAL JUDGMENT**

Upon consideration of this case upon evidence submitted as provided by law, it is the judgment of the Court that a total divorce be granted, that is to say a divorce a vinculo matrimonii, between the parties to the above stated case, upon legal principles.

And it is considered, ordered and decreed by the Court that the marriage contract heretofore entered into between the parties to this case, from and after this date, be and is set aside and dissolved as fully and effectually as if no such contract had ever been made or entered into, and

Plaintiff and Defendant, formerly husband and wife, in the future shall be held and considered as separate and distinct persons altogether unconnected by any nuptial union or civil contract, whatsoever.

The (maiden) (prior) name of the wife, to wit, _____ restored to her.

The Agreement between the parties dated March 19, 1993 is incorporated in and made a part of this Judgment and Decree. Each of the parties is ordered and directed to comply with the terms and conditions thereof.

Whenever in violation of the terms of this order, there shall have been a failure to make the support payments due hereunder so that the amount unpaid is equal to or greater than the amount payable for one month, the payments required to be made may be collected by the process of continuing garnishment for support.

Domestic Relations Superior Court Rules 1.1 through 1.13 adopted by the judges of the Gwinnett Superior Court on December 30, 1985, are incorporated herein by reference; and any payor failing to comply with the terms of this decree is subject to an automatic increase in his support obligations to cover the cost of collection by the Support Division, as provided in Rule 1.11.

In compliance with Domestic Relations Rule 001 of the Gwinnett Superior Court adopted December 30, 1985, the Payor of all installments of child support and/or alimony required to be paid pursuant to the terms of this decree and any settlement agreement incorporated herein IS HEREBY ORDERED to make all such payments at the times specified, by cash, cashier's check or money order, personally or by mailing same to:
SUPPORT DIVISION — SUPERIOR COURT • Gwinnett Superior Court • P.O. Box 344 • Lawrenceville, GA 30246

The Cost of these proceedings are taxed against the _____

So ordered this 26th day of April, 19 83.

Judge, Superior Court, Gwinnett County, Georgia

This is to certify that the above is a true and correct copy of the Judgment in the above stated case.

This _____ day of _____, 198___.

Deputy Clerk, Superior Court, Gwinnett County, Georgia

**EXHIBIT 2**
ATTACHMENT 7.14
**BNF 0512**

## NATIONWIDE AUTO POLICY DECLARATIONS

Page 01 of 02

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your policy provides the coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated. Your policy complies with the motorists' financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.

**Policy Number:**
58 37 D  761032

**Policyholder:**
(Named Insured)

**Issued:**
DEC 19, 2007

**Policy Period From:**

JAN 13, 2008  to  JUL 13, 2008   but only if the required premium for this period has been paid and only for six      month renewal periods if renewal premiums have been paid as required. This policy is initially effective at (1 the time the application for insurance is completed, or (2) 12:01 a.m. on the first day of the policy period, whicheve is later. Each renewal period begins and ends at 12:01 a.m. standard time at the address of the named insured stated herein. This policy cancels at 12:01 a.m. at the address of the named insured stated herein.

**IMPORTANT MESSAGES:**

IF THIS DECLARATIONS PAGE SHOWS THAT COLLISION COVERAGE APPLIES TO YOUR AUTO, THERE IS ALSO COLLISION COVERAGE FOR DAMAGE TO A RENTED AUTO. COVERAGE IS SUBJECT TO CONDITIONS AND LIMITATIONS LISTED IN THE POLICY OR ATTACHED ENDORSEMENTS.

**INSURED VEHICLE(S) & SCHEDULE OF COVERAGES**

1.   2002 MITS ECLIPSE          ID #4A3AE85H72E038217

| Coverages | Limits Of Liability | Six Month Premium |
|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE LESS $   500 | $   84.60 |
| COLLISION | ACTUAL CASH VALUE LESS $   500 | $  392.70 |
| PROPERTY DAMAGE LIABILITY | $    5,000 EACH OCCURRENCE | $  113.20 |
| BODILY INJURY LIABILITY | $   15,000 EACH PERSON / $   30,000 EACH OCCURRENCE | $   92.80 |
| UNINSURED MOTORISTS-BODILY INJURY | REJECTED | |
| UNDERINSURED MOTORISTS-BODILY INJURY | REJECTED | |
| FIRST PARTY BENEFITS | | |
| OPTION 1-MEDICAL BENEFIT | $    5,000 | $   46.30 |
| LIMITED TORT | | |
| | TOTAL | $  709.60 |

LIENHOLDER-WAYPOINT BANK          LIEN EXPIRES ON SEP 11, 2008

**LISTED DRIVERS:**

| # | Driver Name | Birth Date | Marital Status | License Number |
|---|---|---|---|---|
| 01 | | | SINGLE | 26868192 |

NAMED ENDORSEMENT              1969A

THE FOLLOWING DRIVERS ARE EXCLUDED FROM ALL COVERAGES/ALL VEHICLES ON THE POLICY:

V-0100-A

**EXHIBIT 2**
ATTACHMENT 7.15
**BNF 0513**



00021
R SCOTT PEIFFER INC
320 LOUCKS RD
YORK PA 17404-1752

# Duplicate Notice of Cancellation

Total Due:   $117.30
Due by: June 29, 2007
Renewal Date: January 13, 2007
Prepared:  June 12, 2007

Account Number:
5800952250
Policy Number:
5837D 781032

**How to Contact Us**

Nationwide Representative:
R SCOTT PEIFFER INC
717-854-6004





Hearing or Voice Impaired:
1-800-622-2421 (TTY Only)

This NOTICE OF CANCELLATION
is for the installment premium on your
Automobile Insurance Policy.

See back of this notice for other important information about your insurance.

Note:
State law requires that we send this notice when your payment has not been received by the due date.
Your original due date was June 02, 2007.

If you have made your payment, please accept our thanks. If you have not paid your premium, please do so
immediately to prevent the possibility of financial loss from an accident.

NOTICE: Your Automobile Insurance Policy is CANCELLED for NON-PAYMENT of the premium due
at 12:01 A.M. on June 29, 2007.

Your policy will not cancel if a valid payment of the premium due is received before the cancellation date.

Any check, electronic payment, or debit/credit card payment refused by your bank may be subject to a
$20.00 fee. You may be charged a $5.00 fee for any payment received past the due date. Payments are
applied to any existing balances/fees first, then to the current balance due.

Full payment of the amount due is required to ensure continued coverage. Please contact your
Nationwide Representative for all of your payment options.

———————————RETAIN THIS PORTION FOR YOUR RECORDS———————————

**EXHIBIT 2**
ATTACHMENT 7.16
**BNF 0514**



EXHIBIT 2
ATTACHMENT 7.17
BNF 0515

**Members 1st**
FEDERAL CREDIT UNION

Send inquiries to:
5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard: (717) 697-1161 or (800) 283-2328
Call-24: (717) 697-4372 or (800) 283-4372
TDD: (717) 697-6312 or (800) 285-2328 ext. 5312
TeleBranch: (717) 795-6049 or (800) 237-7288

| Member's Statement of Account | Account Number | From | TO | Page |
|---|---|---|---|---|
| | | 09-01-02 | 09-30-02 | 1 of 4 |

JOIN US ON THURSDAY, OCTOBER 17TH, 2002, MEMBERS 1ST FEDERAL CREDIT UNION IS CELEBRATING INTERNATIONAL CREDIT UNION DAY. SEE THE ENCLOSED INSERT FOR MORE INFORMATION.

| TRAN. CODE | REF. DATE | TRANSACTION DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|
| | | SUFFIX:00 SAVINGS | | 25.00 |
| | | JOINT OWNERS: | | |
| | | Y-T-D DIVIDENDS: .00 | | |
| | | TRUTH IN SAVINGS INFORMATION | | |
| | | ANNUAL PERCENTAGE YIELD / 1.75% | | |
| | | SUFFIX:11 CHECKING | | |
| | | BEGINNING BALANCE 1916.04 | | |
| | | DEPOSITS 5153.28 | | |
| | | DRAFTS 2324.67 TOTAL NUMBER DRAFTS CLEARED | | 24 |
| | | DEBITS/FEES 2592.61 | | |
| | | MAINT/SERVICE CHGS .00 YOUR AVG DAILY BALANCE WAS | | 1693.89 |
| | | ENDING BALANCE 2152.04 YOUR LOW MONTH BALANCE WAS | | 768.54 |
| 0901 | 083102 | POINT OF SALE 29214 | -20.73 | 1895.31 |
| | | BLOCKBUSTER VIDEO #9035YORK PAUS | | |
| | 090102 | POINT OF SALE 32384 | -15.09 | 1880.22 |
| | | FRIENDLY RESTAURANT #86YORK PAUS | | |
| 0901 | 083102 | POINT OF SALE 60763 | -45.99 | 1834.23 |
| | | DJS FUEL #9063 WOX YORK PAUS | | |
| 0901 | 083102 | POINT OF SALE 97179 | -25.86 | 1808.37 |
| | | BJ WHOLESALE #0063 WOX YORK PAUS | | |
| 0901 | 083102 | POINT OF SALE 97161 | -13.77 | 1794.60 |
| | | BJ WHOLESALE #0063 WOX YORK PAUS | | |
| | 090102 | ATM WITHDRAWAL 0901171152 | -101.50 | 1693.10 |
| | | 800 EAST MARKET STYORK PA | | |
| 0902 | 083102 | POINT OF SALE 16165 | -21.03 | 1672.07 |
| | | THE HOME DEPOT 4125 YORK PAUS | | |
| 0903 | 090202 | POINT OF SALE 21075 | -72.40 | 1599.67 |
| | | ADVANCE AUTO PARTS #124DOVER PAUS | | |
| 0904 | 090202 | POINT OF SALE 6324 | -3.31 | 1596.36 |
| | | TURKEY HILL 218 DOVER PAUS | | |
| 0904 | 090302 | SHARE DRAFT # 1114 0903009182 | -10.00 | 1586.36 |
| 0904 | 090302 | SHARE DRAFT # 1110 0903022936 | -24.66 | 1561.70 |
| 0904 | 090302 | SHARE DRAFT # 1109 0903025316 | -90.00 | 1471.70 |
| 0904 | 083102 | POINT OF SALE 771 | -122.78 | 1348.92 |
| | | TUFFY SERVICE CENTER #0COLUMBUS OHUS | | |
| 0905 | 090402 | POINT OF SALE 0904001608 | -101.51 | 1247.41 |
| | | 2130 PALOMINO ROADDOVER PAGIANT FOOD IN | | |
| 0905 | 090402 | POINT OF SALE 11444 | -91.99 | 1155.42 |
| | | BRY*CHADWICK TEL ORD 800-525-4420 INUS | | |
| | 090502 | EASY DEPOSIT | 500.00 | 1655.42 |
| | 090502 | POINT OF SALE 2304 | -18.75 | 1636.67 |
| | | EAST BERLIN BEVERAGE EAST BERLIN PAUS | | |
| 0906 | 090502 | SHARE DRAFT # 1108 0905003432 | -23.19 | 1613.48 |
| 0906 | 090502 | SHARE DRAFT # 1112 0905007385 | -835.47 | 778.01 |
| | 090602 | TAKE DEPOSIT | 724.35 | 1502.36 |
| 0906 | 090502 | POINT OF SALE 4347 | -5.79 | 1496.57 |
| | | CVS #1622 LEMOYNE PAUS | | |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

**EXHIBIT 2**
ATTACHMENT 7.18
BNF 0516

**Members 1st**
FEDERAL CREDIT UNION

Send inquiries to:

5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard:  (717) 697-1161 or (800) 283-2328
Call-24:  (717) 697-4372 or (800) 283-4372
TDD:  (717) 697-5312 or (800) 283-2328 ext. 5312
TelaBranch:  (717) 795-5049 or (800) 237-7288

Member's
Statement
of Account

| Account Number | Date Paid | Date To | Page 1 |
|---|---|---|---|
|  | 07-27-02 | 07-31-02 | 1 of 1 |



MEMBERS 1ST OFFERS A VACATION
CLUB THAT CAN BE OPENED ANY
TIME DURING THE YEAR WITH NO
MINIMUM BALANCE REQUIRED!!!

| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|
|  |  | SUFFIX:00 SAVINGS | | .00 |
| 072702 |  | SHARE DEPOSIT | 25.00 | 25.00 |
|  |  | JOINT OWNERS: | | |
|  |  | Y-T-D DIVIDENDS: | .00 | |
|  |  | TRUTH IN SAVINGS INFORMATION | | |
|  |  | ANNUAL PERCENTAGE YIELD      / 1.75% | | |

SUFFIX:11 CHECKING

| | | | |
|---|---|---|---|
| BEGINNING BALANCE | .00 | | |
| DEPOSITS | 9.95 | TOTAL NUMBER DRAFTS CLEARED | 0 |
| DRAFTS | .00 | | |
| DEBITS/FEES | .00 | | |
| MAINT/SERVICE CHGS | .00 | YOUR AVG DAILY BALANCE WAS | 9.95 |
| ENDING BALANCE | 9.95 | YOUR LOW MONTH BALANCE WAS | 9.95 |

| 072702 | | TAKE DEPOSIT | 9.95 | 9.95 |

JOINT OWNERS:
                    Y-T-D DIVIDENDS:      .00

TRUTH IN SAVINGS INFORMATION

ANNUAL PERCENTAGE YIELD      / 1.00%

SUFFIX:01 PSL CREDIT LINE
**PERIODIC RATE MAY VARY ON THIS LOAN**
**ANNUAL PERCENTAGE RATE** 11.0000% DAILY PERIODIC RATE .0301370%
                                    PREVIOUS LOAN BALANCE              .00
                                **FINANCE CHARGE** PRINCIPAL
072702 ** ANNUAL PERCENTAGE RATE ** 11.0000%  DAILY PERIODIC RATE .0301370%

LOAN LIMIT:     500.00 AVAILABLE FUNDS     500.00
YTD FINANCE CHARGE PAID:        .00   NEW LOAN BALANCE              .00
CURRENT PAYMENT:        .00 PAST DUE:       .00 TOTAL:       .00 DUE:00-00-00

FOR 2002

| | IRA YTD DIVIDENDS | OTHER YTD DIVIDENDS | TOTAL YTD DIVIDENDS | TOTAL YTD WITHHOLDING | TOTAL YTD FORFEITURES |
|---|---|---|---|---|---|
| | .00 | .00 | .00 | .00 | .00 |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

**EXHIBIT 2**
ATTACHMENT 7.19
BNF 0517

# Members 1st
FEDERAL CREDIT UNION

| Account Number | .From | TO | Page |
|---|---|---|---|
| | 10-01-02 | 10-31-02 | of 4 |

| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | | AMOUNT | BALANCE |
|---|---|---|---|---|---|
| | 102302 | ATM WITHDRAWAL<br>1023 STATE ST      LEMOYNE      PA | 1021140926 | -20.00 | 999.35 |
| | 102102 | ACH TRANSACTION          RBG-B TRANSACTION<br>NATIONWIDE P&C   - 5837D 393775   - NW INTREPT | | -52.46 | 946.89 |
| 1022 | 101902 | POINT OF SALE<br>BJS FUEL #9063      WOX YORK      PAUS | 18928 | -14.76 | 932.13 |
| 1022 | 102102 | SHARE DRAFT #      1154 | 1021014851 | -17.00 | 915.13 |
| 1022 | 102102 | POINT OF SALE<br>SHEETZ #326          GETTYSBURG   PAUS | 24696 | -4.87 | 910.26 |
| 1022 | 102102 | POINT OF SALE<br>KARNS QUALITY FOOD SNQ LEMOYNE      PAUS | 14136 | -14.99 | 895.27 |
| 1023 | 102202 | SHARE DRAFT #      1153 | 1022004873 | -30.63 | 864.64 |
| 1023 | 102202 | SHARE DRAFT #      1152 | 1022005022 | -84.16 | 780.48 |
| | 102302 | ATM WITHDRAWAL<br>25 SANDOE ROAD     GETTYSBURG   PA | 1023120619 | -41.50 | 738.98 |
| 1024 | 102202 | POINT OF SALE<br>TURKEY HILL 218      DOVER        PAUS | 5903 | -10.00 | 728.98 |
| 1024 | 102302 | POINT OF SALE<br>GIANT FOOD STORES #306 DOVER       PAUS | 41084 | -41.11 | 687.87 |
| | 102402 | TAKE DEPOSIT | | 1640.88 | 2328.75 |
| 1025 | 102402 | POINT OF SALE<br>KARNS QUALITY FOOD SNQ LEMOYNE      PAUS | 8593 | -11.87 | 2316.88 |
| 1026 | 102302 | POINT OF SALE<br>WOX BEVERAGES INC     DOVER        PAUS | 63008 | -18.61 | 2298.27 |
| 1026 | 102402 | POINT OF SALE<br>RUTTER'S FARM STRE #46 EAST BERLIN  PAUS | 29458 | -10.00 | 2288.27 |
| 1027 | 102602 | POINT OF SALE<br>SHEETZ #326          GETTYSBURG   PAUS | 46365 | -5.86 | 2282.41 |
| | 102702 | POINT OF SALE<br>GAS063               YORK         PAI978001 | 1027004008 | -26.32 | 2256.09 |
| | 102702 | ATM WITHDRAWAL<br>3 S MAIN ST          DOVER        PA | 1027162220 | -301.50 | 1954.59 |
| | 102702 | ATM WITHDRAWAL<br>3 S MAIN ST          DOVER        PA | 1027170820 | -301.50 | 1653.09 |
| 1028 | 102702 | POINT OF SALE<br>GIANT FOOD STORES #306 DOVER       PAUS | 38286 | -18.25 | 1634.84 |
| 1028 | 102602 | POINT OF SALE<br>TEXACO INC 14633868049 GETTYSBURG  PAUS | 96941 | -10.03 | 1624.81 |
| | 102802 | EASY WITHDRAWAL | | -1236.62 | 388.19 |
| | 102802 | SHARE WITHDRAWAL | | -5.00 | 383.19 |
| | 102802 | TFR TO SHARES        223600-11 | | -283.19 | 100.00 |
| 1028 | 102602 | POINT OF SALE<br>BJS FUEL #9063      WOX YORK      PAUS | 26960 | -12.40 | 87.60 |
| 1028 | 102602 | LOAN ADV/DRAFT ACCT<br>TFR FROM LOAN      220748-01 | 26960 | 10.90 | 98.50 |
| 1028 | 102702 | POINT OF SALE<br>BJS FUEL #9063      WOX YORK      PAUS | 50333 | -49.50 | 49.00 |
| | | POINT OF SALE<br>TRACTOR-SUPPLY-CO #0234YORK       PAUS | | | |
| 1030 | 102902 | SHARE DRAFT #      1156 | 1029026241 | -34.94 | 14.06 |
| 1030 | 102902 | SHARE DRAFT #      1157 | 1029025962 | -50.00 | -35.94 |
| 1030 | 102902 | SHARE DRAFT #      1158 | 1029027714 | -71.35 | -107.29 |
| 1030 | 102902 | SHARE DRAFT #      1159 | 1029026240 | -82.91 | -190.20 |
| 1030 | 102902 | TFR FROM LOAN      220748-01 | | 190.20 | .00 |
| 1031 | 103002 | SHARE DRAFT #      1155 | 1030020334 | -30.01 | -30.01 |
| 1031 | 103002 | TFR FROM LOAN      220748-01 | | 30.01 | .00 |
| | 103102 | SWIPE 5 REBATE | | 2.60 | 2.60 |

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

| NO. | AMOUNT | NO. | AMOUNT | NO. | AMOUNT | NO. | AMOUNT |
|---|---|---|---|---|---|---|---|
| 3 | 14.00 | 1142 | 30.00 | 1150 | 11.00 | 1155 | 30.01 |
| *1132 | 31.00 | 1143 | 197.25 | 1151 | 14.31 | 1156 | 34.94 |
| *1136 | 37.46 | 1144 | 398.15 | 1152 | 84.16 | 1157 | 50.00 |
| *1139 | 835.47 | 1145 | 407.40 | 1153 | 30.63 | 1158 | 71.35 |
| 1140 | 20.00 | *1148 | 25.00 | 1154 | 17.00 | 1159 | 82.91 |
| 1141 | 222.43 | 1149 | 45.00 | | | TOTAL: | 2689.47 |

JOINT OWNERS: ▮▮▮▮▮▮▮

Y-T-D DIVIDENDS:          .00

TRUTH IN SAVINGS INFORMATION

ANNUAL PERCENTAGE YIELD          /  1.00%

--------------------------------------------------------------

**EXHIBIT 2**
ATTACHMENT 7.20
BNF 0518



**MEMBERS 1st**
FEDERAL CREDIT UNION

Send inquiries to:
5000 Louise Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard:  (717) 067-1151 or (800) 283-2328
EZ Call:            (717) 697-4372 or (800) 283-4372
TDD:           (717) 692-3312 or (800) 283-2328 ext. 5312
TeleBranch:        (717) 795-6049 or (800) 237-7288

Statement of Accounts

Oct 01, 2005 thru Oct 31, 2005

Account Number:

Account Balances at a Glance:
Checking:              0.00
Savings:              15.41
Certificates:          0.00
Loans:                 0.00
Money Management:      0.00

Page:   1  of   1

As your relationship with us grows, you benefit in terms of fewer fees, more
free services, reduced loan rates and bonus savings rates.  See the enclosed
insert for more information.

## CHECKING ACCOUNTS

**11 - CHECKING**

| Date | Transaction Description | Additions | Subtractions | Balance |
|------|------------------------|-----------|--------------|---------|
| Oct 01 | Balance Forward | | | 0.00 |
| Oct 31 | Ending Balance | | | 0.00 |

## SAVINGS ACCOUNTS

**00 - REGULAR SAVINGS**

| Date | Transaction Description | Additions | Subtractions | Balance |
|------|------------------------|-----------|--------------|---------|
| Oct 01 | Balance Forward | | | 15.41 |
| Oct 31 | Ending Balance | | | 15.41 |

## YTD SUMMARIES

TOTAL DIVIDENDS PAID
00 REGULAR SAVINGS                    0.00
11 CHECKING                           0.00

Total Year To Date Dividends Paid            0.00
NOTE: Total includes closed shares

**EXHIBIT 2**
ATTACHMENT 7.21
BNF 0519

**Members 1st**
FEDERAL CREDIT UNION

Send inquiries to:
6800 Louisa Drive
PO Box 40
Mechanicsburg, PA 17055
www.members1st.org

Main Switchboard: (717) 697-1161 or (800) 283-2328
Call-24: (717) 697-4372 or (800) 283-4372
TDD: (717) 697-3312 or (800) 283-2228 ext. 5312
TeleBranch: (717) 795-6049 or (800) 237-7288

| Member's Statement of Account | Account Number | From | TO | Page |
|---|---|---|---|---|
| | | 08-01-02 | 08-31-02 | 1 of 2 |

JOIN MEMBERS 1ST AT THE 57TH ANNUAL PENNSYLVANIA NATIONAL HORSE SHOW AND RECEIVE $2.00 OFF GENERAL ADMISSION. SEE THE ENCLOSED INSERT FOR MORE INFORMATION.

| TRANS DATE | EFF DATE | TRANSACTION DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|
| | | **SUFFIX:00 SAVINGS** | | 25.00 |
| | | JOINT OWNERS: | | |
| | | Y-T-D DIVIDENDS: .00 | | |
| | | TRUTH IN SAVINGS INFORMATION | | |
| | | ANNUAL PERCENTAGE YIELD / 1.75% | | |
| | | **SUFFIX:11 CHECKING** | | |
| | | BEGINNING BALANCE 9.95 | | |
| | | DEPOSITS 3751.36 | | |
| | | DRAFTS 616.37    TOTAL NUMBER DRAFTS CLEARED | | 7 |
| | | DEBITS/FEES 1228.90 | | |
| | | MAINT/SERVICE CHGS .00    YOUR AVG DAILY BALANCE WAS | | 887.48 |
| | | ENDING BALANCE 1916.04    YOUR LOW MONTH BALANCE WAS | | 9.95 |
| | 080202 | EASY DEPOSIT | 431.52 | 441.47 |
| | 080202 | ACH TRANSACTION    REG-E TRANSACTION | -9.95 | 431.52 |
| | | LIBERTY CHECK    - CHK ORDER | | |
| | 081402 | SHARE DEPOSIT | 650.00 | 1081.52 |
| | 081502 | SHARE DEPOSIT | 531.51 | 1613.03 |
| | 081502 | POINT OF SALE    0815009712 | -20.86 | 1592.17 |
| | | RT 74 DAVCNS330969DOVER 042998PACNS CVS PHARMA | | |
| | 081602 | TFR TO LOAN    220748-02 | -299.00 | 1293.17 |
| 0817 | 081602 | POINT OF SALE    33410 | -7.52 | 1285.65 |
| | | WAL MART    YORK  W    PAUS | | |
| 0817 | 081602 | POINT OF SALE    27741 | -85.00 | 1200.65 |
| | | SHELDON KEYSER AND ASSOYORK    PAUS | | |
| | 081702 | ATM WITHDRAWAL    0817134436 | -151.50 | 1049.15 |
| | | 3 S MAIN ST    DOVER    PA | | |
| 0818 | 081602 | POINT OF SALE    60305 | -23.17 | 1025.98 |
| | | D&K SURPLUS GROCERYSKC RED LION    PAUS | | |
| 0818 | 081602 | POINT OF SALE    72150 | -8.43 | 1017.55 |
| | | KEYBOARD WORLD INC    YORK    PAUS | | |
| 0818 | 081702 | POINT OF SALE    11364 | -10.14 | 1007.41 |
| | | MAKES GROCERY    SFO DOVER    PAUS | | |
| 0818 | 081602 | POINT OF SALE    40418 | -42.38 | 965.03 |
| | | AT & T WIRELESS OF WESTYORK    PAUS | | |
| 0819 | 081702 | POINT OF SALE    20905 | -15.40 | 949.63 |
| | | SPANGLER'S ACE HARDWAREWELLSVILLE    PAUS | | |
| 0819 | 081702 | POINT OF SALE    20910 | -8.46 | 941.17 |
| | | SPANGLER'S ACE HARDWAREWELLSVILLE    PAUS | | |
| 0819 | 081602 | POINT OF SALE    79421 | -21.33 | 919.84 |
| | | CLAIRE'S BOUTIQUES 5397YORK    PAUS | | |
| 0819 | 081602 | POINT OF SALE    13915 | -19.48 | 900.36 |
| | | NATIONAL VISION EYECAREYORK    PAUS | | |
| 0819 | 081802 | POINT OF SALE    2678 | -21.80 | 878.56 |
| | | EXXONMOBIL18 09656471 YORK    PAUS | | |
| 0820 | 081602 | POINT OF SALE    14726 | -6.25 | 872.31 |
| | | PUB ON THE TRAIL    YORK    PAUS | | |

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

**EXHIBIT 2**
ATTACHMENT 7.22
BNF 0520

July 14, 2017

To whom it may Concern:

This letter is written to advise you that my sister  ( ) and

have been living together in Pennsylvania for the past 20 years. I Consider them to be Spouses. They Equally Shared expenses and responsibilities for the home in which they lived. They had health Insurance together as well as they purchased Vehicles together. In my eyes I consider them Spouses of each other.



July 14, 2017

*Betty Jo Reynder*

BETTY JO REYNOLDS
NOTARY
EXPIRES
December 16 2020
PUBLIC
LEE COUNTY GEORGIA

**EXHIBIT 2**
ATTACHMENT 7.23
**BNF 0521**

To whom it may concern,

███████████ moved in with my mother (███████████ in 1998. Since then ███ raised me as his son and I looked to him as my Father. I lost a Father on June 1st and my Mother lost a Husband. Our lives will never be the same. He will be deeply missed.

Sincerely,

7-13-17

**EXHIBIT 2**
ATTACHMENT 7.24
**BNF 0522**

To whom this letter may concern,

_____ had raised me since I was 5 years of age. At this time it was the year of 1998. My mother (_____) had just begun her 20 year relationship with _____, from the year of 1998, up until _____ recent death on 6/1/17, my mother had shared her entire life with this man, Physically, financially, mentally, and emotionally. My mother and _____ shared not only their lives together, but they also shared a home, bank accounts, vehicles, and several other assets. In my eyes as well as everyone else's, my mother and _____ were practically married. I looked at _____ as my father, considering he helped raise me, most of my life. He did his best to make sure we were well taken care of during his 20 year relationship with my mother. Now that _____ is unfortunately deceased, although at rest, I know that he would want nothing more than for my mother _____ to be taken care of, Physically and Financially. To whoever reads this letter, I ask that you please show sincerity, and bestow mercy upon my mother.

_____

Son of _____
Step-Son of _____.

**EXHIBIT 2**
ATTACHMENT 7.25
**BNF 0523**