**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELISABETH STURGILL, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-925-JPW |
| | (Honorable Jennifer P. Wilson) |
| THE BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST, | |
| Defendant. | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

"ERISA represents a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004)) (further quotation marks omitted).  As part of that balancing act, courts generally defer to the reasonable decision of plan administrators when the employer grants discretion to the plan's administrator.  *Id.*

Here, Defendant the Boilermaker-Blacksmith National Pension Trust is given discretion to interpret the plan and determine eligibility for benefits.  Ex. 1 at 22 (Plan Section 10.01(i)).  Using this discretion, Defendant determined that Plaintiff Elisabeth Sturgill was not the common-law spouse of John Martin, a participant in Defendant.  It reached this decision relying on a document previously submitted by Mr. Martin, Mr. Martin's death certificate, and an insurance declaration form.  While there certainly is evidence that appears to support Plaintiff's claim to the contrary, Defendant's decision was reasonable, and thus should be given deference by the Court.  So, the Court should grant summary judgment against Plaintiff's claim.

## I.    Governing Facts

Defendant is an "employee benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"). Separate Statement of Material Facts ¶ 1.[1] The Plan Document ("Plan") governs what benefits are payable from Defendant. *Id.* ¶ 2. Also, it grants discretion to the Board of Trustees to interpret the Plan and determine eligibility for benefits. *Id.* ¶ 3. John Martin was a vested participant in Defendant. *Id.* ¶ 4. On June 1, 2017, Mr. Martin died. *Id.* ¶ 5. Shortly afterwards, Plaintiff Elisabeth Sturgill contacted Defendant about Mr. Martin's passing. *Id.* ¶ 6. She claimed to be Mr. Martin's common-law spouse. *Id.* ¶ 7.

If Plaintiff was Mr. Martin's spouse, she would be entitled to receive the Survivor Annuity Portion of a 50% Husband-and-Wife Pension. *Id.* ¶ 8. For Plaintiff, this would mean that she would receive $2,443.42 a month for the rest of her life. *Id.* ¶ 9. But if Plaintiff is not Mr. Martin's spouse, Plaintiff—as Mr. Martin's designated beneficiary—receives 60 monthly payments. *Id.* ¶ 10. Under this scenario, Plaintiff would receive 60 monthly payments of $2,588.58. *Id.* ¶ 11. The Plan, in relevant part, defines "spouse" as "[a] person who is legally married to the Participant, pursuant to the requirements of Federal Law…." *Id.* ¶ 12.

To prove that Plaintiff was Mr. Martin's common-law spouse, Defendant asked Plaintiff to complete an "Affidavit of Common-Law Marriage." *Id.* ¶ 13. Plaintiff returned that document, indicating that she and Mr. Martin lived together as spouses since September 1997 to June 2017 in Pennsylvania. *Id.* ¶ 14. She also submitted the death certificate; a narrative from her, her sons, her brother, and his father; various documents indicating that they owned multiple cars together; a letter indicating that Mr. Martin was on Plaintiff's health insurance from January 1, 2014 to September 30, 2015; and a joint bank account statement from July 2002. *Id.* ¶ 15.

---

[1] The Separate Statement of Material Facts has been docketed as Doc. 25

Defendant reviewed these documents, along with the Beneficiary Card that Mr. Martin had submitted in 2011. *Id.* ¶ 16. This card listed Plaintiff as Mr. Martin's fiancée, and listed his marital status as "Divorced." *Id.* ¶ 17. Upon advice from its legal counsel, Defendant concluded that Plaintiff was not Mr. Martin's common-law spouse because Mr. Martin listed Plaintiff as his fiancée—not his wife. *Id.* ¶ 18. Plaintiff's counsel contacted Defendant nearly a year later contesting this decision, but Defendant held to its original conclusion. *Id.* ¶¶ 19, 20. In responding to Plaintiff's counsel, Defendant also noted that the death certificate listed Plaintiff as Mr. Martin's fiancée. *Id.* ¶ 21. In this letter, Defendant did not explain Plaintiff's appeal rights. *Id.* ¶ 22.

On May 30, 2019, Plaintiff filed this suit. *Id.* ¶ 23. Upon receiving this Complaint and reviewing its records, Defendant extended appeal rights to Plaintiff on July 29, 2019. *Id.* ¶ 24. Defendant requested that Plaintiff submit any additional materials by October 31, 2019. *Id.* ¶ 25. On November 25, 2019, Plaintiff submitted additional materials and arguments. *Id.* ¶ 26. In this letter, however, Plaintiff never addressed the death certificate or the Beneficiary Card. *Id.* ¶ 27. Defendant considered the appeal on March 19, 2020. *Id.* ¶ 28. Defendant denied the appeal on the same grounds as before, but additionally noted that the insurance declaration form from 2007 listed Mr. Martin as single. *Id.* ¶ 29.

## II. Procedural History

As noted above, Plaintiff filed this case on May 30, 2019. Doc. 1. Initially, the Court gave the parties until March 1, 2020 to complete discovery so that the parties could complete the administrative appeal process. *See* Doc. 13 at 1. On March 18, 2020, the parties submitted a joint status report in advance of a conference call with the Court. *See* Doc. 14. The parties informed the Court that the appeal had been delayed until the next day, March 19, 2020, and that they would update the Court during the hearing. *Id.* at 1. On March 23, 2020, the parties

3

participated in a status conference with the Court and informed it that Defendant had denied the appeal.  The Court extended the deadline for fact discovery until July 31, 2020 and set the deadline to file dispositive motions for August 31, 2020.  Doc. 17 at 1.  On August 19, 2020, Defendant filed an unopposed motion to extend the deadline to file dispositive motions to September 14, 2020.  *See* Doc. 19.  The Court granted that motion on August 21, 2020.  Doc. 20.

## III.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality."  *Goudy-Bachman v. U.S. Dep't of Health & Human Servs.*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

Initially, the moving party must (1) identify the parts of the record that demonstrate the absence of a genuine dispute of a material fact and (2) demonstrate why those facts entitle the movant to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party succeeds in this task, the nonmoving party must identify specific parts of the record that create a genuine dispute, and cannot rely on conclusory or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In other words, the nonmovant must show that there is sufficient evidence to allow a reasonable fact-finder to find in the nonmovant's favor.  *Id.* at 248–49.

This task is slightly modified when a court reviews a benefit dispute claim under § 1132(a)(1)(B).  When reviewing a challenge to an ERISA plan administrator's denial of benefits, courts utilize a deferential standard of review if the plan document gives the "fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the Plan gives Defendant discretion to determine eligibility for benefits under the Plan and to construe the terms of the Plan. *See* Ex. 1 at 22 (Plan Section 10.01(i)). Thus, the Court should review Defendant's decision under a deferential standard of review. *See Gillar v. Blue Cross/Blue Shield of S.C.*, 413 F. Supp. 3d 376, 381 (M.D. Pa. 2019) (reviewing an administrator's denial of benefits under the arbitrary and capricious standard of review when the plan provided that the administrator "shall have the final discretionary authority to determine eligibility for Covered Expenses and construe the terms of the Plan…." (quoting Plan)).

To be sure, the Third Circuit has held that a heightened standard of review can be appropriate when a plan administrator violates ERISA's claims procedure regulations. *Becknell v. Severance Pay Plan of Johnson & Johnson & U.S. Affiliated Cos.*, 655 F. App'x 205, 211 (3d Cir. 2016). But a heightened standard of review is not warranted when the ERISA plan explains its rationale and subsequently corrects the errors. *See id.* at 212 (refusing to apply a *de novo* standard of review even though an ERISA plan issued an untimely appeal decision because the participant knew why the administrator initially denied the clam and the administrator remedied its error). Here, Defendant communicated its reasoning to Plaintiff twice before this litigation began. It explained that the Beneficiary Card and the death certificate undermined Plaintiff's claim that she was Mr. Martin's common-law spouse. Thus, despite the procedural irregularities, an arbitrary and capricious standard of review is appropriate.

Under an arbitrary and capricious review, "[r]eviewing an administrator's denial of benefits as described places a district court more in the position of appellate tribunal than trial court…." *Robinson v. Liberty Life Assurance Co. of Bos.*, 25 F. Supp. 3d 541, 551 (M.D. Pa.

2014).  In conducting this task, courts simply determine whether the administrator's decision was "without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 102, 112 (2008)) (internal quotation marks omitted).  Plaintiff—as the party seeking benefits—bears the burden of proving that Defendant's denial was arbitrary and capricious. *Potts v. Hartford Life & Accident Ins. Co.*, 272 F. Supp. 3d 690, 708 (W.D. Pa. 2017).

Critical to this case, "substantial evidence" is simply sufficient evidence that "a reasonable mind might accept as adequate to support a conclusion." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (quoting *Soubik v. Dir., Office of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004)).  The Court can only consider the evidence before the administrator when it made its decision when making this evaluation. *Id.*  The evidence need not uniformly support the administrator's decision for it to be reasonable. *Id.* at 126.  As such, courts cannot weigh the evidence before the administrator when conducting an arbitrary and capricious review. *Robinson*, 25 F. Supp. 3d at 553.

## IV.    Discussion

Plaintiff's sole claim asserts that Defendant incorrectly denied Plaintiff spousal benefits. Doc. 1 at 7.  Defendant determined that she was not entitled to those benefits because she had not established that she was Mr. Martin's common-law spouse. Ex. 2 at 1–4.  So, to prevail on her claim, Plaintiff must show that Defendant's decision was unreasonable. *Fleisher*, 679 F.3d at 127.  It is insufficient for her to show that her claim is reasonable. *Id.*

6

The Plan defines "spouse" as, "A person who is legally married to the Participant, pursuant to the requirements of Federal Law…." Ex. 1 at 10–11. Federal law, in turn, relies on state law to determine if a person is married. 26 C.F.R. § 301.7701-18(b). Pennsylvania recognizes common-law marriages, but only if they were entered into before January 1, 2005. 23 Pa. Cons. Stat. § 1103. To establish a common-law marriage, a purported spouse must show "proof of an agreement to enter the legal relationship of marriage *at the present time*." *In re Estate of Kovalchick*, 498 A.2d 374, 376 (1985) (emphasis added) (quoting *Estate of Gavula*, 417 A.2d 168, 171 (1980)) (internal quotation marks). The purported spouse must adduce "clear and convincing" evidence to meet this burden. *Id.* at 377.

Pennsylvania courts view common-law marriages with some suspicion. Pennsylvania courts reason, "Because the courts have regarded common law marriage as a fruitful source of fraud and perjury, common law marriages are to be tolerated but not encouraged." *In re Estate of Stauffer*, 476 A.2d 354, 356 (1984). As such, "the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate." *Estate of Gavula*, 417 A.2d at 171.

Because a purported spouse often has difficulty proving a common-law marriage in such a situation, Pennsylvania courts utilize a rebuttable presumption to determine if the purported spouse should be considered a common-law spouse. *In re Manfredi's Estate*, 159 A.2d 697, 700 (1960). But to raise this rebuttable presumption, the purported spouse must establish that the purported spouses (1) lived together consistently and (2) had a broad and general reputation of marriage. *Id.*

In rendering its decision, Defendant never contested that Plaintiff had established the first element; instead, Defendant determined that Plaintiff failed to establish a "broad and general" reputation of marriage. To achieve this "broad and general" reputation, it is insufficient for "a few persons in the immediate neighborhood" to consider the spouses as married. *Id.* For example, a Pennsylvania court found that a purported spouse failed to meet her burden of establishing a common-law marriage when there was conflicting evidence. *See In re Estate of Dodge*, 522 A.2d 77, 80 (Pa. Super. Ct. 1987).

In that case, the purported spouse testified that the alleged husband gave her a wedding ring, and, after that date, they began referring to each other as husband and wife. *Id.* Also, several witnesses testified that they considered the couple to be married. *Id.* But weighing against this evidence was a hospital record after the wedding ring was given that listed the purported spouse as single. *Id.* Further, the death certificate listed the alleged husband as single. *Id.* Based on this evidence, the Orphans' Court concluded that the Register of Wills abused its discretion in concluding that the purported spouse established a common-law marriage. *Id.* at 78. The Superior Court of Pennsylvania concluded that it did not necessarily disagree with that conclusion. *Id.*

In contrast, a Pennsylvania court concluded that a party established a common-law in *In re Estate of Carter*, 159 A.3d 970, 982 (Pa. Super. Ct. 2017). The court observed that the parties had a ring with a specific date on it and celebrated their anniversary on that date. *Id.* at 981. Further, there was no testimony or other evidence undermining the purported spouse's claim that they were married. *Id.*

In reaching its decision, Defendant concluded that Plaintiff fell closer to *In re Estate of Dodge* rather than *In re Estate of Carter*. Specifically, Defendant noted that the Beneficiary

Card that Mr. Martin previously submitted simply listed Plaintiff as his fiancé.  And Mr.

Martin's death certificate lists Plaintiff as his fiancé.  This designation is notable, given that

"fiancé" generally refers to someone who *intends* to marry.  *See Fiancé*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/fiance (last visited Sept. 14, 2020) (defining

"fiancé" as "a man engaged to be married").  Finally, an insurance document that Plaintiff

submitted listed Mr. Martin as "single" in 2007.  These documents evidence that Mr. Martin and

Plaintiff intended to marry at some point in the future, but had not done so when Mr. Martin

passed.  *See Estate of Gavula*, 417 A.2d at 171 ("[I]t is too often forgotten that a common law

marriage is a marriage by the express agreement of the parties without ceremony, and almost

invariably without a witness, by words—*not in futuro* or in postea, but—*in praesenti*, uttered

with a view and for the purpose of establishing the relationship of husband and wife." (emphasis

added)).  Thus, Defendant reasonably concluded that Plaintiff failed to establish a common-law

marriage.

　　　To be sure, Plaintiff submitted affidavits from herself, her sons, her brother, and her

father that all stated that they considered Plaintiff and Mr. Martin to be husband and wife.  In

addition, she submitted a joint bank statement, letter from Plaintiff's insurer that Mr. Martin was

on her health insurance, and several documents indicating joint ownership over vehicles.  While

certainly these documents could *evidence* a general reputation of marriage, reasonable minds

could conclude that an official government document—*i.e.*, the death certificate—an insurance

form listing Mr. Martin as single, and a document that Mr. Martin previously submitted to

Defendant—*i.e.*, the beneficiary card—inconclusively established a common-law marriage.  *See*

*Robinson*, 25 F. Supp. 3d at 553 (noting that courts cannot weigh the evidence when determining

if an ERISA plan's decision was arbitrary and capricious).  Thus, no reasonable fact finder could

conclude that Defendant's decision was unreasonable.

## V.    Conclusion

When evaluating Plaintiff's claim that she was Mr. Martin's common-law spouse,

Defendant was faced with conflicting evidence.  Given the high burden imposed by Pennsylvania

law, Defendant concluded that this conflicting evidence failed to establish that Plaintiff was Mr.

Martin's common law spouse.  This decision was reasonable, and thus the Court should uphold

it.

Dated: September 14, 2020                           Respectfully Submitted,

                                                    **BLAKE & UHLIG, PA**

                                                    /s/ Nathan Kakazu
                                                    Nathan Kakazu
                                                    MO Bar No. 70157
                                                    *Admitted pro hac vice*
                                                    Blake & Uhlig, P.A.
                                                    753 State Avenue, Suite 475
                                                    (913) 321-8884
                                                    (913) 321-2396 – Fax
                                                    nak@blake-uhlig.com
                                                    **Attorney for Defendant**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 14, 2020, the foregoing was electronically filed using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.


/s/Nathan Kakazu
_____