IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELISABETH STURGILL,<br><br>    Plaintiff,<br><br>v.<br><br>THE BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST,<br><br>    Defendant. | Case No. 1:19-cv-925-JPW<br>(Honorable Jennifer P. Wilson) |

## BRIEF OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In an ERISA case brought under 29 U.S.C. §1132(a)(1)(B), courts must uphold a plan's reasonable decision regarding benefits when the governing plan document grants the administrator discretion to interpret the plan's terms and determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the Thirteenth Restatement of the Pension Plan Document ("Plan") gives Defendant the Boilermaker-Blacksmith National Pension Trust discretion to interpret the plan and determine eligibility for benefits. Doc. 25-1 at 22 (Plan Section 10.01(i)). Thus, to prevail on her summary judgment motion, Plaintiff must show that the facts, when viewed in the light most favorable to Defendant, establish that its decision was unreasonable.

Plaintiff has failed to do that. Instead, her motion solely focuses on whether she is the common-law spouse of John Martin, a participant in Defendant. She never responds to any argument raised in Defendant's decision or attempts to explain why that conclusion was unreasonable. So, the Court should deny her Motion for Summary Judgment.

I.      **Governing Facts**[1]

Defendant is an "employee benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"). Response to Plaintiff's Separate Statement of Material Facts ¶ 29. The Plan governs what benefits are payable from Defendant. *Id.* ¶ 30. Also, it grants discretion to the Board of Trustees to interpret the Plan and determine eligibility for benefits. *Id.* ¶ 31. John Martin was a vested participant in Defendant. *Id.* ¶ 6. On June 1, 2017, Mr. Martin died. *Id.* ¶ 3. Shortly afterwards, Plaintiff Elisabeth Sturgill contacted Defendant about Mr. Martin's passing. *See id.* ¶ 12. She claimed to be Mr. Martin's common-law spouse. *Id.*

If Plaintiff is Mr. Martin's spouse, she would be entitled to receive the Survivor Annuity Portion of a 50% Husband-and-Wife Pension. *Id.* ¶ 32. For Plaintiff, this would mean that she would receive $2,443.42 a month for the rest of her life. *Id.* ¶ 33. But if Plaintiff is not Mr. Martin's spouse, Plaintiff—as Mr. Martin's designated beneficiary—receives 60 monthly payments. *Id.* ¶ 34. Under this scenario, Plaintiff would receive 60 monthly payments of $2,588.58. *Id.* ¶ 35. Effective July 1, 2017, Plaintiff has received $2,588.58 a month, and will continue to receive that amount each month until June 2022. *Id.* ¶ 36. The Plan, in relevant part, defines "spouse" as "[a] person who is legally married to the Participant, pursuant to the requirements of Federal Law…." *Id.* ¶ 11.

To prove that Plaintiff was Mr. Martin's common-law spouse, Defendant asked Plaintiff to complete an "Affidavit of Common-Law Marriage." *Id.* ¶ 13. Plaintiff returned that document, indicating that she and Mr. Martin lived together as spouses since September 1997 to June 2017 in Pennsylvania. *Id.* ¶ 14. She also submitted the death certificate; affidavits from her, her sons, her brother, and his father; various documents indicating that they owned multiple cars together; a letter indicating that Mr. Martin was on Plaintiff's health insurance from January

---

[1] The following facts are taken from the Response to Plaintiff's Separate Statement of Material Facts. Doc. 28.

1, 2014 to September 30, 2015; and a joint bank account statement from July 2002. *Id.* ¶¶ 15, 16.

Defendant reviewed these documents, along with the Beneficiary Card that Mr. Martin had submitted in 2011. *Id.* ¶ 37. This card listed Plaintiff as Mr. Martin's fiancé, and listed his marital status as "Divorced." *Id.* ¶ 9. Upon advice from its legal counsel, Defendant concluded that Plaintiff was not Mr. Martin's common-law spouse because Mr. Martin listed Plaintiff as his fiancé—not his wife. *Id.* ¶ 17. Plaintiff's counsel contacted Defendant nearly a year later contesting this decision, but provided no further evidence supporting her claim. *Id.* ¶ 38. Defendant held to its original conclusion, *id.* ¶ 18, noting that, in addition to the previously cited documents, the death certificate listed Plaintiff as Mr. Martin's fiancée. *Id.* ¶ 39.

On May 30, 2019, Plaintiff filed this suit. Doc. 1. On November 25, 2019, Plaintiff submitted an appeal of Defendant's initial decision under the Plan's appeal process. *Id.* ¶ 40. Plaintiff largely relied on the same documents that she previously submitted, but also produced a Duplicate Notice of Cancellation from Nationwide, a bank statement from July 2002, and a bank statement from October 2005. *Id.* ¶ 41. Defendant considered the appeal on March 19, 2020. *Id.* ¶ 42. Defendant denied the appeal on the same grounds as before, but additionally noted that the 2007 insurance declaration form listed Mr. Martin as single. *Id.* ¶ 43.

## II.     Standard of Review

Federal Rule of Civil Procedure 56(a) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S.*

*Dep't of Health & Human Servs.*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

Initially, the moving party must (1) identify the parts of the record that demonstrate the absence of a genuine dispute of a material fact and (2) demonstrate why those facts entitle the movant to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party succeeds in this task, the nonmoving party must identify specific parts of the record that create a genuine dispute, and cannot rely on conclusory or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, the nonmovant must show that there is sufficient evidence to allow a reasonable fact-finder to find in the nonmovant's favor. *Id.* at 248–49.

### III.  Discussion

The parties agree that Mr. Martin was fully vested, but had not yet retired when he died. The parties simply dispute what benefit Plaintiff should receive because Mr. Martin died before retiring. Plaintiff argues that the Court should grant summary judgment in her favor and conclude that she is Mr. Martin's common-law spouse because she has presented sufficient evidence to secure a rebuttable presumption that she and Mr. Martin had entered into a common-law marriage. Doc. 23 at 5. Because she has established this, she argues, the Court should award her Surviving Spouse Benefits totaling "$255,535.22, along with all damages recognized by law, to include, but not limited to, interest, attorney fees, punitive damages[,] and/or treble damages, to the extent legally provided." *Id.* at 10.

Plaintiff's arguments fail for three reasons. First, Plaintiff misstates the question at issue in this case. Instead, the question for the Court is whether Defendant's decision was reasonable. Second, Plaintiff fails to establish that Defendant unreasonably decided that Plaintiff was not Mr.

Martin's common-law spouse. And third, even if she did establish that Defendant's decision was unreasonable, she has not established entitlement to the relief that she has requested as a matter of law. Defendant addresses these arguments, in turn, below.

    **A.**    **To prevail at summary judgment, Plaintiff must show that Defendant's decision was unreasonable.**

Plaintiff asserts her sole cause of action under 29 U.S.C. § 1132(a)(1)(B), challenging Defendant's decision that she is not entitled to surviving spouse benefits. Doc. 1 at 5. When reviewing a challenge to an ERISA plan administrator's denial of benefits, courts utilize a deferential standard of review if the plan document gives the "fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. In other words, to determine whether the deferential standard of review applies, courts simply evaluate the plan's language. *Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991) ("Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan.").

Here, the Plan gives Defendant discretion to determine eligibility for benefits under the Plan and to construe the terms of the Plan. *See* Doc. 25-1 at 22 (Plan Section 10.01(i)). Plaintiff asserts no reason why this standard should not apply. Thus, the Court should review Defendant's decision under a deferential standard of review. *See Gillar v. Blue Cross/Blue Shield of S.C.*, 413 F. Supp. 3d 376, 381 (M.D. Pa. 2019) (reviewing an administrator's denial of benefits under the arbitrary and capricious standard of review when the plan provided that the administrator "shall have the final discretionary authority to determine eligibility for Covered Expenses and construe the terms of the Plan…." (quoting Plan)).

Under an arbitrary and capricious review, "[r]eviewing an administrator's denial of benefits as described places a district court more in the position of appellate tribunal than trial

court…." *Robinson v. Liberty Life Assurance Co. of Bos.*, 25 F. Supp. 3d 541, 551 (M.D. Pa. 2014). In conducting this task, courts simply determine whether the administrator's decision was "without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 102, 112 (2008)) (internal quotation marks omitted). Plaintiff cannot simply show that her claim is reasonable to prevail under the deferential standard. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 127 (3d Cir. 2012). Instead, Plaintiff—as the party seeking benefits— must prove that Defendant's denial was arbitrary and capricious. *Potts v. Hartford Life & Accident Ins. Co.*, 272 F. Supp. 3d 690, 708 (W.D. Pa. 2017).

Plaintiff appears to presume that *de novo* review applies. *See* Doc. 23 at 5 (arguing that the relevant issue was whether Plaintiff has produced sufficient evidence to establish a rebuttable presumption that Plaintiff and Mr. Martin entered into a common-law marriage); *see also Viera v. Life Ins. Co. of N.A.*, 642 F.3d 407, 413–14 (3d Cir. 2011) (discussing *de novo* review). But she never explains why the Plan's language fails to grant Defendant discretionary authority. Nor does she raise any reason why a heightened standard of review applies. Thus, to prevail on her motion, she must show that a reasonable factfinder could only conclude that Defendant's decision was arbitrary and capricious. As explained below, she has failed to do so.

      **B.**      **Plaintiff has failed to establish that Defendant unreasonably decided that she is not entitled to surviving spouse benefits.**

As noted above, Plaintiff claims that she is Mr. Martin's common-law spouse. Defendant ultimately concluded that she was not because (1) she was listed as Mr. Martin's fiancé on his beneficiary card and death certificate and (2) he was listed as single on his car insurance declaration. *See* Doc. 25-2 at 1–4. Thus, to prevail on her motion, Plaintiff must show that this

decision was "without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Miller*, 632 F.3d at 845. Critical to this case, "substantial evidence" is simply sufficient evidence that "a reasonable mind might accept as adequate to support a conclusion." *Fleisher*, 679 F.3d at 121 (quoting *Soubik v. Dir., Office of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004)). When making this evaluation, the Court can only consider the evidence that the administrator had when it made its decision when making this evaluation. *Id.* The evidence need not uniformly support the administrator's decision for it to be reasonable. *Id.* at 126. As such, courts cannot weigh the evidence before the administrator when conducting an arbitrary and capricious review. *Robinson*, 25 F. Supp. 3d at 553. Nor can courts substitute their judgment for the administrator's judgment. *Potts*, 272 F. Supp. 3d at 708.

The parties agree that Pennsylvania law governs Defendant's decision in this case. Doc. 23 at 6; Doc. 26 at 7. Pennsylvania law recognizes common-law marriages, but only if they were entered into before January 1, 2005. 23 Pa. Cons. Stat. § 1103. To establish a common-law marriage, a purported spouse must show "proof of an agreement to enter the legal relationship of marriage *at the present time*." *In re Estate of Kovalchick*, 498 A.2d 374, 376 (1985) (emphasis added) (quoting *Estate of Gavula*, 417 A.2d 168, 171 (1980)) (internal quotation marks). The purported spouse must adduce "clear and convincing" evidence to meet this burden. *Id.* at 377. "Because the courts have regarded common law marriage as a fruitful source of fraud and perjury, common law marriages are to be tolerated but not encouraged." *In re Estate of Stauffer*, 476 A.2d 354, 356 (1984). As such, "the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate." *Estate of Gavula*, 417 A.2d at 171.

Because a purported spouse often has difficulty proving a common-law marriage in such a situation, Pennsylvania courts utilize a rebuttable presumption to determine if the purported spouse should be considered a common-law spouse. *In re Manfredi's Estate*, 159 A.2d 697, 700 (1960). But to raise this rebuttable presumption, the purported spouse must establish that the purported spouses (1) lived together consistently and (2) had a broad and general reputation of marriage. *Id.*

In rendering its decision, Defendant never contested that Plaintiff had established the first element; instead, Defendant determined that Plaintiff failed to establish a "broad and general" reputation of marriage. *See* Doc. 25-2 at 1–4. To achieve this "broad and general" reputation, Plaintiff cannot rely solely on "a few persons in the immediate neighborhood." *Id.* And conflicting evidence undermines a "broad and general" reputation of marriage. *See In re Estate of Dodge*, 522 A.2d 77, 80 (Pa. Super. Ct. 1987).

In *Estate of Dodge*, the purported spouse testified that the alleged husband gave her a wedding ring, and, after that date, they began referring to each other as husband and wife. *Id.* Also, several witnesses testified that they considered the couple to be married. *Id.* But weighing against this evidence was a hospital record after the wedding ring was given that listed the purported spouse as single. *Id.* Further, the death certificate listed the alleged husband as single. *Id.* Based on this evidence, the Orphans' Court concluded that the purported spouse failed to establish a common-law marriage. *Id.* at 78. The Superior Court of Pennsylvania concluded that it did not necessarily disagree with that conclusion. *Id.*

Here, in reaching its decision, Defendant concluded that Plaintiff's situation matched *In re Estate of Dodge*. Specifically, Defendant noted that the Beneficiary Card that Mr. Martin previously submitted simply listed Plaintiff as his fiancé. And Mr. Martin's death certificate lists

8

Plaintiff as his fiancée.  This designation is notable, given that "fiancé" generally refers to someone who *intends* to marry.  *See Fiancé*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fiance (last visited Oct. 5, 2020) (defining "fiancé" as "a man engaged to be married").  Finally, an insurance document that Plaintiff submitted listed Mr. Martin as "single" in 2007.

Reviewing these documents, Defendant reasonably concluded that, despite sworn statements from close family members, Mr. Martin and Plaintiff's reputation of marriage was partial and divided.  Indeed, to the public, Plaintiff and Mr. Martin represented that they intended to marry at some point in the future, but had not done so when Mr. Martin passed.  *See Estate of Gavula*, 417 A.2d at 171 ("[I]t is too often forgotten that a common law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, by words—*not in futuro* or in postea, but—*in praesenti*, uttered with a view and for the purpose of establishing the relationship of husband and wife." (emphasis added)).  Thus, Defendant reasonably concluded that Plaintiff never established a rebuttable presumption of common-law marriage.

Plaintiff argues, "The weight of the evidence supports the presumption that [Plaintiff] and [Mr.] Martin held themselves out to be husband and wife."  Doc. 23 at 8.  Plaintiff notes that the affidavits from herself, her sons, her brother, and her father all stated that they considered Plaintiff and Mr. Martin to be husband and wife.  *Id.* at 7–8.  In addition, she identifies a joint bank statement, letter from Plaintiff's insurer that Mr. Martin was on her health insurance, and several documents indicating joint ownership over vehicles.  *Id.* at 8.  Plaintiff asserts that these documents establish a broad reputation of marriage.  *Id.*

But simply because "[t]he weight of the evidence supports" Plaintiff's claim does not establish that Defendant's decision was unreasonable. *See Robinson*, 25 F. Supp. 3d at 553 (noting that courts cannot weigh the evidence when determining if an ERISA plan's decision was arbitrary and capricious). At best, Plaintiff has identified evidence that supports her claim. The documents on which Defendant relied, however, constitute substantial evidence that Plaintiff and Mr. Martin failed to establish a broad and general reputation of marriage. Indeed, this evidence shows that Plaintiff and Mr. Martin represented to the general public that they intended to marry in the future. And Pennsylvania courts have previously concluded that inconclusive evidence of a common-law marriage fails to meet the high burden of establishing a common-law marriage.[2] *See In re Estate of Dodge*, 522 A.2d at 80.

Plaintiff faults Defendant for failing to "bolster[] [its position] in any respect since the Plaintiff submitted her evidence to establish a rebuttable presumption in favor of a common law marriage." Doc. 23 at 9. In Plaintiff's view, because she has produced documentation supporting her claim, Defendant needed to produce information beyond what it originally cited to overcome her evidence. *Id.* This argument is unpersuasive for two reasons. First, Defendant did identify evidence after she submitted evidence supporting her claim. Specifically, it identified the beneficiary card and the death certificate. Doc. 25-2 at 14. When Defendant informed her of its decision and explained its reasoning, Plaintiff reiterated the same arguments she made previously and never addressed the beneficiary card. *Id.* at 42–43. Defendant responded to this letter by additionally noting that Mr. Martin's death certificate listed Plaintiff as his fiancée. *Id.* at 38. During the appeal process, the only new documentation Plaintiff submitted was a Duplicate Notice of Cancellation from Nationwide, *id.* at 76, a bank statement from July 2002, *id.* at 79, and a bank statement from October 2005, *id.* at 81. In response,

---

[2] Given the discussion in *Estate of Dodge*, Plaintiff's claim would fail even if *de novo* review applied.

10

Defendant noted that the 2007 insurance declaration listed Mr. Martin as single.  Thus, contrary to Plaintiff's claim, Defendant has identified evidence that bolsters its position after Plaintiff submitted her evidence.

Regardless, Plaintiff misconstrues the role of the rebuttable presumption.  Plaintiff does not secure a rebuttable presumption simply because she submitted some documentation supporting her claim.  *See, e.g.*, *In re Estate of Dodge*, 522 A.2d at 79.  Instead, Plaintiff must establish by "clear and convincing evidence" that, in relevant part, Mr. Martin and Plaintiff enjoyed a "broad and general" reputation of marriage.  *Id.* at 80.  If Plaintiff cannot meet this standard, she cannot secure a rebuttable presumption.  *Id.*  Much like the purported spouse in *Estate of Dodge*, Plaintiff failed to meet this standard because there is substantial evidence that Mr. Martin and Plaintiff did not broadly hold themselves out as a married couple.  Thus, Plaintiff incorrectly asserts that simply submitting her documentation entitles her to a rebuttable presumption of common-law marriage.

*   *   *

In short, a reasonable factfinder could concluded that Defendant reasonably decided that she and Mr. Martin had a partial and divided reputation of marriage.  As such, Plaintiff cannot prevail in her claim that she is entitled to surviving spouse benefit as a matter of law.

### C. Plaintiff has failed to establish that she is entitled to the damages that she seeks.

If the Court grants Plaintiff's motion, Plaintiff seeks, in part, $255,535.22, punitive damages, and treble damages.  But Plaintiff has failed to establish that she is entitled to any of these amounts.

Plaintiff identifies no facts that establish that she is entitled to $255,535.22.  The Court should deny this request on that basis alone.  *Bunnion v. Consolidated Rail Corp.*, 108 F. Supp.

2d 403, 422 (E.D. Pa. 1999) ("It is plaintiffs' burden to call our attention to places in the record supporting their position that the benefits they are claiming are ones that are 'due under the terms of the plan.'" (quoting 29 U.S.C. §1132(a)(1)(B)) (internal alterations omitted)).  Further, this amount makes little sense.  As noted in Defendant's summary judgment motion, if Plaintiff is Mr. Martin's spouse, she would receive $2,443.42 a month for the rest of her life.  Because Defendant concluded that she was not Mr. Martin's common-law spouse, Defendant has been paying her $2,588.58 a month.  As such, she has received more thus far than she would have had Defendant concluded that she was Mr. Martin's common-law spouse.

Also, Plaintiff cannot recover punitive or treble damages when asserting a claim under § 1132(a)(1)(B).  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (noting that (a)(1)(B) does not authorize punitive damages or other extracontractual damages); *see also Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.").  Even if these damages were available under ERISA, Plaintiff has identified no facts that would support a claim to either type of damages, or otherwise explain why such damages are proper in this case.  *See Piazza v. Young*, 403 F. Supp. 3d 421, 443 (M.D. Pa. 2019) ("Under Pennsylvania law, an award of punitive damages is proper where only where a defendant's conduct is 'outrageous,' 'malicious, wanton, reckless, willful, or oppressive.'" (quoting *Feld v. Merriam*, 485 A.2d 742, 747–48 (Pa. 1984))).  Thus, the Court should deny her request for $255,535.22, punitive damages, and treble damages if it concludes that Defendant unreasonably denied her claim to benefits.

### IV.  Conclusion

When evaluating Plaintiff's claim that she was Mr. Martin's common-law spouse, Defendant was faced with conflicting evidence.  Given the high burden imposed by Pennsylvania law, Defendant concluded that this conflicting evidence failed to establish that Plaintiff was Mr. Martin's common law spouse.  Plaintiff has failed to establish that this decision was unreasonable.  Thus, the Court should deny her Motion for Summary Judgment.

Dated: October 5, 2020                                                  Respectfully Submitted,

**BLAKE & UHLIG, PA**

/s/Nathan Kakazu
Nathan Kakazu
MO Bar No. 70157
*Admitted pro hac vice*
753 State Avenue, Suite 475
Kansas City, KS 66101
(913) 321-8884
(913) 321-2396 – Fax
nak@blake-uhlig.com
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

      I hereby certify that on October 5, 2020, the foregoing was electronically filed using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

                                                  /s/Nathan Kakazu