UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELISABETH STURGILL, : CIVIL NO.: 1:19-cv-00925
 :
  Plaintiff, : (Judge Wilson)
 :
  v. : (Magistrate Judge Schwab)
 :
BOILERMAKER-BLACKSMITH :
NATIONAL PENSION TRUST, :
 :
  Defendant. :

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff, Elisabeth Sturgill ("Sturgill"), brings this civil action against the defendant, Boilermaker-Blacksmith National Pension Trust ("Boilermaker"), to enforce the terms of a pension plan.  Presently before us are cross motions for summary judgment.  Sturgill claims Boilermaker must pay her death benefits related to the passing of her common-law spouse, John Martin ("Martin"), a contributor to its pension plan.  Boilermaker, on the other hand, contends that Martin was not Sturgill's common-law spouse and asks us to defer to their reasonable decision as such.  For the reasons discussed below, we recommend that the court deny Sturgill's motion for summary judgment and grant Boilermaker's motion for summary judgment.

## II.  Background and Procedural History.

Sturgill began this action by filing a complaint where she names Boilermaker as the sole defendant. *Doc. 1*.  Sturgill alleges that Boilermaker denied her application for death benefits following the death of Martin because Boilermaker improperly determined that the couple was not in a common-law marriage under Pennsylvania law. *Id.* at 3.  Sturgill further alleges that she is entitled to nearly $256,000 in surviving spouse benefits because she entered into a common-law marriage with Martin in September of 1998, though she provides us with no facts or reasoning as to why this amount is appropriate. *Id.* at 4 (citing 23 Pa. C.S. § 1103).  Sturgill advances a single count to recover the benefits of the pension plan pursuant to the provisions of the Employee Retirement Income Security Act ("ERISA"). *Id.* at 5-7 (citing 29 U.S.C. § 1132(a)(1)(B)).

We have before us cross motions for summary judgment, both of which the parties filed on September 14, 2020. *Docs. 21* (Sturgill's motion), *24* (Boilermaker's motion).  Both motions for summary judgment are fully briefed and ripe for disposition. *See docs. 22-23*, *27-28*, *32* (briefs and statements of fact relating to Sturgill's motion); *see also docs. 25-26*, *29*, *30-31* (same relating to Boilermaker's motion).  We have jurisdiction under 29 U.S.C. § 1132(e), and we will address each motion below.

**III.  Summary Judgment Standards.**

The parties move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dep't of Health & Human Servs.*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine only if there is enough evidence to allow a

reasonable factfinder to return a verdict for the non-moving party. *Id.* at 248–49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Res.*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323).  "[S]ummary judgment is essentially

'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id*. "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

"The rule is no different where there are cross-motions for summary judgment." *Muhammad v. Martin*, No. 3:19-cv-1316, 2021 WL 832645, at *2

(M.D. Pa. Mar. 4, 2021) (quoting *Lawrence v. City of Phila.*, 527 F.3d 299, 310

(3d Cir. 2008)).  This is because

> [c]ross-motions are no more than a claim by each side that it alone is
> entitled to summary judgment, and the making of such inherently
> contradictory claims does not constitute an agreement that if one is
> rejected the other is necessarily justified or that the losing party
> waives judicial consideration and determination whether genuine
> issues of material fact exist.

*Id.* (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 24 (3d Cir. 1968)).  "Thus,

'when presented with cross-motions for summary judgment, the Court must

consider the motions separately, and view the evidence presented for each motion

in the light most favorable to the nonmoving party.'" *Id.* (quoting *Borrell v.*

*Bloomsburg Univ.*, 63 F. Supp. 3d 418, 433 (M.D. Pa. 2014) (citations omitted)).

"[E]ach movant must demonstrate that no genuine issue of material fact exists; if

both parties fail to carry their respective burdens, the court must deny [both]

motions." *Id.* (quoting *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa.

2010)).

## IV.  Material Facts.

### A.  Material facts regarding Sturgill's motion.

Local Rule 56.1 requires a party moving for summary judgment to file "a

separate, short and concise statement of the material facts, in numbered

paragraphs, as to which the moving party contends there is no genuine issue to be

tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.*

Here, Sturgill filed a statement of material facts in support of her motion for summary judgment consisting of twenty-eight paragraphs. *Doc. 22*.  Boilermaker filed a responsive statement of material facts which appropriately responds to those twenty-eight paragraphs in accordance with Local Rule 56.1 (*doc. 28* at ¶¶ 1-28), but also includes an additional fourteen paragraphs under the heading "Statement of Additional Material Facts" which the Local Rule does not contemplate (*doc. 28* at ¶¶ 29-43).  We will exercise our discretion to consider these facts, especially as these facts primarily provide procedural information related to the Boilermaker's decision, and they are readily verified by the attached exhibits.[1] *Loving v. FedEx Freight, Inc.*, No. 3:18-CV-508, 2020 WL 2306901, at *1 n.1 (M.D. Pa. May 8, 2020) (providing for our discretion in considering additional facts) (citing *Rau v.*

---

[1] Boilermaker cites to its exhibit in support of its motion for summary judgment. *Doc. 25-2*.  This exhibit is identical to the exhibit Sturgill filed in support of her motion for summary judgment. *Compare doc. 22-1* at 11-95 *with doc. 25-2* at 1-85. In both exhibits, the names of any individuals have been redacted by the parties, but neither party disputes the authenticity or content of these documents.

*Allstate Fire and Cas. Ins. Co.*, No. 3:16-CV-0359, 2018 WL 6422121, at *2 n.1

(M.D. Pa. Dec. 6, 2018), *aff'd*, 793 F. App'x 84 (3d Cir. 2019)).

The following facts are undisputed, and we cite to Boilermaker's response to

Sturgill's statement of facts. *Doc. 28*.  Martin contributed to the Boilermaker-

Blacksmith National Pension Plan (the "Plan"),[2] which Boilermaker administers

and oversees, and Martin was a vested participant in the plan upon his death but

had not retired before he died. *Id.* at 1.  Martin lived with Sturgill from 1998 until

his death on June 1, 2017, and he designated Sturgill as his sole beneficiary under

the plan. *Id.*  Boilermaker received this designation on November 7, 2011, and it

listed Sturgill as Martin's fiancée. *Id.* at 2.  The Plan provides that a spouse,

defined as a "person who is legally married to the Participant, pursuant to the

---

[2] A partial copy of the Plan is docketed as a separate exhibit. *See doc. 25-1*.
Boilermaker argues in its briefs that Section 10.01(i) of the Plan gives it discretion
to interpret the Plan and to determine Sturgill's eligibility for benefits. *Doc. 26* at
1; *doc. 27* at 1.  The Plan, in pertinent part, grants Boilermaker the
> complete discretion to construe, interpret, and apply all terms and
> provisions of this Plan document and the Trust Agreement in
> resolving any dispute in accordance with these rules, including the
> discretion to determine the standard of proof required. . . . The
> decision of [Boilermaker] shall receive judicial deference unless
> [Boilermaker has] abused the discretion granted to them under the
> Plan document and Trust Agreement.

*Doc. 25-1* at 22 (Plan § 10.01(i)).  Moreover, Sturgill does not dispute that the Plan
grants Boilermaker this discretion. *See doc. 23*; *doc. 29* at 1-2; *see also doc. 22* at
¶ 2 ("[Boilermaker] is tasked with the administration and oversight of the Plan.");
*doc. 30* at ¶ 3 (admitting Boilermaker's statement of fact regarding discretion).

requirements of Federal Law," "is entitled to receive a death benefit." *Id.*  In

support of her contention that she was Martin's spouse, Sturgill sent Boilermaker a

July 22, 2017, affidavit of common law marriage, as well as affidavits from

herself, relatives, and friends "indicating that the couple held themselves out to be

husband and wife." *Id.* at 2-3.  She also offered a bank statement from a joint bank

account. *Id.* at 3.  In addition, there is no dispute that the couple "raised Martin's

biological sons together" and "held joint title to their car." *Id.* at 4.

Based upon its consideration of this evidence, Boilermaker denied Sturgill's

"claim that she was Mr. Martin's common-law spouse" on December 27, 2017,

and again on October 12, 2018. *Id.* at 3 (citing *doc.* 25-2 at 14).  During the appeal

process, Sturgill provided Boilermaker with additional materials in the form of a

"Duplicate Notice of Cancellation from Nationwide, a bank statement from July

2002, and a bank statement from October 2005." *Id.* at 5 (citing *doc. 25-2* at 76,

79, 81).  Boilermaker denied Sturgill's appeal. *Id.* (citing *doc. 25-2* at 1-4).

### B.  Material facts regarding Boilermaker's motion.

Boilermaker argues that Sturgill cannot incorporate her statement of facts in

support of her motion for summary judgment (*doc. 22*) into her responsive

statement of facts in opposition to Boilermaker's motion for summary judgment

(*doc. 25*). *Doc. 31* at 1-2.  We agree that Local Rule 56.1 prohibits such an

incorporation; therefore, in accordance with the local rule, we will limit our consideration only to those responses actually contained within Sturgill's responsive statement of facts. *Doc. 30*.  Boilermaker also argues that Sturgill "insufficiently disputes" the paragraphs denying its statement of facts because she "simply cit[es] paragraphs 19 and 20 of the Complaint." *Id.* at 2-3.  We are constrained to agree, since a party "cannot simply reassert factually unsupported allegations contained in its pleadings" in order to withstand summary judgment. *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex*, 477 U.S. at 325).  Sturgill's entire responsive statement of facts is therefore deficient and, as such, we will deem Boilermaker's statement of facts to be admitted in accordance with Local Rule 56.1 for the purpose of deciding Boilermaker's motion for summary judgment. *See*, *e.g.*, *Hickey v. Merritt-Scully*, No. 4:18-cv-01793, 2021 WL 949448, at *1 (M.D. Pa. Mar. 12, 2021) (quoting *Abu-Jamal v. Kerestes*, No. 3:15-CV-967, 2018 WL 2166052, at *14 (M.D. Pa. May 10, 2018)); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018).  Nevertheless, we have reviewed the entire record, and our review does not reveal any inconsistencies between the assertions in Boilermaker's statement of facts and the record itself.

The Plan grants Boilermaker the discretion to interpret the Plan and to determine eligibility for benefits. *Doc. 25* at 1; *see also doc. 25-1* at 22 (Plan

Section 10.01(i) (providing for such discretion)).  Martin was a "vested participant" in Boilermaker, and he died on June 1, 2017. *Doc. 25* at 1.  In support of Sturgill's claim that she was Martin's common law spouse, Boilermaker asked Sturgill to complete an "Affidavit of Common-Law Marriage" along with providing supporting proof. *Id.* at 2.  Sturgill submitted the affidavit along with several other documents. *Id.* (citing *doc. 25-2* at 17-37).  Boilermaker reviewed Sturgill's submissions and concluded that there existed no common law marriage. *Id.* at 2-3 (citing *doc. 25-2* at 13-16).  Sturgill's counsel contacted Boilermaker about one year later to contest its decision, but Boilermaker did not alter its decision. *Id.* at 3 (citing *doc. 25-2* at 38, 42-43).  Sturgill then filed this lawsuit on May 30, 2019. *Id.*; *see also doc. 1*.

Upon receiving the complaint, Boilermaker realized that it made a procedural error by failing to extend appeal rights to Sturgill, and it corrected this issue by extending appeal rights on July 29, 2019. *Doc. 25* at 3 (citing *doc. 25-2* at 54-59).  Boilermaker considered Sturgill's appeal on March 19, 2020, and it denied Sturgill's appeal on the same grounds as before. *Id.* (citing *doc. 25-2* at 1-4).

## V.  Applicable Law.

### A.  Denial of benefits under ERISA § 1132(a)(1)(B).

We must "review the denial of benefits challenged under ERISA

§ 1132(a)(1)(B) 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Gillar v. Blue Cross/Blue Shield of S.C.*, 413 F. Supp. 3d 376, 381 (M.D. Pa. 2019) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)). "When a plan grants its administrator or fiduciary the discretion to determine eligibility or to construe the plan terms, 'we review a denial of benefits under an "arbitrary and capricious" standard.'" *Gillar*, 413 F. Supp. 3d at 381 (quoting *Orvosh v. Program of Grp. Ins. For Salaried Emps. of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)); *see also Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011) ("In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical.") (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010)). The terms of the Plan govern "[w]hether an administrator is empowered to wield such discretion." *Bickhart v. Carpenters Health and Welfare Fund of Phila. and Vicinity*, 732 F. App'x 147, 151 (3d Cir. 2018) (citing *Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991)). "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (quoting *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999)).

**B.  ERISA § 1132(a)(1)(B)'s arbitrary and capricious standard applies.**

Here, "[b]ecause the Plan confers on [Boilermaker] the discretionary authority to determine eligibility for benefits, construe the terms of the Plan, and decide issues of fact, we must apply the arbitrary and capricious standard when we review [its] denial of benefits, [its] interpretations of the Plan, and [its] factual findings." *Addington v. Senior Vice President Human Res. Consol Energy, Inc.*, 841 F. App'x 443, 447 (3d Cir. 2020) (citing *Fleisher*,  679 F.3d at 120-21).  "An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller*, 632 F.3d at 845 (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).  "Courts defer to an administrator's findings of facts when they are supported by 'substantial evidence,' which we have 'defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Fleischer*, 679 F.3d at 121 (quoting *Soubik v. Dir., Office of workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004)).  And "we consider only the 'evidence that was before the administrator when [it] made the decision being reviewed.'" *Id.* (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)); *see also Duda v. Standard Ins. Co.*, 649 F. App'x 230, 234 (3d Cir. 2016) ("We must therefore determine whether there was a reasonable basis for the administrator's decision, based on the facts known at the time the decision was

14

made.").  Ultimately, however, we "must be vigilant not to 'substitute [our] own judgment for that of the [administrator] in determining eligibility for plan benefits.'" *Miller*, 632 F.3d at 857 (quoting *Abnathya*, 2 F.3d at 41); *see also Guthrie v. Prudential Ins. Co. of Am.*, 625 F. App'x 158, 161 (3d Cir. 2015) (citing *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233-34 (3d Cir. 2009)).

Additionally, "[i]n determining whether an administrator abused its discretion, we must consider any structural conflict of interest as one of several factors." *Viera*, 642 F.3d at 413 (citing *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009)).  Another factor which we must consider includes "procedural concerns about the administrator's decision making process." *Schwing*, 562 F.3d at 526 (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008)).  We note these potential conflicts of interest for completeness despite the fact that Sturgill does not mention, let alone argue, anything about them in her briefs.

### C.  Pennsylvania common law marriage.

"The parties agree that Pennsylvania law governs [Boilermaker's] decision in this case." *Doc. 27* at 7 (citing *doc. 23* at 6; *doc. 26* at 7).  Under Pennsylvania law, the "validity of a common-law marriage is a mixed question of law and fact."

*Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd.*, 114 A.3d 27, 33 (Pa. Commw. Ct. Apr. 7, 2015) (citing *PPL v. Workers' Comp. Appeal Bd. (Rebo)*, 5 A.3d 839, 843 (Pa. Cmwlth. 2010)); *see also Rightmire v. Ryan*, No. 698 MDA 2013, 2013 WL 11248587, at *3 (Pa. Super. Ct. Dec. 24, 2013); *Beswick v. City of Phila.*, 185 F. Supp. 2d 418, 430 (E.D. Pa. 2001). "The burden of proving the existence of a common law marriage is on the party alleging the marriage," and the burden is heavy. *Murray v. IBEW Local Union No. 98 Pension Plan*, No. 10-3852, 2011 WL 1883189, at *7 (E.D. Pa. May 17, 2011) (citing *Commonwealth v. Gorby*, 588 A.2d 902, 907 (Pa. 1991); *In re Estate of Carter*, 159 A.3d 970, 978 (Pa. Super. Ct. 2017)). "To prove the existence of a common law marriage, a party must generally show that the couple came to 'express agreement' through words spoken in the present tense—or *verba in praesenti*—'uttered with a view and for the purpose of establishing' the marital relationship." *Bd. of Trustees of Greater Pa. Carpenters' Med. Plan v. Schwartzmiller*, No. 17-1442, 2020 WL 1332149, at *10 (W.D. Pa. Mar. 23, 2020) (quoting *Staudenmayer v. Staudenmayer*, 714 A.2d 1016, 1020 (Pa. 1998)). But "[a]bsent an exchange of words in the present tense, plaintiffs can point to cohabitation and their general reputation in the community as a married couple." *Sokolowski v. Allied-Signal, Inc.*, 735 F. Supp. 163, 165 (E.D. Pa. 1990) (citing *In re Cummings Estate*, 479 A.2d 537 (Pa. Super. Ct. 1984)) (internal quotations omitted). Proving both "(1) constant cohabitation; and,

16

(2) a reputation of marriage 'which is not partial or divided but is broad and general,' raises the rebuttable presumption of marriage." *Staudenmayer*, 714 A.2d at 1020-21 (quoting *Estate of Manfredi*, 159 A.2d 697, 700 (Pa. 1960)).  Moreover, the proof of such a reputation "must be general and not confined to a few persons in the immediate neighborhood, as the relationship may be established merely for the purpose of deceiving others." *Manfredi*, 159 A.2d at 700 (citation omitted).  "However, the presumption is rebuttable and it 'will wholly disappear in the face of proof that no marriage existed.'" *In re Cummings Estate*, 479 A.2d at 542 (quoting *Commonwealth ex rel. McDermott v. McDermott*, 345 A.2d 914, 915 (Pa. Super. Ct. 1975)).  In addition, the rebuttable presumption "is only applicable where the parties to the putative marriage are unavailable to testify regarding the exchange of words expressing their present intent to marry." *Dugan v. Greco*, No. 1924 EDA 2019, 2020 WL 1139061, at *8 (Pa. Super. Ct. Mar. 9, 2020) (citing *Staudenmayer*, 714 A.2d at 1021; *Carter*, 159 A.3d at 980 n.9; *Perrotti v. Meredith*, 868 A.2d 1240, 1244-45 (Pa. Super. Ct. 2005)).

A party must prove the existence of a common law marriage before 2005 since Pennsylvania "has abolished common law marriages entered into on or after January 2, 2005 and only recognizes [those] formed prior to that date." *Schwartzmiller*, 2020 WL 1332149, at *9 (citing 23 Pa. C.S. § 1103).  "Thus, in order for a common law marriage to be valid and enforceable, those seeking to

prove it must show that it was contracted on or before January 1, 2005." *Murray*, 2011 WL 1883189, at *7 (citing *Stackhouse v. Stackhouse*, 862 A.2d 102, 108 (Pa. Super. Ct. 2004)).

## VI. Discussion.

### A. Sturgill's motion for summary judgment should be denied.

In her brief in support of her motion, Sturgill argues that she is entitled to summary judgment because she has presented sufficient evidence to raise a rebuttable presumption of common law marriage that Boilermaker has failed to rebut. *Doc. 23* at 6-9. Sturgill makes no mention of what standard of review we should apply, and instead begins her argument by explaining that we are "tasked with the application of Pennsylvania state law when determining whether a common law marriage exists." *Id.* at 6. She conceives of our role in this case as determining whether a common law marriage between herself and Martin existed under Pennsylvania law. *Id.* at 6-7. If we find that a common-law marriage existed, Sturgill argues, she is entitled to $255,535.22 and "all damages recognized by law . . . to the extent legally provided." *Id.* at 10.

Boilermaker frames our role differently and contends that an inquiry into Sturgill's putative common-law marriage is inappropriate because, under

§ 1132(a)(1)(B) of ERISA through which Sturgill brings her claim, our function is to review whether Boilermaker's decision was reasonable. *Doc. 26* at 1; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  In other words, Boilermaker argues that we must review its decision to deny benefits in accordance with ERISA and apply the arbitrary and capricious standard of review set forth in *Firestone*. *Doc. 26* at 4-6.  Boilermaker argues that summary judgment for Sturgill is inappropriate because she has not established that its decision denying her benefits was unreasonable. *Id.* at 6-11.  Finally, Boilermaker takes issue with Sturgill's requested relief in that she "identifies no facts that establish that she is entitled to $255,535.22," and ERISA does not provide for punitive or treble damages for claims under § 1132(a)(1)(B). *Id.* at 11-12.

In her reply brief, Sturgill seems to concede that we should focus on whether Boilermaker's decision to deny her benefits was arbitrary and capricious and argues that Boilermaker's decision as to her putative common-law marriage was erroneous as a matter of law. *Doc. 32* at 1-3 (discussing the arbitrary and capricious standard and "whether [Boilermaker] erred as a matter of law").  Sturgill does not address Boilermaker's argument regarding damages apart from a terse instruction to us. *Id.* at 4 ("If the Court determines that there is a factual dispute regarding damages, the Court may grant partial summary judgment on the

matter of liability and permit the parties to proceed to trial solely on the issue of damages.").[3]

Applying the above standards, we recommend that Sturgill's motion for summary judgment be denied because we find that Boilermaker's decision that she and Martin were not common-law spouses was not arbitrary and capricious. Boilermaker argues that it is reasonable to conclude that Sturgill failed to establish the rebuttable presumption of a common law marriage to Martin.[4] *Doc. 27* at 9. Sturgill, on the other hand, only argues that Boilermaker erred as a matter of law in determining that she and Martin were not common-law spouses. *Doc. 32* at 1-2. Sturgill does not argue that she and Martin exchanged *verba in praesenti* regarding their intention to marry; rather, she argues that she has established the presumption of a common law marriage through proof of constant cohabitation and a general

---

[3] To the extent Sturgill believes demanding damages "to the extent legally provided" places the onus on us to research and argue her claims on her behalf, we decline to do so. *See doc. 32* at 4. "Due to [Sturgill's] failure to engage in any type of legal discussion regarding [Boilermaker's damages] argument, [we are] left 'to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" *Rodrigues-Reyes v. Molina-Rodriguez*, 21 F. Supp. 3d 143, 145 (D.P.R. 2014) (quoting *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). This we decline to do.

[4] This is a critical distinction not made readily apparent by the parties' briefs. The initial burden falls on Sturgill to establish the presumption of a common law marriage. *Murray*, 2011 WL 1883189, at *7 (citing *Gorby*, 588 A.2d at 907). Only if she satisfies that burden does the burden shift to Boilermaker to rebut it. *Cummings*, 479 A.2d at 542 (quoting *McDermott*, 345 A.2d at 915).

reputation of marriage. *Doc. 23* at 6-9.  For its part, Boilermaker does not contest that Sturgill provides proof of constant cohabitation with Martin, but it does dispute whether Sturgill and Martin had a broad and general reputation of marriage. *Doc. 27* at 8; *see also doc. 25-2* at 1-4 (denying Sturgill's appeal).

Looking to the evidence available to Boilermaker, and keeping in mind that Sturgill must establish her putative common law marriage before 2005, we find that Sturgill has not met her burden to establish the presumption of a common law marriage and, therefore, Boilermaker's denial of benefits is not erroneous as a matter of law.  Sturgill filed an affidavit of common law marriage with Boilermaker claiming to be Martin's spouse. *Doc. 25-2* at 17.  In support of that affidavit, she also filed a joint bank statement from July through November of 2002, which is the only pre-2005 evidence Sturgill provided to Boilermaker. *Id.* at 33-37.

Sturgill also provided several affidavits from her, her friends, and her family.  She claims in a 2017 affidavit that she and Martin "were together from 1997-2017, . . . lived together for 20 years," and "held [them]selves out into the community as husband and wife." *Id.* at 19.  She also mentions that they shared responsibility, shared health and car insurance, and owned a car together. *Id.* While Sturgill submits evidence to support these claims, that evidence is all dated post-2005, and is therefore of limited value in determining the existence of a

common law marriage prior to 2005. *See*, *e.g.*, *id.* at 24 (2017 car lien), 25-26 (2017 and 2009 car insurance), 27 (2014-2015 health insurance), 28 (2008 loan document), 29 (2013 joint car title), 32 (2013 joint car sale contract); *see also Murray*, 2011 WL 1883189, at *8 (finding post-2005 evidence immaterial in establishing a general reputation of marriage). To the extent Sturgill's post-2005 evidence is useful in determining whether she and Martin had a broad and general reputation of marriage before 2005, consideration of this evidence is further undercut by contradictory post-2005 evidence in the record which lists Martin's marital status as divorced or single and Sturgill's status as fiancée. *Id.* at 13 (2011 beneficiary designation), 18 (2017 death certificate), 30 (2007 joint car insurance listing marital status as single). Sturgill mentions that she "wore a diamond wedding ring on [her] hand [Martin's] mother gave him to give [her]," but she makes no mention of when she received this ring. *Id.* at 19. While "the exchange of rings is particularly strong evidence" of a present intent to marry, in order to prove a common law marriage existed before 2005, it was incumbent on Sturgill to explain *when* this exchange occurred. *See Carter*, 970 A.3d at 981.

The other affidavits are also of limited value because they do not establish a broad and general reputation of marriage prior to 2005. The affidavit from Sturgill's son references Sturgill and Martin's 20-year relationship, but also notes that they were only "practically married." *Id.* at 20. So too does the affidavit from

Sturgill's sibling mention the couple's 20-year cohabitation without mentioning when he or she began to "consider them spouses of each other." *Id.* at 21.  The affidavit from Martin's mother speaks of Martin describing Sturgill as his wife "in many conversations . . . over the past twenty years." *Id.* at 22.  This affidavit also notes the belief of Martin's mother that "he [likely] thought that he didn't need a marriage certificate since common law was in place at the time." *Id.*  Finally, an affidavit from Sturgill's son mentions that Martin moved in with Sturgill in 1998. *Id.* at 23.  Accordingly, after reviewing the evidence available to Boilermaker when it denied Sturgill's claim, we cannot say that Boilermaker's decision was erroneous as a matter of law or unsupported by substantial evidence.

We turn briefly to procedural and structural factors, neither of which Sturgill mentions, let alone argues.  "Whereas '[t]he structural inquiry focuses on the financial incentives created by the way the plan is organized,' i.e., whether there is a conflict of interest, 'the procedural inquiry focuses on how the administrator treated the particular claimant.'" *Miller*, 632 F.3d at 845 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007)).  Boilermaker did not initially extend or explain to Sturgill her right to appeal their determination. *Doc. 25-2* at 38; *see also* 29 U.S.C. § 1133.  It did, however, correct this procedural failure after Sturgill brought this lawsuit, and extended appeal rights to Sturgill on July 29, 2019. *Id.* at 54-59.  Absent any argument on Sturgill's part, this procedural deficiency does not

affect our analysis since it does not give us "reason to doubt [Boilermaker's] fiduciary neutrality." *Miller*, 632 F.3d at 845 (citing *Post*, 501 F.3d at 165).

As to the structural inquiry, a structural conflict of interest "emerges where it is the employer that both funds the plan and evaluates the claims because [i]n such a circumstance, every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket." *Id.* at 847 (quoting *Glenn*, 554 U.S. at 112) (internal quotations omitted).  Here, it is undisputed that Boilermaker has discretion to both interpret the plan and to determine eligibility for benefits. *Doc. 28* at 4.  Assuming that this suffices to raise a structural conflict of interest, but again noting Sturgill's lack of argument in this regard, this factor does not undercut the other factors or alter our analysis.

Accordingly, having considered any conflicts of interest, we find that Boilermaker's decision was not arbitrary and capricious and, is supported by substantial evidence.  We will recommend, therefore, that Sturgill's motion for summary judgment be denied.

**B.  Boilermaker's motion for summary judgment should be granted.**

In its brief in support of its motion for summary judgment, Boilermaker argues that its decision denying Sturgill spousal benefits must be considered under the arbitrary and capricious standard. *Doc. 26.*  Our inquiry, argues Boilermaker, is

whether its decision that Martin and Sturgill are not common-law spouses was reasonable. *Id.* at 1, 4-6.  As discussed above, we agree that the arbitrary and capricious standard governs our review of Boilermaker's decision under § 1132(a)(1)(B). *See Gillar*, 413 F. Supp. 3d at 381.  As to the putative common law marriage, Boilermaker does not dispute that the couple established constant cohabitation, but instead argues that they "failed to establish a 'broad and general' reputation of marriage." *Doc. 26* at 8-10.

Sturgill again misconstrues the applicable standard of review in her brief in opposition. *Doc. 29.*  Sturgill argues that, because Boilermaker "is not interpreting the terms of an ERISA plan, but making a factual determination as to the existence of a common law marriage," the arbitrary and capricious standard of review is inapplicable. *Id.* at 1-3.  But as discussed above, the deferential standard of review applies not simply when interpreting plan terms, but also "[w]hen a plan grants its administrator or fiduciary the discretion to determine eligibility." *Gillar*, 413 F. Supp. 3d at 381 (quoting *Orvosh*, 222 F.3d at 129).  And Sturgill admits that the Plan grants Boilermaker the discretion to determine eligibility. *Compare doc. 30* at ¶ 3 (admitting Boilermaker's assertion to the same) *with doc. 25* at ¶ 3.  Finally, Sturgill argues, without providing us any supporting reasoning, that she already "established a rebuttable presumption in favor of common law marriage." *Doc. 29* at 3.

25

In its reply brief, Boilermaker takes issue with Sturgill's responsive statement of facts. *Doc. 31* at 1-3.  It also reiterates that the arbitrary and capricious standard of review applies and that its decision denying Sturgill's claim for benefits was not unreasonable. *Id.* at 3-5.

Viewing the facts in the light most favorable to Sturgill, we recommend that Boilermaker's motion for summary judgment be granted.  In Boilermaker's motion for summary judgment, just as in Sturgill's motion, it is undisputed that Boilermaker has the discretion to interpret the Plan and determine eligibility for benefits. *Doc. 25* at 1; *see also doc. 25-1* at 22.  Accordingly, as addressed above, the arbitrary and capricious standard of review applies.  Here, Sturgill adduces no additional facts to undermine Boilermaker's decision denying her claim, and she does nothing to show how its decision was arbitrary and capricious.

As discussed above, and given that Sturgill makes no additional factual assertions on this motion and that our consideration is limited to the record before Boilermaker when it made its decision, our review of the record leads us to conclude that Boilermaker's decision regarding Sturgill's putative common law marriage is supported by substantial evidence and is not erroneous as a matter of law.  Furthermore, the procedural and substantive factors do not weigh in favor of finding Boilermaker's decision to be arbitrary and capricious.  We therefore further conclude that Boilermaker's decision was not arbitrary and capricious.

Accordingly, we will recommend that the court grant Boilermaker's motion for summary judgment.

## VII. Recommendation.

Based on the foregoing, on this **29th** day of **July, 2021**, **IT IS RECOMMENDED** that the court **DENY** Sturgill's motion for summary judgment (*doc. 21*).  **IT IS FURTHER RECOMMENDED** that the court **GRANT** Boilermaker's motion for summary judgment (*doc. 24*).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of July, 2021.


***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge